DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ALEX J. FEERST (SBN 270537)
afeerst@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:     415-236-6300

Attorneys for Defendants
REARDEN LLC, REARDEN MOVA LLC,
MO2 LLC, MOVA LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD., a People's Republic of China corporation<br><br>                              Plaintiff,<br><br>     v.<br><br>REARDEN LLC, REARDEN MOVA LLC, MO2 LLC, MOVA LLC,<br><br>                              Defendants. | Case No. 3:15-cv-00797-SC<br><br>**DEFENDANTS' ANSWER AND COUNTERCLAIMS**<br><br>Ctrm:    1, 17th Floor<br>Judge:   Honorable Samuel Conti |

Defendants Rearden LLC ("Rearden"), Rearden Mova LLC, MO2 LLC, and Mova LLC (collectively "Defendants"), hereby answer Shenzhenshi Haitiecheng Science And Technology Co., Ltd.'s, a People's Republic of China corporation ("Shenzhenshi"), Complaint as set forth below.

**JURISDICTION AND VENUE**

1. Defendants admit that each Defendant is a citizen of the State of California and that the amount in controversy exceeds $75,000 exclusive of interest, attorneys' fees, and costs. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint and on that basis deny them.

2. Defendants do not contest that venue is proper in this district.

**PARTIES**

3. Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3 of the Complaint and on that basis deny the allegations.

4. Defendants admit that Rearden LLC is a California limited liability company that was registered with the California Secretary of State on or about June 5, 2006, and that it maintains its principal place of business at 355 Bryant St., Suite 110, San Francisco CA 94107. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 4 of the Complaint.

5. Defendants admit that Rearden Mova LLC is a California limited liability company that was registered with the California Secretary of State on or about April 19, 2013, and that it maintains its principal place of business at 355 Bryant St., Suite 110, San Francisco CA 94107. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6. Defendants admit that MO2 LLC is a California limited liability company that was registered with the California Secretary of State on or about September 8, 2014, and that it maintains its principal place of business at 355 Bryant St., Suite 110, San Francisco CA 94107. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 6 of the Complaint.

7. Defendants admit that Mova LLC is a California limited liability company that was registered with the California Secretary of State on or about September 18, 2014, and that it maintains its principal place of business at 355 Bryant St., Suite 110, San Francisco CA 94107. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 7 of the Complaint.

8. Defendants deny the allegations in Paragraph 8 of the Complaint.

## SUMMARY OF THE DISPUTE

9. Defendants admit this is a controversy that includes ownership of certain patented technology and related software and other intellectual property some of which is known generally as "MOVA." Defendants admit that some of the technology can be utilized to capture the facial performance of an actor by means of a specially designed camera rig for use in motion picture, computer graphics, and other video applications. Defendants admit that recently, MOVA received a science and technology award conferred by the Academy of Motion Picture Arts and Sciences. Defendants admit this award was the subject of widespread publicity in the film and related industries. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 9 of the Complaint.

## GENERAL ALLEGATIONS

10. Defendants admit that some services using some of the assets—whose ownership is the subject of this controversy (the "MOVA Assets")—were first introduced commercially in 2006. Defendants admit that some MOVA Assets can be used today in a process which encompasses a number of patents and patent applications, the registered trademarks "MOVA" and "CONTOUR," software, and related intellectual property. Defendants admit that on its face Exhibit A appears to be a list of some of the MOVA Assets. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 10 of the Complaint.

11. Defendants admit that Mova LLC is a California limited liability company that was registered with the California Secretary of State on or about June 15, 2004. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 11 of the Complaint.

12. Defendants admit that as of July 31, 2012, the ownership of the MOVA Assets was vested in OnLive, Inc. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 12 of the Complaint.

13. Defendants admit that in or about August 2012, OnLive, Inc. transferred substantially all of its assets (through an Assignment for the Benefit of Creditors), including the MOVA Assets, to an entity called OL2, Inc. Defendants admit that following this transaction the MOVA Assets came to be owned by an entity called OL2, Inc. Defendants deny that OnLive, Inc. suspended its operations on or

about August 2012.  Except as specifically admitted or otherwise denied herein, Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 13 of the Complaint and on that basis deny the allegations.

