IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD., | Case No. CV 15-cv-00797-SC |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| REARDEN, LLC; REARDEN MOVA, LLC; MO2, LLC; MOVA, LLC, | |
| Defendants. | |

Defendants Rearden, LLC; Rearden MOVA, LLC; MO2, LLC; and MOVA, LLC (collectively "Defendants" or "Rearden") have filed a motion for summary judgment on Defendants' counterclaim for declaratory relief.  ECF No. 35 ("Mot.").  The motion is fully briefed and suitable for disposition without oral argument per Local Rule 7-1(b).  For the reasons provided below, Defendants' motion is DENIED.

## I. BACKGROUND

This case is about who owns MOVA, a set of hardware, software, and intellectual property used for facial motion capture in motion pictures and video games (the "MOVA Assets").  The relevant players

///

in this dispute are Greg LaSalle ("LaSalle") and Stephen Perlman ("Perlman").

LaSalle and Perlman have known each other for over forty years. During that time, they engaged in a number of business dealings and were friends. From 2000 to 2013, LaSalle was employed by Perlman's companies -- first Rearden, then OnLive, and then Rearden again -- where he helped develop the MOVA Assets. In 2012, OnLive went out of business, and the MOVA Assets were transferred to a company called OL2. After OnLive went out of business, LaSalle transferred from OnLive to Rearden at which point he signed an employment contract, the interpretation of which is central to this litigation. The contract included a Proprietary Information and Inventions Agreement ("PIIA") in which LaSalle committed to assign Rearden all "proprietary information" acquired by him during his employment. ECF No. 38-3. The PIIA defines "Proprietary Information" as information which has "commercial value in the Company's Business," including intellectual property. Id.

In September 2012, OL2's CEO, Gary Lauder ("Lauder"), contacted Perlman and offered to transfer the MOVA Assets to Rearden at no charge. Perlman replied that he "did not want it, nobody would pay for it and that [OL2] should just give [the MOVA Assets] to [LaSalle and his business partner Ken Pearce]." ECF No. 44-3; see also 43-5 at REARDEN 000106 ("I suggest you transfer the assets to [LaSalle and Pearce] through some means, and let them have a go at it . . . I don't see any way to monetize it meaningfully."); 43-7 at REARDEN 000099 ("[G]iving [the MOVA Assets] to [LaSalle and Pearce] not only is a reasonable thing to do for their careers, but it is fair for them to derive what

**United States District Court**
For the Northern District of California

benefit they can from it . . . ."). After OL2 agreed to sell the
MOVA Assets to LaSalle, Perlman told Lauder, "This was really the
right thing to do . . . I'll help [LaSalle and Pearce] with the
legal resources to set up a company to hold the assets, but I'll
leave it to them to put it together and drive it forward." ECF No.
43-5 at REARDEN 000104. A few weeks later, Perlman introduced
LaSalle to an attorney to help set up a company and negotiate with
OL2. During the negotiations, Perlman stated in writing to the
lawyer representing LaSalle that "this transaction is between
[LaSalle] and OL2, and I [Perlman] am not a party involved. I'm
just offering suggestions and information to the extent it is
helpful." ECF No. 44-13 at SHST0000057.

LaSalle subsequently established a company called MO2 and
acquired the MOVA Assets on February 11, 2013. Perlman, however,
asserted that Rearden owned the MOVA Assets by operation of the
PIIA which stated that any "proprietary information" that LaSalle
acquired while he was employed by Rearden would be assigned to
Rearden. After several heated discussions with Perlman, LaSalle
resigned his position shortly thereafter.

On May 8, 2013, LaSalle, through his company MO2, sold the
MOVA Assets to Plaintiff Shenzhenshi Haitiecheng Science and
Technology Co., LTD ("Shenzhenshi"). On February 20, 2015,
Shenzhenshi filed its complaint in this suit. Among other claims,
Shenzhenshi asks the Court to declare that Shenzhenshi owns the
MOVA Assets and that Rearden does not have any ownership interest.
On April 1, 2015, Rearden filed its answer and counterclaim, asking
the Court to declare that Rearden owns the MOVA Assets. Now before
///

3

the Court is Rearden's motion for summary judgment on its

counterclaim for declaratory relief.

## II. **LEGAL STANDARD**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment should be entered against a party that fails to make a showing sufficient to establish the existence of an element essential to its case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III. **DISCUSSION**

Rearden claims that the Court should declare, as a matter of law, that Rearden is the sole owner of the MOVA Assets given that (1) the PIIA clearly states that LaSalle assigned all rights in future-acquired proprietary information to Rearden during the term of his employment, and (2) the PIIA is fully integrated with a no

///

///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

oral modification and an antiwaiver[1] clause.  Mot. at 1.  In response, Shenzhenshi asserts various grounds on which it believes the Court should deny Rearden's motion: (1) the PIIA does not govern because the MOVA Assets are outside of Rearden's business; (2) the PIIA does not apply because LaSalle's business -- MO2 -- acquired MOVA, not LaSalle himself; (3) the PIIA was modified by signed writings in the form of emails sent by Perlman; (4) the PIIA was modified orally once the oral modifications were fully executed; (5) the PIIA is illegal and unenforceable; (6) Rearden waived any right to the MOVA assets through words and conduct; (7) Rearden is estopped from claiming that the transfer from OL2 to LaSalle was for Rearden's benefit; (8) Rearden has unclean hands; and (9) Rearden's counterclaim is barred by the doctrine of laches.  Opp'n at 17-25.  As explained below, Shenzhenshi's arguments regarding waiver and estoppel establish genuine disputes of material fact fatal to Rearden's motion.  The Court does not make any findings as to Shenzhenshi's other arguments, however.

