1    KILPATRICK TOWNSEND & STOCKTON LLP
     JON MICHAELSON (SBN 83815)
2    jmichaelson@kilpatricktownsend.com
     SCOTT E. KOLASSA (SBN 294732)
3    skolassa@kilpatricktownsend.com
     FRANCES B. COX (SBN 133696)
4    ncox@kilpatricktownsend.com
     1080 Marsh Road
5    Menlo Park, CA  94025
     Telephone:   650 326 2400
6    Facsimile:   650 326 2422

7    Attorneys for Plaintiff
     VIRTUE GLOBAL HOLDINGS LIMITED
8

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   VIRTUE GLOBAL HOLDINGS LIMITED,        Case No.  3:15-cv-00797-JST
     a business company incorporated in the
14   British Virgin Islands,

15                      Plaintiff,           FIRST AMENDED COMPLAINT FOR:

16         v.                                (1)  DECLARATORY RELIEF,
                                             (2)  FALSE ADVERTISING UNDER
17                                           CALIFORNIA BUS. & PROF. CODE
     REARDEN, LLC, a California Limited      § 17500,
18   Liability Company; REARDEN MOVA,        (3)  UNFAIR COMPETITION UNDER
     LLC, a California Limited Liability     CALIFORNIA BUS. & PROF. CODE
19   Company; MO2, LLC, a California Limited § 17200, AND
     Liability Company; and MOVA, LLC, a    (4)  INTENTIONAL INTERFERENCE
20   California Limited Liability Company,   WITH PROSPECTIVE ECONOMIC
                                             ADVANTAGE
21                      Defendants.

22

23

24

25

26

27

28

     68281900V.3

     FIRST AMENDED COMPLAINT; Case No. 3:15-CV-00797-JST

1   Plaintiff Virtue Global Holdings Limited ("Virtue") files this Complaint against Rearden,

2   LLC ("Rearden"), Rearden Mova, LLC ("Rearden Mova"), MO2, LLC ("MO2"), and Mova, LLC

3   ("Mova") (collectively "Defendants").  Virtue alleges as follows:

4   **JURISDICTION AND VENUE**

5   1.   This Court has jurisdiction under 28 U.S.C. section 1332(a) because plaintiff Virtue

6   is a citizen of the British Virgin Islands and each of defendants Rearden, Rearden Mova, MO2, and

7   Mova is a citizen of the State of California and the amount in controversy exceeds $75,000

8   exclusive of interest, attorneys' fees, and costs.

9   2.   Venue is proper in this District because, on information and belief, each of the

10  named defendants resides in San Francisco, California, and a portion of the events giving rise to

11  Virtue's claims occurred in this District.

12  **PARTIES**

13  3.   Plaintiff Virtue is a business company incorporated in the British Virgin Islands with

14  its principal place of business in Hong Kong, China.

15  4.   Defendant Rearden is a California limited liability company which was formed on or

16  about June 5, 2006.  On information and belief, Rearden maintains its principal place of business at

17  355 Bryant Street, Unit 110, San Francisco, California 94107.

18  5.   Defendant Rearden Mova is a California limited liability company which was

19  formed on or about April 19, 2013.  On information and belief, Rearden Mova maintains its

20  principal place of business at 355 Bryant Street, Unit 110, San Francisco, California 94107.

21  6.   Defendant MO2 is a California limited liability company which was formed on or

22  about September 8, 2014.  On information and belief, MO2 maintains its principal place of business

23  at 355 Bryant Street, Unit 110, San Francisco, California 94107.

24  7.   Defendant Mova is a California limited liability company which was formed on or

25  about September 18, 2014.  On information and belief, Mova maintains its principal place of

26  business at 355 Bryant Street, Unit 110, San Francisco, California 94107.

27  8.   Virtue is informed and believes, and on that basis alleges, that defendants Rearden,

28  Rearden Mova, MO2, and Mova comprise a single enterprise.  Alternatively or in addition, Virtue is

1   also informed and believes, and on that basis alleges, that each of the named defendants was acting

2   as the agent and representative of the other defendants in doing those things alleged in this

3   Complaint.  Alternatively or in addition, Virtue is further informed and believes, and on that basis

4   alleges, that there is a unity of interest and ownership between each of Rearden Mova, MO2, and/or

5   Mova, on the one hand, and equitable owner Rearden such that the separate personalities of one or

6   more of those entities, on the one hand, and Rearden, on the other hand, do not in reality exist, and

7   an inequitable result will arise if the acts in question are treated as those of Rearden Mova, MO2,

8   and/or Mova alone.

