Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Zhuanjia Gu (State Bar No. 244863)
gu@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone:  (650) 521-5930
Facsimile:  (650) 521-5931

*Attorneys for Defendants*
REARDEN LLC; REARDEN MOVA, LLC,
MO2, LLC, and MOVA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRTUE GLOBAL HOLDINGS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>REARDEN LLC; REARDEN MOVA, LLC, MO2, LLC, and MOVA, LLC,<br><br>Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD.,<br><br>Counterclaim Defendant. | Case No. 3:15-cv-00797-JST<br><br>**REQUEST FOR RELIEF FROM MAGISTRATE ORDER REGARDING ATTORNEY-CLIENT PRIVILEGE AND FOR ADDITIONAL BRIEFING AND EVIDENTIARY HEARING** |

Under Local Rule 72-2, Defendants seek relief from D.I. 103 (the "Order"), granting in part Plaintiff's motion to compel the production of MO2 LLC ("MO2") privileged documents.

To reach this decision, Magistrate Judge Kim had to answer the ultimate question in this case: which party controlled MO2 in February 2013, and therefore held the attorney-client privilege on behalf of MO2. Defendants submit that the answer is simple: MO2 was a Rearden company; Greg LaSalle's involvement with MO2 was part of his employment with Rearden; and Rearden held the attorney-client privilege (including the right to transfer that privilege with the MOVA Assets to another Rearden company, Rearden Mova). Plaintiff does not dispute LaSalle's employment, or his obligations under the PIIA, but argues instead that MO2 and the MOVA Assets were gifts from Rearden to LaSalle. There is nothing more than LaSalle's word to support this claim. Still, Magistrate Judge Kim ruled for Plaintiff, but without a full record and with an incomplete and incorrect timeline.[1] To decide the privilege issue, ownership must first be determined, and it is precipitous to decide ownership on less than a full and complete record in the case.[2] Pending determination of the ultimate ownership issue, the attorney-client privilege should be maintained: "where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).

1.   The Court Erred in Finding the Attorney-Client Privilege Did Not Transfer to Rearden Mova

The Court's legal basis for ordering disclosure of the MO2 privileged documents was that the privilege died with the unauthorized[3] corporate dissolution of MO2 in November 2013. (D.I. 103, at

---

[1] Detailed timelines are submitted with the supporting Declaration of Stephen G. Perlman ("Perlman Dec."), Ex. 1A-G. Defendants understand that Magistrate Judge Kim did not have the benefit of all of the facts when the Order issued; Defendants were limited to less than two pages in the joint letter discovery brief (D.I. 78) to address these issues. Defendants are limited to 5-pages herein, and therefore request permission to submit additional briefing and an evidentiary hearing on these important issues.

[2] The Court acknowledges "whether Plaintiff or Rearden Mova assumed all assets and liabilities of Original MO2, is the heart of this entire lawsuit." (D.I. 103, at 9). Saying that the Order is not the law of the case (*id.*) does not cure the problem. The error is compounded by the Court's reliance on a fragmented "keyhole view" (Perlman Dec., ¶¶ 182-193) of the privileged information at issue.

[3] *See* Section 3 regarding LaSalle's lack of authority to act on behalf of MO2. The Court also erred in finding that the privilege expired upon dissolution of MO2, because the privilege continues for litigation. *Reilly v. Greenwald & Hoffman, LLP*, 196 Cal. App. 4th 891, 901-902 (2011); Cal. Corp. Code § 2010(a). The Court's suggestion that Rearden lost the privilege by failing to monitor public records (D.I. 103, at 10), with no reason to predict that a former employee would take unauthorized action, is without basis in the law.