14. Defendants admit that OL2, Inc. agreed to sell the MOVA Assets.  Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 14 of the Complaint.

15. Defendants admit that MO2 LLC is a California limited liability company that was registered with the California Secretary of State on or about November 9, 2012.  Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 15 of the Complaint.

16. Defendants admit that on or about February 11, 2013, MO2 LLC acquired the MOVA Assets from OL2, Inc.  Except as specifically admitted herein, Defendants either deny or lack knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 16 of the Complaint and on that basis deny the allegations.

17. Defendants deny the allegations in paragraph 17 of the Complaint.

18. Defendants deny the allegations in paragraph 18 of the Complaint.

19. Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19 of the Complaint and on that basis deny the allegations.

20. Defendants admit that MO2 LLC is a California limited liability company that was registered with the California Secretary of State on or about September 8, 2014. Defendants admit that Mova LLC is a California limited liability company that was registered with the California Secretary of State on or about September 18, 2014.  Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21. Defendants admit that on September 18, 2014 eight (8) assignments of patents from the MOVA Assets were recorded in the U.S. Patent and Trademark Office as assigned from OL2, Inc. to MO2 LLC with an execution date of February 11, 2013, consistent with the execution date of the February 11, 2013 agreement whereby MO2 LLC acquired the MOVA Assets from OL2, Inc. which was recorded with the assignments. Defendants admit that on its face Exhibit B appears to be one such assignment document.  Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 21 of the Complaint.

22. Defendants admit that the next day, September 19, 2014 eight (8) assignments of patents from the MOVA Assets were recorded in the U.S. Patent and Trademark Office as assigned from MO2 LLC to Rearden Mova LLC with an erroneous execution date of September 18, 2014, and upon discovery of the error, a Petition to Expunge the erroneous September 19, 2014 assignments was recorded with each patent along with a corrected chain of assignments from MO2 LLC to Rearden Mova LLC with corrected execution dates and a Statement of Interest including signed documents evidencing the assignment. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 22 of the Complaint.

23. Defendants admit that the U.S. Patent and Trademark office reflects a recording date of September 29, 2014 for an assignment of the marks "MOVA" and "CONTOUR" from Mova LLC, by its sole member OL2, Inc. to MO2 LLC with an execution data of February 11, 2013. Defendants admit that Exhibit D appears on its face to be assignment documents maintained by the U.S. Patent and Trademark Office reflecting these assignments. Except as specifically admitted herein, Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

24. Defendants admit that one or more Defendants have made public statements to the effect that one or more Defendants is the owner of some of the MOVA Assets. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 24 of the Complaint.

25. Defendants admit that one or more Defendants have made public statements to the effect that one or more defendants is the owner of some of the MOVA Assets. Defendants admit that Mova LLC has been publicly presented as a "Rearden Company." Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 25 of the Complaint.

26. Defendants admit that Perlman said in February 2015 that his companies had not granted a license of the Mova Assets to certain parties and he was unaware of how such parties could have obtained such a license. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 26 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**Declaratory Relief**
**(Against All Defendants)**

27. Defendants incorporate by reference their responses to paragraphs 1-26 of the Complaint.

28. Admitted.

29. Defendants lack knowledge of what Shenzhenshi desires and on that basis deny those allegations. Defendants admit that the Complaint requests the declaration recited in it. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 29 of the Complaint.