"Waiver is the intentional relinquishment of a known right after full knowledge of the facts . . . [and] does not require any act or conduct by the other party.  Thus, the pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right."  <u>Old Republic Ins. Co. v. FSR Brokerage, Inc.</u>, 80 Cal. App. 4th 666, 678 (2000) (citations omitted).  A party's intent to waive a contractual right can be demonstrated through words or conduct.  <u>See</u> <u>Biren v. Equality</u>

---

[1] Antiwaiver provisions -- also known as "no-oral waiver" provisions -- require a signed writing before a party will be deemed to have waived a contract term through words or conduct alone.

1    <u>Emergency Medical Group, Inc.</u>, 102 Cal. App. 4th 125, 141 (2002);

2    <u>see also</u> <u>Wagner v. Glendale Adventist Med. Ctr.</u>, 216 Cal. App. 3d

3    1379, 1388 (1989) (finding waiver where a party "behaved in a

4    manner antithetical to one or more terms of an express written

5    contract").  Finally, waiver is normally a question of fact for the

6    jury.  <u>Black v. Arnold Best Co.</u>, 124 Cal. App. 2d 378, 384-85

7    (1954).

8         Equitable estoppel is separate from, though similar to, the

9    doctrine of waiver.  As Witkin explains,

10        [a] valid claim of equitable estoppel consists of the
          following elements: (a) a representation or concealment
11        of material facts (b) made with knowledge, actual or
          virtual, of the facts (c) to a party ignorant, actually
12        and permissibly, of the truth (d) with the intention,
          actual or virtual, that the ignorant party act on it, and
13        (e) that party was induced to act on it."

14   13 Witkin, Summary 10th (2005) Equity, § 191, p. 527.  Thus, unlike

15   the doctrine of waiver, equitable estoppel requires certain acts or

16   conduct by both parties.  In particular, it requires reliance on

17   the part of the party who is asserting it.

18        Shenzhenshi has presented evidence that Perlman knew about

19   LaSalle's desire to obtain the MOVA Assets for LaSalle's own

20   benefit, actively encouraged LaSalle to acquire the MOVA Assets,

21   expressly disclaimed any interest in acquiring the MOVA Assets on

22   Rearden's behalf, and explicitly stated that he was not a party to

23   the transaction between OL2 and LaSalle.  <u>See</u> ECF Nos. 44-3, 43-5

24   at REARDEN 000106, 43-7 at REARDEN 000099, 43-5 at REARDEN 000104,

25   44-13 at SHST0000057.  In short, Shenzhenshi's evidence suggests

26   that Perlman clearly communicated through his words and actions

27   that he was not going to enforce the assignment provisions of the

28   PIIA.  Further, the evidence suggests that LaSalle relied on

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Perlman's words and actions to his detriment, ultimately causing

2  LaSalle to resign his position at Rearden.

3      Rearden argues that Perlman could not have waived Rearden's

4  right to the assignment of the MOVA Assets because of the

5  antiwaiver provision in the PIIA.  Section M of the PIIA states,

6  "No . . . waiver of any rights under this Agreement will be

7  effective unless in a writing signed by the CEO of the Company and

8  [LaSalle]."  ECF No. 38-3.  The presence of an antiwaiver

9  provision, however, is not dispositive because the antiwaiver

10  provision can itself be waived through words or conduct.  See,

11  e.g., Gould v. Corinthian Colleges, Inc., 192 Cal. App. 4th 1176,

12  1180 (2011) (finding that "an antiwaiver provision would militate

13  against a finding of waiver under most circumstances" but such a

14  clause is waived where enforcement of the clause in light of the

15  party's conduct would be "absurd" or "unconscionable").

16      Shenzhenshi's evidence suggests that Perlman either expressly

17  or impliedly waived the antiwaiver provision of the PIIA when he

18  encouraged LaSalle to purchase the MOVA Assets for LaSalle's own

19  benefit.  After encouraging and facilitating the transfer of the

20  MOVA Assets from OL2 to LaSalle, Perlman cannot then point to the

21  antiwaiver provision to claim the MOVA Assets for himself.  Such a

22  result would be inequitable, "absurd," and "unconscionable."  See

23  id.

24      In sum, even if the Court were to assume that the PIIA

25  encompasses the MOVA Assets and that the effect of the PIIA was to

26  assign ownership of the MOVA Assets to Rearden upon LaSalle's

27  acquisition from OL2 -- a finding that the Court does not make --

28  there is, at the very least, a genuine dispute of material fact as

to whether Perlman's words and actions were so antithetical to Rearden's right to assignment as to constitute waiver and/or estoppel.  Because this is a sufficient basis on which to deny Rearden's motion, the Court need not address Shenzhenshi's other arguments as to why Rearden's motion ought to be denied.

**IV.  <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion for summary judgment on Defendants' counterclaim for declaratory relief is DENIED.

IT IS SO ORDERED.

Dated: October <u>15</u>, 2015

_____

UNITED STATES DISTRICT JUDGE