9                                  **SUMMARY OF THE DISPUTE**

10          9.      This is a controversy regarding ownership of certain patented technology and related

11   software and other intellectual property, known generally as MOVA.  MOVA can be utilized to

12   capture the facial performance of an actor by means of a specially designed camera rig for use in

13   motion picture, computer graphics, and other video applications.  MOVA technology was financed

14   and developed starting in the late 1990's by various individuals, many of whom were or are

15   affiliated with named defendant Rearden or its predecessor(s) in interest, including in particular

16   Steve Perlman ("Perlman").  In roughly 2003, efforts began to establish a commercial undertaking

17   around the technology.  The originators of MOVA were unable to operate a successful business

18   based upon the technology, abandoned the attempt, and transferred all of the assets involved (the

19   "MOVA Assets") to a third party.  In May 2013, the MOVA Assets were purchased by Shenzhenshi

20   Haitiecheng Science and Technology Co., Ltd. ("SHST").  Recently, MOVA received a science and

21   technology award conferred by the Academy of Motion Picture Arts and Sciences.  This award was

22   the subject of widespread publicity in the film and related industries.  In the wake of this recent

23   development, some of the originators of MOVA suffered a severe bout of "seller's remorse."  They

24   formed Defendants MO2, Rearden Mova, and Mova to attempt to misappropriate for the benefit of

25   themselves and/or defendant Rearden the MOVA Assets owned by Virtue.  Subsequently, Virtue

26   purchased the MOVA Assets from SHST.

27

28

1

## **GENERAL ALLEGATIONS**

2      10.     First introduced commercially in 2006, today MOVA is a process which

3 encompasses a number of patents and patent applications, the registered trademarks "Mova" and

4 "Contour," software, and related intellectual property.  A true and correct list of the MOVA Assets

5 is attached hereto and incorporated herein as Exhibit A.

6      11.     Plaintiff Virtue is informed and believes, and on that basis alleges, that as of

7 approximately 2004 or 2005, the MOVA Assets were owned by Mova, LLC, a California limited

8 liability company formed on or about June 15, 2004.  This entity is referred to in this Complaint as

9 "Original Mova."  Original Mova was not and is not related to named defendant Mova (which as

10 previously alleged was not formed until September 2014).

11      12.     Plaintiff Virtue is informed and believes, and on that basis alleges, that prior to

12 August 2012, ownership of the MOVA Assets was vested in and/or effectively transferred to a

13 company called OnLive, Inc., either directly or by virtue of the sale of the entire ownership interest

14 in Original Mova to OnLive, Inc.  Virtue is further informed and believes, and on that basis alleges,

15 that at the time of this vesting and/or transfer of ownership of the MOVA Assets, OnLive, Inc. was

16 owned and/or controlled by Perlman either directly or through one or more entities he had formed.

17      13.     Plaintiff Virtue is informed and believes, and on that basis alleges, that in or about

18 August 2012, OnLive, Inc. suspended its operations and transferred substantially all of its assets (as

19 part of an assignment for the benefit of creditors), including the MOVA Assets, to Lauder Partners.

20 Plaintiff Virtue is further informed and believes, and on that basis alleges, that following this

21 transaction the MOVA Assets came to be owned by an entity called OL2, Inc., either directly or by

22 virtue of the sale of the entire ownership interest in Original Mova to OL2, Inc.  At the time, OL2,

23 Inc. was owned and/or controlled by Lauder Partners.

24      14.     Plaintiff Virtue is informed and believes, and on that basis alleges, that shortly after

25 August 2012, OL2, Inc. decided that it did not want to retain the MOVA Assets.  It first offered to

26 return the MOVA Assets to Perlman or to an entity owned by him.  Perlman declined the offer.  In

27 doing so, he asserted that the MOVA Assets had little or no value and stated that a business built

28 around those assets would likely not be viable.  However, Perlman did suggest that one of the

FIRST AMENDED COMPLAINT; Case No. 3:15-CV-00797-JST                          - 3 -

1   individuals who at that time worked with the MOVA Assets might be interested in trying to salvage

2   the enterprise as a viable business.  As a result, and with Perlman's knowledge and encouragement,

3   OL2, Inc. agreed to sell the MOVA Assets to a new entity to be formed by Greg LaSalle

4   ("LaSalle").