7-9.)  This conclusion is premised on the finding that the privilege did not earlier, in April 2013, transfer with the MOVA Assets to Defendant Rearden Mova.  (*Id.*, p. 9.)[4]

There is substantial evidence of the transfer of the MOVA Assets to Rearden Mova:  Rearden Mova was formed on April 19, 2013 to receive the MOVA Assets.  Perlman Dec. ¶ 24, Ex. 4.[5]  The April 19, 2013 assignment of the MOVA patents and trademarks shows the transfer of the Mova Assets to Rearden Mova.[6]   Rearden, not MO2, paid all of the patent and trademark maintenance fees after the transfer.  *Id.*, ¶ 141; Declaration of Cindy Ievers ("Ievers Dec."), ¶ 16 .  And Rearden formally terminated LaSalle's employment effective April 21, 2013, after the MOVA Assets were transferred out of MO2.  Perlman Dec. ¶ 25, Exs. 5-6.  The MOVA Assets were the only assets of the holding company MO2, and control of MO2's business (the MOVA Assets) therefore also transferred to Rearden Mova.  Perlman Dec. ¶ 204.   As acknowledged in the Order, where control of a company is transferred with substantially all of the company's assets, the attorney-client privilege transfers as well.  (D.I. 103, at 8).

2.   The Court Erred In Finding That Perlman Disclaimed An Interest In MO2

The Court confuses Rearden CEO Steve Perlman's early statements about the value of the MOVA Assets with Rearden's later formation and management of MO2.  The timeline is critical: in September 2012, Greg LaSalle and Ken Pearce said they wanted to start their own business with the MOVA Assets.  Perlman Dec. ¶¶ 69-81, D.I. 44-4.  Perlman agreed to support that endeavor – on the express condition that LaSalle and Pearce first terminate their employment with Rearden.  *Id.*, ¶ 77.  Perlman was not <u>at that time</u> convinced of the value of the MOVA Assets to Rearden.  *Id.*, ¶ 76.  The documents cited in the Order as supporting Perlman's alleged disclaimer of an interest in MO2 are

---

[4] The Court also bases its ruling on the incorrect assumption that MO2 LLC could not be reinstated (*id.* at 7); however, California will restore an LLC when, as here, dissolution was unauthorized or fraudulent. *See* CA Gov. Code § 12260, *et seq.*

[5] LaSalle was aware of, but took no action against, Rearden Mova's formation. (Perlman Dec., ¶ 24).

[6] The assignments reflected an *execution date* of April 19, 2013, consistent with the transfer of the MOVA Assets to Rearden Mova on that date.  Perlman Dec. ¶¶ 213-214.  The assignments were recorded before Rearden had any knowledge of Plaintiff's claim of ownership of the MOVA Assets. *Id.*  The formation date of the second MO2 (D.I. 103, p. 7) is irrelevant to the earlier transfer to Rearden Mova.

all from this time period.  *See* D.I. 44-4; 44-5 (Sept. 20 and 23, 2012).[7]

The evidence is unequivocal that both LaSalle and Rearden's positions shifted in October 2012:  first, LaSalle decided he did not want to start his own company and to instead remain a Rearden employee.[8]  Consistent with this decision, LaSalle continued to receive a salary and benefits from Rearden, to use Rearden office space, phone, and email address, and to submit his expense reports to Rearden.  Ievers Dec. ¶ 9.  At the same time, Rearden achieved a motion capture technology breakthrough that would revolutionize Mova, and LaSalle presented a business case to Perlman for Rearden to acquire the MOVA Assets.  Perlman Dec. ¶¶69, 106-108, Ex. 11.   Rearden therefore changed its position, and decided to acquire the MOVA Assets.  Rearden set up MO2 as a holding company for the MOVA Assets.  *Id.*, ¶ 30.  LaSalle was then tasked, <u>as a part of his continuing Rearden employment</u>, with managing the acquisition; not to use his Rearden signature for self-enrichment.  *Id.*, ¶¶ 172-173.  MO2 was set up by Rearden's corporate counsel of over 15 years to acquire the MOVA Assets on behalf of and for the benefit of Rearden.  *Id.*, ¶ 18.  Perlman never disclaimed an interest in MO2, and there is no evidence that he did.