30. Defendants admit that a judicial declaration is necessary and appropriate at this time and that they have disputed Shenzhenshi's ownership of the MOVA Assets. Except as expressly admitted herein, Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

## SECOND CLAIM FOR RELIEF
### False Advertising, California Business and Professions Code § 17500 et seq.
### (Against All Defendants)

31. Defendants incorporate by reference their responses to paragraphs 1-30 of the Complaint.

32. Defendants deny the allegations in Paragraph 32 of the Complaint.

33. Defendants deny the allegations in Paragraph 33 of the Complaint.

34. Defendants deny the allegations in Paragraph 34 of the Complaint.

35. Defendants deny the allegations in Paragraph 35 of the Complaint.

36. Defendants deny the allegations in Paragraph 36 of the Complaint.

## THIRD CLAIM FOR RELIEF
### Unfair Competition, California Business and Professions Code § 17200 et seq.
### (Against All Defendants)

37. Defendants incorporate by reference their responses to paragraphs 1-36 of the Complaint.

38. Defendants deny the allegations of Paragraph 38 of the Complaint.

39. Defendants deny the allegations of Paragraph 39 of the Complaint.

40. Defendants deny the allegations of Paragraph 40 of the Complaint.

## FOURTH CLAIM FOR RELIEF

41. Defendants incorporate by reference their responses to paragraphs 1-40 of the Complaint.

42. Defendants deny the allegations in Paragraph 42 of the Complaint.

43. Defendants deny the allegations in Paragraph 43 of the Complaint.

44. Defendants deny the allegations in Paragraph 44 of the Complaint.

**PRAYER FOR RELIEF**

Defendants deny that Shenzhenshi is entitled to any relief in any form whatsoever from any Defendant and specifically denies that Shenzhenshi is entitled to any of the relief requested in the Prayer for Relief.  Defendants deny the allegations contained in the Prayer for Relief.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

**(FAILURE TO STATE A CLAIM)**

45. The complaint fails to state a claim upon which relief may be granted.

46. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that the statements it attributes to Defendants that allegedly constitute false advertising under California Business and Professions Code § 17500 *et seq.* were made on behalf of any Defendant.

47. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that the statements it attributes to Defendants, even if made, would violate California Business and Professions Code § 17500 *et seq.*

48. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that any specific business relationship exists that would lead to future economic benefit for Shenzhenshi.

49. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that and Defendant knew of these relationships, if any exist.

50. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that any Defendant intended to disrupt any of these relationships, if any exist.

51. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that any Defendant engaged in any independent wrongful conduct relating to its alleged disruption of such relationships, if any exist.

52. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that any of these business relationships, if any exist, were disrupted.

53. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that Shenzhenshi was harmed by such alleged disruption.

54. Shenzhenshi's Complaint fails to allege facts sufficient to support a claim that any of

Defendants' respective conduct was a substantial factor in causing any alleged harm to Shenzhenshi.

## SECOND AFFIRMATIVE DEFENSE

### (LACHES AND ESTOPPEL)

55. Shenzhenshi's claims are barred in whole or part by the doctrines of laches, acquiescence and/or estoppel.

56. Shenzhenshi delayed in initiating this law suit.

57. Shenzhenshi's delay was unreasonable.

58. Shenzhenshi's delay resulted in prejudice to Defendants, who have made continuous and substantial investments related to the MOVA Assets.

59. Shenzhenshi has been aware of the facts concerning its claim of ownership of the MOVA Assets and related transfers of them.

60. Since at least February 2013, Shenzhenshi has engaged in a misleading silence concerning its alleged ownership and alleged licensing of the MOVA Assets and provision of services using physical assets, intellectual property, and trade secrets from the MOVA Assets.

61. Defendants have not been aware of Shenzhenshi's alleged ownership and alleged licensing of the MOVA Assets and provision of services using the MOVA physical assets, intellectual property, and trade secrets from the MOVA Assets.

62. Defendants relied on Shenzhenshi's misleading silence to their detriment in that their ownership of the MOVA Assets has been put in doubt and improper credit has been given and proper credit has been denied for founding, development and ownership of MOVA service offerings and MOVA technology.

## THIRD AFFIRMATIVE DEFENSE

### (UNCLEAN HANDS)

63. Shenzhenshi is entitled to no equitable relief because it has unclean hands.

64. Shenzhenshi acted improperly, violating good faith and conscience, in its alleged acquisition of the MOVA Assets and subsequent use of them.