5          15.    On or about November 9, 2012, LaSalle caused an entity called MO2, LLC to be

6   formed in California.  This entity is referred to in this Complaint as "Original MO2."  Original MO2

7   was and is in no way affiliated with defendant MO2 (which as previously alleged did not come into

8   existence until nearly 2 years later in September 2014).

9          16.    On or about February 11, 2013, Original MO2 acquired the MOVA Assets from

10  OL2, Inc., in part directly and in remaining part by virtue of the sale of the entire ownership interest

11  in Original Mova LLC to Original MO2.  Thereafter, LaSalle undertook to identify and solicit

12  potential buyers for the MOVA Assets who would also employ him and possibly others as part of a

13  MOVA-based business.

14         17.    On or about May 8, 2013, SHST acquired ownership of the MOVA Assets from

15  Original MO2 and Original Mova.  Since that time, SHST licensed the use of MOVA Assets in this

16  country to a U.S.-based entity.

17         18.    Following this transaction with SHST, Original Mova ceased operation.  On or about

18  November 26, 2013, Original MO2 also ceased to exist.

19         19.    On or about August 15, 2014, the Academy of Motion Picture Arts and Sciences

20  announced that MOVA had been nominated as a possible recipient of the 2014 Science and

21  Technology Academy Award.

22         20.    On or about September 8, 2014, defendant MO2 was formed – using the exact same

23  name as Original MO2.  On or about September 18, 2014, defendant Mova was formed – using the

24  exact same name as Original Mova.

25         21.    On September 18, 2014, an attorney apparently representing all of the named

26  defendants recorded in the U.S. Patent and Trademark Office eight (8) copies of the February 11,

27  2013 agreement whereby Original MO2 had acquired the MOVA Assets from OL2, Inc. as

28  purported assignments of the patents included in the MOVA Assets to named defendant MO2.  A

1   true and correct copy of one such purported assignment is attached hereto as Exhibit B.  As (mis)

2   represented in the cover sheet portion of this document, and in the cover sheets for each of the other

3   purported assignments, OL2, Inc. supposedly assigned the MOVA patents to defendant MO2.  This

4   obviously could not have happened because, as a matter of fact, OL2, Inc. had transferred

5   ownership of all MOVA Assets to Original MO2 more than 18 months earlier in February 2013.

6          22.     The next day, September 19, 2014, the same attorney – once again apparently

7   representing all of the named defendants – recorded in the U.S. Patent and Trademark Office

8   purported assignments of the patents included in the MOVA Assets from defendant MO2 (which of

9   course could not have owned and never did own those patents) to defendant Rearden Mova.  A true

10  and correct copy of one such purported assignment is attached hereto as Exhibit C.

11         23.     On September 29, 2014, another attorney– yet again apparently representing all of

12  the named defendants – recorded in the U.S. Patent and Trademark Office purported assignments of

13  the U.S. trademark registrations for the marks "Mova" and "Contour" from Original Mova (which

14  as of the date of this filing had ceased to exist and no longer owned the registrations) to named

15  defendant MO2.  True and correct copies of the abstracts of title maintained by the U.S. Patent and

16  Trademark Office reflecting these purported assignments are attached hereto as Exhibit D.

17         24.     Following recordation of these false assignments in the U.S. Patent and Trademark

18  Office, defendants Rearden, Rearden Mova, MO2, and/or Mova have made public statements to the

19  effect that one or another of them is the owner of the MOVA Assets.

20         25.     In January 2015, the Academy of Motion Picture Arts and Science announced that

21  the team which developed the MOVA technology had been awarded a 2014 Science and

22  Technology Academy Award.  Shortly thereafter, defendant Mova made one or more public

23  announcements in which it declared that it was a "Rearden Company" and that it owned some or all

24  of the MOVA Assets.

25         26.     More recently, in February 2015, Perlman – speaking on behalf of one or more of the

26  named defendants – stated that a licensee of certain of the MOVA Assets from SHST was not

27  properly authorized to use MOVA technology.