3.  <u>The Court Erred in Finding LaSalle Had Authority To Disclose MO2 Documents (and Thereby Waive MO2 Privilege)</u>

By choice, LaSalle's work with MO2 was subject to Rearden's employment agreement and PIIA, and Rearden relied on the protections of the PIIA when allowing LaSalle to participate in the formation of MO2 and acquiring the MOVA Assets for Rearden's benefit.  Perlman Dec. ¶¶ 152-156.  Under the express terms of the PIIA, any work or acquisition by LaSalle connected with facial motion capture—the technology of the MOVA Assets—was contractually assigned to Rearden.  *Id.*, ¶ 157-166; D.I. 35.[9]  LaSalle's identification as organizer and agent for service of process on the

---

[7] The only later document is taken out of context. In D.I. 44-13, Perlman stated "we are taking some care to be sure the OL2 does not see that I am even helping, because it may delay the transaction, given the past behavior we have seen from them"; this meant only that Perlman wanted to avoid complications with OL2's Chairman, Gary Lauder, based on their recent history, and does not state or suggest that Rearden and Perlman were not involved with MO2.  Perlman Dec. ¶ 187.

[8] LaSalle made the informed choice to remain a Rearden employee, with the full understanding that his efforts would be made on behalf of and for the benefit of Rearden, very shortly after Rearden terminated the salary of his co-worker Ken Pearce following Pearce's unsuccessful attempt to broker the MOVA Assets for his own exclusive benefit by cutting Rearden out of the deal.  Perlman Dec., ¶ 80-94.

[9] The force and effect of the PIIA are explained in Defendants' Summary Judgment motion and

corporate filings does not negate his contractual obligations to Rearden.  The Court acknowledges that "the PI[I]A did contain a provision preventing [LaSalle] from obtaining employment with another company that competed with Rearden without express permission,"[10] (D.I. 103, at 2), it errs in stating "[h]ere, express permission for Mr. LaSalle to work for Original MO2 seems clear from the electronic emails from Mr. Perlman." (D.I. 103, at n.4)  Not only did the Court misconstrue the timeline, but the PIIA expressly requires the written approval of both Perlman *and* Rearden HR Director Cindy Ievers.  Ievers could not have provided such approval because she was unaware of the formation of MO2.  Perlman Dec., ¶ 173; Ievers Dec. ¶ 7.  Because LaSalle was not authorized to work for a competing company to Rearden, MO2 thus must have been a Rearden company.

The Court also erred in finding that, by allowing LaSalle to have "some managerial role" (D.I. 103, at 11) in MO2, Rearden therefore authorized him to disclose privileged information to Plaintiff.  The Court mistakenly focuses on LaSalle's authority to waive the attorney-client privilege after his employment with Rearden ended,[11] but LaSalle <u>never</u> had that right.  Under the PIIA, LaSalle's participation in the formation of MO2 and acquisition of the MOVA Assets was on behalf of and for the benefit of Rearden.  (*See* D.I. 35)  The authority to assert or waive the attorney-client privilege of a company belongs to those who control that company:  here, Rearden.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).[12]  LaSalle's unauthorized disclosure of MO2's privileged documents does not waive the privilege.  *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 U.S. Dist. LEXIS 42740, at *20-21 (N. D. Cal. 2013).

---

supporting documents, incorporated by reference.  (D.I. 35, 35-1) The Court's citation to California BPC § 16600 as prohibiting such an agreement is in error; restrictions on competition with a *current employer* do not violate this section.  *See Fowler v. Varian Assocs., Inc.,* 196 Cal. App. 3d 34, 44 (1987).

[10] The Court also errs when it later ignores this provision, stating "there is nothing in the PI[I]A that addresses [LaSalle's] ability to control Original MO2."  (D.I. 103, at 11)

[11] There is no question that former employees do not have the right to waive privilege for their former employer.  *See Venture Law Group v. Superior Court of Santa Clara Cnty.*, 118 Cal. App. 4th 96, 104-05 (2004).