## FOURTH AFFIRMATIVE DEFENSE

### (WAIVER)

65. Shenzhenshi's claims are barred in whole or part by the doctrine of waiver.

66. Shenzhenshi knew that at least one of Defendants' authority was required for the proper transfer of the MOVA Assets.

67. Shenzhenshi freely and knowingly gave up any right it may have had relating to any Defendant doing so, in that Shenzhenshi never contacted any Defendant concerning an acquisition of the MOVA Assets.

## FIFTH AFFIRMATIVE DEFENSE

### (NO DAMAGES)

68. Defendants are informed and believe, and therefore allege without admitting that the Complaint states a claim, that Shenzhenshi has not sustained any loss, damage, harm, or detriment in any amount as a result of any acts alleged against Defendants in the Complaint.

## RESERVATION OF RIGHT TO ASSERT OTHER DEFENSES

69. Defendants reserve the right to assert any other defenses that discovery may reveal.

## DEFENDANTS' COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Rearden LLC ("Rearden"), Rearden Mova LLC, MO2 LLC, and Mova LLC (together "Defendants," "Counterclaimants"), through their attorneys as and for their Counterclaim against Shenzhenshi Haitiecheng Science And Technology Co., Ltd., a People's Republic of China corporation ("Shenzhenshi"), allege as follows:

## THE PARTIES

1. Rearden is a California limited liability company having its principal place of business at 355 Bryant Street, Suite 110, San Francisco, California 94107.

2. Rearden Mova LLC is a California limited liability company having its principal place of business at 355 Bryant Street, Suite 110, San Francisco, California 94107.

3. MO2 LLC is a California limited liability company having its principal place of business at 355 Bryant Street, Suite 110, San Francisco, California 94107.

4. Mova LLC is a California limited liability company having its principal place of business

at 355 Bryant Street, Suite 110, San Francisco, California 94107.

5. As represented in its Complaint in this action, Plaintiff Shenzhenshi is a corporation organized under the laws of the People's Republic of China having its principal place of business somewhere in Shenzen [sic], China.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. section 1332(a) because Counterclaimants are each citizens of California, on information and belief counterdefendant Shenzhenshi is a citizen of the People's Republic of China, and the amount in controversy exceeds $75,000 exclusive of interest, attorneys' fees, and costs.

7. Venue is proper in this District because Counterclaimants each reside in San Francisco, California and a portion of the events giving rise to Counterclaimant's claims occurred in this District.

## SUMMARY OF THE DISPUTE

8. Shenzhenshi claims it bought the MOVA Assets from MO2 LLC in May 2013. Shenzhenshi is wrong. Shenzhenshi attempted to transact business with a renegade Rearden employee who never owned the MOVA Assets and had no right or ability to transfer them. In 2012, Rearden directed its employee, Greg LaSalle, to work with Rearden's counsel to form MO2 LLC and arrange for MO2 LLC to buy the MOVA Assets from OL2, Inc. ("OL2"). LaSalle did do, using lawyers paid for by Rearden, with Rearden paying the California corporate fees to form MO2 LLC, and while LaSalle collected his full-time salary and benefits from Rearden. MO2 LLC received the MOVA Assets from OL2 and held them for the benefit of LaSalle's employer, Rearden. Against instructions and violating his both his fiduciary duty of loyalty to Counterclaimaints and the terms of his employment agreement, LaSalle ran off with the physical MOVA Assets and went to work for another company. Now, Shenzhenshi has asked this Court to declare that it owns not only the looted physical MOVA Assets it acquired from a renegade employee who never owned them, but it also owns the intellectual property MOVA Assets—continuously and diligently maintained by Counterclaimants—that, thus far, it has been unable to loot. All of the MOVA Assets rightfully belong to Defendants, and Defendants ask this Court for a declaration confirming that.