28

27.     On or about December 17, 2015, Virtue acquired ownership of the MOVA Assets from SHST.

### FIRST CLAIM FOR RELIEF

**Declaratory Relief**
**(Against All Defendants)**

28.     Virtue repeats and realleges each of the allegations contained in Paragraphs 1 through 26, inclusive, as though fully set forth herein

29.     An actual controversy has arisen and now exists between Virtue, on the one hand, and Rearden, Rearden Mova, MO2 and Mova on the other,  concerning ownership of the MOVA Assets.  Virtue contends it owns the MOVA Assets, whereas Rearden, Rearden Mova, MO2 and Mova dispute this contention and contend that they own the MOVA Assets. Valuable legal rights – those flowing from ownership of the MOVA Assets – are directly and substantially affected by this controversy.

30.     Virtue desires a judicial determination of the ownership rights in the MOVA Assets, and requests a declaration that it owns the MOVA Assets and that the purported assignments recorded in the U.S. Patent and Trademark Office by or on behalf of one or more of the defendants are invalid and have no force or effect.

31.     A judicial declaration is necessary and appropriate at this time. SHST licensed the MOVA Assets it purchased on May 8, 2013 to a U.S.-based entity.  That license ran with and burdened the MOVA Assets when Virtue acquired ownership from SHST.  Rearden, Rearden Mova, MO2, and Mova have disputed ownership of the MOVA Assets, thereby potentially impairing the license of the MOVA Assets and the ability of Virtue to use those assets freely.

### SECOND CLAIM FOR RELIEF

**False Advertising, California Business and Professions Code § 17500 et seq.**
**(Against All Defendants)**

31.     Virtue repeats and realleges each of the allegations contained in Paragraphs 1 through 26, inclusive as though fully set forth herein.

32.     Rearden, Rearden Mova, MO2, and/or Mova have used and continue to use false or

misleading representations of facts concerning the ownership of the MOVA Assets in a campaign

to mislead the public and actual and prospective users and licensees of those assets.  These false

statements include at least the following: (i) recording in the U.S. Patent and Trademark Office on

September 19, 2014 one or more purported assignments of the patents included in the MOVA

Assets from defendant MO2 (which never owned the patents) to defendant Rearden Mova;

(ii) recording in the U.S. Patent and Trademark Office on September 29, 2014 purported

assignments of the U.S. trademark registrations for the marks "Mova" and "Contour" from

Original Mova (which at the time no longer owned the registrations) to named defendant MO2;

(iii) making public statements to the effect that one or another of the named defendants is the

owner of the MOVA Assets; (iv) defendant Mova making one or more public announcements

declaring that it owned some or all of the MOVA Assets; and (v) Perlman – speaking on behalf of

one or more of the named defendants – stating that a licensee of certain of the MOVA Assets was

not properly authorized to use MOVA technology.

33.     Rearden, Rearden Mova, MO2, and/or Mova knew or should have known that these

statements were untrue and/or misleading at the times they were made.

34.     Members of the public were and are likely to be deceived by these false and

misleading representations of fact suggesting that one or more of the named defendants, rather

than Virtue, owns the MOVA Assets and that a licensee of the MOVA Assets was not authorized

to use MOVA technology.

35.     On information and belief, these false and misleading representations were made or

disseminated with intent to induce the public, including actual or potential users and licensees of

the MOVA Assets, to enter into transactions with one or more named defendants rather than with

Virtue.

36.     As a result, Virtue has suffered and will continue to suffer irreparable harm unless

and until Rearden, Rearden Mova, MO2, and Mova cease making the false representations alleged

herein.  Virtue has no adequate remedy at law, and is entitled to preliminary and permanent

injunctive relief with respect to false advertising by the named defendants.

1

### THIRD CLAIM FOR RELIEF

2

**Unfair Competition, California Business and Professions Code § 17200 et seq.**
**(Against All Defendants)**

3

4          37.          Virtue repeats and realleges each of the allegations contained in Paragraphs 1

5    through 26, inclusive, as though fully set forth herein.

6          38.          Rearden, Rearden Mova, MO2, and/or Mova's conduct as alleged herein in

7    paragraphs 20 through 26, inclusive, constitutes "unlawful, unfair, or fraudulent business act[s] or

8    practice[s]" within the meaning of California Business and Professions Code sections 17200 et

9    seq.