[12] The Court accepts Plaintiff's representation that LaSalle's disclosure was made in May 2013, and not to Plaintiff's counsel during this case (Perlman Dec. Ex. 17 at 17; D.I. 103, at 13).  In response to Defendants' later request for evidence of this fact, Plaintiff's counsel said he was "speaking hypothetically" at the hearing.  There is no evidence that the disclosure pre-dated this litigation or wasn't encouraged by Plaintiff's lawyers, which should not constitute waiver.  *See, e.g., Clark v. Superior Court of San Diego Cnty.*, 196 Cal. App. 4th 37, 52 (2011).

The Court's distinction between privileged information and proprietary information is also in error: the PIIA prohibited LaSalle's disclosure of <u>all</u> Company (including Rearden subsidiaries) documents and materials, including the privileged documents, before and after the termination of LaSalle's employment.  Perlman Dec., ¶¶ 17, 166-168.  The Court also erred in finding that there is no evidence that Rearden notified LaSalle that he did not have the authority to act on behalf of MO2 after his Rearden employment ended.  (D.I. 103, at 5)  LaSalle was explicitly and repeatedly informed of his obligations under the PIIA, including his obligation to return the Mova Assets, by both Perlman and Ievers, beginning in February 2013 and continuing through at least June 2013. Perlman Dec., ¶¶ 136-138, Ex. 15; Ievers Dec., ¶¶ 13-14.[13]

4.  <u>Rearden Maintained Its Status as Manager/Owner of MO2</u>

The Court's Order refers frequently to the corporate structure of Rearden and MO2, and the absence of formal corporate documents.  Rearden is a technology incubator.  It has many projects at any given time, and, like other companies, commonly forms a simple holding company under an implied oral operating agreement to temporarily hold newly acquired assets.  Perlman Dec., ¶¶ 7-8, 201-207.  There is nothing unusual, or improper, in this practice; Plaintiff's own corporate structure does just this.  *Id.*  There is also ample evidence that Defendants preserved their status as managers or owners of MO2:  Rearden CEO Perlman was consistently involved in the management of MO2 and its relationship with attorney Alan Kalin;[14] the PIIA was in place and protected Rearden's interest by providing that all of LaSalle's activities benefitted Rearden; and Perlman did not disclaim an interest in MO2.  Corporate formalities do not dictate who can assert the attorney-client privilege on behalf of a corporation.  Those who control the corporation – Rearden, for MO2 – have that right. *See Weintraub*, 471 U.S. at 348.

---

[13] The Court declined counsel's offer at the hearing to submit such evidence. (Perlman Dec. Ex. 17 at 21-22; 35-36).  The Court also cites to delay, but between LaSalle's first statement that he intended to keep the Mova Assets for his own benefit, made February 14, 2013, and April 21, 2013 when Rearden terminated LaSalle's employment after transferring the MOVA Assets to Rearden Mova, Rearden worked steadily to resolve these issues with LaSalle, who vacillated as to whether he would abide by his obligations under the PIIA.  Perlman Dec., ¶¶ 133-136; Ievers Dec., ¶ 13.

[14] Defendants' privilege log shows that Perlman was either the author, recipient or copied on nearly every single privileged communication at issue.  (D.I. 110-2)  In contrast to Defendants' comprehensive log, which lists 476 documents, Plaintiff has submitted a 9-entry log that post-dates their alleged MO2 acquisition and cannot be credibly complete. Perlman Dec. ¶¶ 194-200.

1

2

3    Dated:  April 22, 2016

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

TURNER BOYD LLP

By:   */s/ Jennifer Seraphine*
     Karen I. Boyd (State Bar No. 189808)
     boyd@turnerboyd.com
     Jennifer Seraphine (State Bar No. 245463)
     seraphine@turnerboyd.com
     Zhuanjia Gu (State Bar No. 244863)
     gu@turnerboyd.com
     TURNER BOYD LLP
     702 Marshall Street, Suite 640
     Redwood City, California 94063
     Telephone:  (650) 521-5930
     Facsimile:  (650) 521-5931

     Attorneys for Defendants
     REARDEN, LLC, REARDEN MOVA, LLC,
     MO2, LLC, AND MOVA, LLC