## GENERAL ALLEGATIONS

9. The technology in dispute includes a technology trademarked as MOVA® Contour® Reality Capture ("MOVA Contour"). In one embodiment, MOVA Contour uses an array of cameras in conjunction with phosphorescent makeup applied in random patterns and advanced software to capture 3D facial performances for use in motion picture special effects and video games. For example, it has been used for films such as "The Curious Case of Benjamin Button" (2008) to capture Brad Pitt's facial performance (i.e., the detailed 3D motion of the surface of Mr. Pitt's face as he performed the part of his character, Benjamin Button), which then was used to animate a computer-generated face for Benjamin Button, that aged backwards with such a high degree of realism that it appeared to be a real human face (resulting in an 2008 Academy Award for Best Visual Effects—awarded to the special effects team that relied upon MOVA Contour and many other special effects systems, not an award for MOVA Contour itself). To date, MOVA Contour has been used in over fifteen major motion pictures, including "Harry Potter and the Deathly Hallows, Part 1" (2010) and "Gravity" (2013). MOVA Contour technology is among the "MOVA Assets," which include hardware and software, patents and patent applications, trademarks, trade secrets, domain names, business records, and various physical goods (the "MOVA Assets").

10. MOVA Contour (http://www.rearden.com/mova.html) was one of many technologies incubated and offered as a service by Defendant Rearden (www.rearden.com) a San Francisco Bay Area company that was founded in 1999 by Steve Perlman as an incubator for fundamental technology, creative works, and their interplay. Facial performance motion capture, as both a technology and as tool for motion picture and video game production falls squarely within the focus of Rearden's business.

11. In 2007, Rearden spun-out another company, OnLive, Inc. ("OnLive"), that had developed cloud-gaming technology. MOVA Contour technology and service offering was spun-out of Rearden into OnLive, and OnLive continued to offer MOVA Contour services.

12. In August 2012, OnLive entered into an Assignment for the Benefit of Creditors and its assets, including the assets then associated with MOVA Contour, were assigned to OL2, Inc. ("OL2").

13. OL2 hired roughly half of OnLive's employees, but did not hire any of the employees that had been offering MOVA Contour services.

14. Rearden hired two of the employees, Greg LaSalle and Ken Pearce, whose OnLive work responsibilities had included offering MOVA Contour services, and both employees signed Rearden's standard Employment Agreement, which included a Proprietary Information and Inventions Agreement ("PIIA").

15. Greg LaSalle's Employment Agreement, including its PIIA, is included in Exhibit B of Shenzhenshi's Complaint, with personal information redacted.

16. The PIIA defines Company [Rearden's] Business as including, among other things, **"development of motion, facial and surface capture technology** and related human and non-human 2D and 3D rendering and animation technologies." (emphasis added).

17. The PIIA provides that it may only be modified by a writing signed by the CEO of the Company and by LaSalle.

18. The Employment Agreement provides that it may only be modified by a writing signed by the CEO of the Company and by LaSalle.

19. Neither LaSalle's PIIA nor his Employment Agreement was ever modified by a writing signed by the CEO of the Company nor by LaSalle.

20. Exhibit A shows the current chain of title of patents included in the MOVA Assets starting with OL2, with the corrections noted above filed more than a month before this Complaint was filed, including with each assignment a Statement of Interest which includes LaSalle's Employment Agreement and PIIA. A true and correct copy of the currently-filed chain of assignments and the currently-filed Statement of Interest is attached as Exhibit A.

21. On information and belief, OL2 explored a range of options for the disposition of the MOVA Assets, ultimately agreeing to negotiate to sell the MOVA Assets for $1, provided that the buyer covered its own costs associated with the transaction.

22. Rearden was well-aware that, despite the low purchase price, there would be a very high overhead cost, in salary and legal fees alone, to negotiate an acquisition of the complex portfolio of MOVA Assets. Rearden would only do so if there were a credible business case to operate a business based on the MOVA Assets.

23. Rearden also made it clear to the employees and OL2 that, per the express terms of the

1   PIIA, if an employee sought to personally acquire or control MOVA Assets, he'd have to first terminate
2   his employment from Rearden and cover the full cost of negotiating the acquisition himself.