10          39.          As a result of Rearden, Rearden Mova, MO2, and/or Mova's unlawful, unfair or

11   fraudulent business practices, Virtue has been and will continue to be harmed, and Rearden,

12   Rearden Mova, MO2, and Mova have been and will continue to be unjustly enriched.

13          40.          As a result, Virtue is entitled to preliminary and permanent injunctive relief,

14   restitution, and an order of disgorgement of any and all of Rearden, Rearden Mova, MO2, and

15   Mova's ill-gotten gains attributed to their unlawful, unfair, or fraudulent business acts or practices.

16   Virtue has suffered and will continue to suffer irreparable harm from Rearden, Rearden Mova,

17   MO2, and/or Mova's unlawful, unfair, or fraudulent business acts or practices, and has no

18   adequate remedy at law with respect thereto.

19

### FOURTH CLAIM FOR RELIEF

20

**Intentional Interference With Prospective Economic Advantage**
**(Against All Defendants)**

21

22          41.          Virtue repeats and realleges each of the allegations contained in Paragraphs 1

23   through 26, inclusive, as though fully set forth herein.

24          42.          Rearden, Rearden Mova, MO2, and/or Mova deliberately interfered with Virtue's

25   prospective economic advantage.  That prospective economic advantage involves relationships

26   with licensees, prospective licensees, users, and prospective users of the MOVA Assets that entail

27   substantial future economic benefit to Virtue.  With knowledge of  the existence of these valuable

28   relationships, Rearden, Rearden Mova, MO2, and/or Mova engaged in acts, as alleged in

paragraphs 20 through 26, inclusive, designed to interfere with and disrupt Virtue's relationships with existing and prospective customers and licensees.  Virtue is informed and believes, and on that basis alleges, that actual disruption of the relationships occurred as a result.

43.     Rearden, Rearden Mova, MO2, and Mova acted oppressively and maliciously with intent to cause injury to Virtue and with conscious disregard of the rights of others.  Accordingly, Virtue is entitled to punitive damages, in addition to compensatory damages, as permitted by law.

44.     As a result, Virtue has suffered and will continue to suffer irreparable harm unless and until the named defendants cease interfering with Virtue's prospective economic advantage. Virtue has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief.

## RELIEF REQUESTED

WHEREFORE, Virtue prays for relief as follows:

1.     For a declaration that Rearden, Rearden Mova, MO2, and Mova are jointly and severally liable for the wrongful acts alleged in this Complaint; Virtue owns outright the MOVA Assets.

2.     For a declaration (a) that Virtue owns the MOVA Assets, and that none of Rearden, Rearden Mova, MO2, or Mova has any ownership interest therein, (b) that the purported assignments recorded in the U.S. Patent and Trademark Office by or on behalf of one or more of the defendants are invalid, and (c) that each of those purported assignments has no force or effect;

3.     For preliminary and permanent injunctive relief enjoining the wrongful and unfair acts of Rearden, Rearden Mova, MO2, and Mova, along with those persons acting in concert with them;

4.     For actual damages sustained as a result of the wrongful acts alleged herein, together with prejudgment interest, according to proof;

5.     For restitution of all profits acquired by means of Rearden, Rearden Mova, MO2, and/or Mova's unfair competition;

6.     For punitive damages;

FIRST AMENDED COMPLAINT; Case No. 3:15-CV-00797-JST                                  - 9 -

1    7.    For costs of suit, including reasonable litigation expenses, to the extent permitted

2    by law;

3    8.    For such other and further relief as the Court deems just and proper.

4                                        Respectfully submitted,

5                                        KILPATRICK TOWNSEND & STOCKTON LLP

6

7    DATED:  March 18, 2016          By: */s/ Scott E. Kolassa*
                                         SCOTT E. KOLASSA

8                                        Attorneys for Plaintiff VIRTUE GLOBAL
9                                        HOLDINGS LIMITED

10

11                          **DEMAND FOR TRIAL BY JURY**

12        Trial of this case has been bifurcated, with declaratory relief claims by both parties to be

13   decided initially.  Plaintiff Virtue does not demand trial by jury for the initial phase of the trial, but

14   demands trial by jury of all its remaining claims for which it has a right thereto.

15

16                                        Respectfully submitted,

17                                        KILPATRICK TOWNSEND & STOCKTON LLP

18

19   DATED:  March 18, 2016          By: */s/ Scott E. Kolassa*
                                         SCOTT E. KOLASSA

20                                        Attorneys for Plaintiff VIRTUE GLOBAL
21                                        HOLDINGS LIMITED

22

23

24

25

26

27

28