3       24.    LaSalle, seeking to remain a Rearden employee and well-aware that any acquisition he
4   was involved in would result in the MOVA Assets being owned by Rearden, proposed a business case to
5   Rearden for Rearden to acquire the MOVA Assets for Rearden's exclusive ownership and use in a
6   MOVA Contour service business.

7       25.    Rearden decided to acquire the MOVA Assets for its exclusive ownership and use.

8       26.    LaSalle, in his full-time capacity as General Manager of Rearden, was tasked to work with
9   Rearden's counsel to effect the MOVA Asset acquisition on Rearden's behalf.

10      27.    LaSalle was closely supervised in those efforts by Rearden's CEO to be certain that the
11  terms of the acquisition met Rearden's needs to secure its intellectual property rights and to be able to
12  operate the MOVA Contour business.

13      28.    Given that the MOVA Assets were being sold as-is and carried unknown liabilities,
14  Rearden formed a wholly-owned subsidiary, MO2 LLC, as a vehicle to acquire the MOVA Assets.

15      29.    Rearden paid all legal fees and all California corporation fees associated with the
16  formation of MO2 LLC.

17      30.    Rearden paid all of MO2 LLC's legal fees associated with the negotiation and transfer of
18  the MOVA Assets from OL2 to MO2 LLC.

19      31.    The negotiation over the transfer of MOVA Assets from OL2 to MO2 LLC lasted for
20  months, through February 2013. During this period, LaSalle received a full-time salary and benefits
21  from Rearden. LaSalle filed expense reports with Rearden and was reimbursed for those expenses.

22      32.    The expenses which LaSalle submitted to Rearden, and for which he received
23  reimbursement from Rearden, included costs associated with physically transporting physical assets
24  comprising a portion of the MOVA Assets ("the physical MOVA Assets") to a locked storage facility.

25      33.    Perlman supervised the negotiations between MO2 LLC and OL2 over the asset transfer.

26      34.    Perlman commented on drafts of the proposed agreement between MO2 LLC and OL2
27  implementing the asset transfer.

28      35.    Perlman directed and managed LaSalle's activities in connection with the negotiations

between MO2 LLC and OL2.

36. On February, 11, 2013, OL2 transferred the MOVA Assets to MO2 LLC through a Membership Interest and Asset Purchase and Sale Agreement.

37. On February 14, 2013, LaSalle sent Perlman a list of patents and trademarks transferred from OL2 to MO2 LLC.

38. The list specifically informed Perlman of which patents and trademarks had upcoming deadlines or otherwise required attention and action.

39. Shortly after the February 11, 2013 sale of MOVA Assets to MO2 LLC, LaSalle told Perlman that he knew he was obliged to turn over the MOVA Assets to Rearden, but he wouldn't.

40. Perlman told LaSalle that per his fiduciary obligations and his PIIA obligations, he had no choice but to turn over the Mova Assets to Rearden.

41. Perlman further reminded LaSalle that Rearden had been paying the legal fees related to the MOVA Asset acquisition.

42. Shortly thereafter, LaSalle inquired about the status of the legal fees related to the MOVA Asset acquisition, and received confirmation that they had been regularly paid by Rearden.

43. LaSalle spoke to Rearden's VP of Finance, Cindy Ievers, and told her he would turn over the MOVA Assets to Rearden.

44. On March 12, 2013 LaSalle emailed Ms. Ievers that he hadn't decided whether or not to turn over the MOVA Assets to Rearden.

45. Ms. Ievers responded the same day by emailing LaSalle a copy of his Employment Agreement with the email message, "You need to review your employment agreement. I've attached it here for reference. Specifically, you should review the Proprietary Information and Inventions Agreement sections A2 and section B."

46. Thereafter, LaSalle did not report for work and was largely unreachable, but continued to receive and cash Rearden paychecks.

47. On March 20, 2013 Perlman emailed LaSalle, "… you are refusing to turn over to the Company the performance motion capture intellectual property and production assets that you recently acquired during your employment (collectively, 'Acquired IP'). Your refusal to do so is a clear violation

of your Proprietary Information and Inventions Agreement ('PIIA') and other obligations as a Rearden employee."

48. Perlman's email further stated, "Another significant unresolved issue is your refusal to turn over the Acquired IP. The PIIA states that the Proprietary Information related to the Company's Business includes 'performance motion capture', and further states 'I hereby assign to the Company any and all rights, title and interest I may have or acquire in such Proprietary Information.' It cannot be disputed that the Acquired IP is performance motion capture technology. Under the express terms of the PIIA, therefore, you acquired the Acquired IP as a Rearden employee and it is Rearden property, which you are improperly attempting to withhold from the Company. You even signed an agreement acknowledging Rearden's payment of the legal fees associated with acquiring the Acquired IP, which Rearden has paid regularly throughout the transaction."

49. LaSalle did not reply to Perlman's email or to efforts to reach him by Perlman and Ms. Ievers, but nonetheless continued to receive and cash Rearden paychecks.

50. On March 27, 2013, an employment attorney representing Rearden wrote a letter to LaSalle, stating, "As you know, when you began your employment with the Company, you signed a Proprietary Information and Inventions Agreement ('PIIA'). The PIIA states that the Proprietary Information related to the Company's Business includes 'performance motion capture.' You are obligated under the PIIA to assign the rights to any Proprietary Information you acquired while an employee to the Company. The Acquired IP consists of performance motion capture intellectual property, which is Propriety Information subject to the PIIA. Accordingly, your failure to turn over to the Company the Acquired IP is a clear violation of your obligations under the PIIA, for which the Company has instructed to seek any and all available legal remedies if we are unable to resolve this issue immediately."

51. Rearden formed Rearden Mova LLC.

52. All of the MOVA Assets from MO2 LLC were assigned to Rearden Mova LLC on April 19, 2013.

53. LaSalle and/or his accomplices removed the physical MOVA Assets from the locked storage facility and took the physical MOVA Assets into their own possession.

54. Upon information and belief LaSalle took possession of the physical MOVA Assets upon assurance of indemnification by Shenzhenshi and/or a predecessor-in-interest.

55. LaSalle never turned over to Rearden the physical MOVA Assets taken from the storage facility.

56. While LaSalle and/or his accomplices were able to loot the physical MOVA Assets from a storage facility, LaSalle and/or his accomplices found they were unable to loot U.S. Patent and Trademark MOVA Assets because they never owned any MOVA Assets and, as a result, lacked the actual evidence of ownership that is required by the United States Patent and Trademark Office ("USPTO").

57. Neither LaSalle nor any successor-in-interest (including Shenzhenshi) have recorded any assignments nor paid any maintenance or examination fees in the USPTO in connection with any U.S. Patent and Trademark MOVA Assets.

58. As evidenced in publicly-available records, Defendants have continued diligently to maintain and prosecute the MOVA U.S. Patent and Trademark MOVA Assets.

59. For example, in April 2013 Defendants paid an $800 maintenance fee to the USPTO in connection with U.S. Patent No. 7,605,861, serial number 11/077,628, which is one of the MOVA Assets.

60. In June 2013 Defendants paid an $800 maintenance fee to the USPTO in connection with U.S. Patent No. 7,633,521, serial number 11/066,954 which is one of the MOVA Assets.

61. In August 2013, Defendants paid $1,310 in examination-related fees to the USPTO in connection with U.S. Patent Application serial number 11/255,854, which is one of the MOVA Assets.

62. Also in August 2013, Defendants paid an $800 maintenance fee on U.S. Patent No. 7,667,767, serial number 11/449,131 which is one of the MOVA Assets.

63. In January 2014, Defendants paid $480 in examination-related fees to the USPTO in connection with U.S. Patent Application serial number 11/255,854, which is one of the MOVA Assets.

64. In addition to U.S. Patent and Trademark MOVA Assets, Defendants have also diligently maintained the international, non-U.S. Patent and Trademark MOVA Assets throughout the world, paying non-U.S. patent office fees in countries including Canada, Japan, South Korea, Australia and

1 European countries.

2     65. In addition to paying USPTO and international patent office fees, Defendants have retained and paid U.S. and non-U.S. patent counsel in connection with U.S. and non-U.S. Patent and Trademark MOVA Assets.

    66. Upon information and belief, neither LaSalle nor any successor-in-interest (including Shenzhenshi) have recorded any assignments nor paid any maintenance or examination fees to any non-U.S. patent and trademark offices in connection with any non-U.S. Patent and Trademark MOVA Assets.

    67. On September 19, 2014 Defendants filed patent assignments from MO2 LLC to Rearden Mova LLC with the USPTO that included an erroneous execution date of September 18, 2014 instead of the correct date of April 19, 2013.

    68. Over a month before the Complaint in this action was filed, Defendants filed a petition to expunge the assignments with the erroneous execution states, and filed a corrected chain of assignments which assigned the patents from MO2 LLC to Rearden Mova LLC on April 19, 2013. Together with the corrected chain of assignments Defendants filed a Statement of Interest documenting the ownership rights, attached as Exhibit A. Defendant's current patent assignments demonstrate through actual signed documents, including LaSalle's PIIA, that Defendants own the rights to the MOVA Assets and are truthfully stating their ownership rights.

## **FIRST COUNTERCLAIM**
## **(DECLARATORY RELIEF)**

    69. Defendants repeat and reallege each of the allegations contained in Paragraphs 1 through 68, inclusive, as though fully set forth herein.

    70. An actual controversy has arisen and now exists between Defendants and Shenzhenshi concerning ownership of the MOVA Assets. Defendants contend that they own the MOVA Assets, whereas Shenzhenshi disputes this contention and contends that it owns the MOVA assets. Valuable legal rights flowing from ownership of the MOVA Assets are directly and substantially affected by this controversy.

    71. Defendants desire a judicial determination of the ownership rights in the MOVA Assets, and request a declaration that Rearden Mova LLC, a wholly-owned subsidiary of Rearden, owns the

1 MOVA Assets.

2   72. A judicial declaration is necessary and appropriate at this time.  On information and belief, Shenzhenshi has purported to license the MOVA assets, which it does not own, to at least one other entity, thereby potentially impairing Rearden Mova LLC's ability to use, control, and benefit from its intellectual property and the MOVA Assets.

## PRAYER FOR RELIEF

Wherefore, Defendants and Counterclaimants pray that the Court:

  a. Issue an Order declaring that:

    i. Rearden Mova LLC, a wholly-owned subsidiary of Rearden, owns the MOVA Assets,

    ii. The portion of the MOVA Assets held by Shenzhenshi have been and are held in constructive trust for Rearden Mova LLC, a wholly-owned subsidiary of Rearden, and

    iii. Shenzhenshi shall transfer all physical property and all other assets associated with or derived from the MOVA Assets to Rearden Mova LLC, a wholly-owned subsidiary of Rearden;

  b. Dismiss Shenzhenshi's Complaint in its entirety, with prejudice;

  c. Award Defendants and Counterclaimants reasonable attorneys' fees and costs to the extent permitted by law;  and

  d. Grant Defendants and Counterclaimants all other relief that the Court deems just and proper.

Dated:  April 1, 2015        DURIE TANGRI LLP

              By: */s/ Ragesh K. Tangri*
                 RAGESH K. TANGRI
                 JOSEPH C. GRATZ
                 ALEX J. FEERST

              Attorneys for Defendants
              REARDEN LLC, REARDEN MOVA LLC, MO2 LLC, MOVA LLC

## CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on April 1, 2015 with a copy of this document via the Court's CM/ECF system.

>                               */s/ Ragesh K. Tangri*
>                               RAGESH K. TANGRI