UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTUE GLOBAL HOLDINGS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>REARDEN LLC, et al.,<br><br>Defendants. | Case No. 15-cv-00797-JST<br><br>**ORDER REGARDING PARTIES' MOTIONS FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 119, 120 |

Before the Court are the parties' Motions for Relief from Nondispositive Pretrial Order of Magistrate Judge, which order resolved a discovery dispute between the parties. See ECF No. 103 (Order); ECF No. 119 (Plaintiff's motion); ECF No. 120 (Defendants' motion).

Magistrate Judge Kim granted Plaintiff's motion to compel documents between Original MO2[1] and its counsel at Bingham McCutcheon, ECF No. 103 at 9; Defendant seeks relief from that portion of Judge Kim's order. Judge Kim also denied Plaintiff's motion to compel documents relevant to the formation of Second MO2 and communications with lawyers regarding assignments recorded with the U.S. Patent and Trademark Office ("USPTO") in September 2014, ECF No. 103 at 15; Plaintiff seeks relief from that portion of Judge Kim's order.

Because neither party has met its burden to demonstrate that Judge Kim's order was clearly erroneous or contrary to law, the Court will deny both motions.

**I.    LEGAL STANDARD**

A district court may refer non-dispositive pretrial issues to a magistrate under 28 U.S.C. § 636(b)(1)(A). This Court reviews the magistrate judge's findings of fact for clear error and

---

[1] There are two entities named "MO2" in this case. One was created on November 9, 2012, and will be referred to as "Original MO2." The other was formed on September 28, 2014, and will be referred to as "Second MO2."

reviews her legal conclusions to determine whether they are contrary to law. United States v. Doe, 136 F.3d 631, 636 (9th Cir.1998); Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999). The clear error standard allows the court to overturn a magistrate's factual determinations only if the court reaches a "definite and firm conviction that a mistake has been committed." Wolpin, 189 F.R.D. at 422 (citing Federal Sav. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co., 130 F.R.D. 507 (D.D.C.1990)).

## II.    DISCUSSION

The Court need not repeat the background history of the litigation discussed at length in Judge Kim's discovery order, see ECF No. 103, but will address the parties' disagreements over particular facts recited in the order.

### A.    Defendants' Motion (ECF No. 120)

Defendants object to the portion of Judge Kim's order that granted Plaintiff's motion to compel documents between Original MO2 and Bingham McCutchen. ECF No. 120. Defendants argue that Judge Kim erred in (1) finding that attorney-client privilege did not transfer to Rearden Mova; (2) finding that Perlman disclaimed an interest in MO2; and (3) finding LaSalle had authority to disclose MO2 documents.

#### 1.    Transfer of Privilege

Judge Kim concluded that the attorney-client privilege ended with the dissolution of Original MO2 in November 2013. Defendants argue that this "conclusion is premised on the finding that the privilege did not earlier, in April 2013, transfer with the MOVA Assets to Defendant Rearden Mova," when in fact the reverse is true. ECF No. 120 at 3. Defendants made the same argument before Judge Kim, but submitted no evidence in support of it. ECF No. 103 at 8. Consequently, Judge Kim concluded that Defendants did not meet "their burden to show that Rearden Defendants obtained the ability to assert the attorney-client privilege for Original MO2." ECF No. 103 at 9. Defendants now, for the first time, present a 63-page declaration from Stephen Perlman to support their argument that Rearden Mova was formed to receive MOVA Assets. See ECF No. 121, Perlman Decl. This evidence was not before Judge Kim, however, and the Court declines to consider it. See United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) ("[A]

1   district court has discretion, but is not required, to consider evidence presented for the first time in
2   a party's objection to a magistrate judge's recommendation."). The Court concludes that Judge
3   Kim did not err in her finding that Original MO2's privilege did not transfer to Rearden Mova on
4   April 19, 2013.

5   Even if the MOVA Assets had transferred to Rearden in April 2013, however, the Court
6   would still find that Magistrate Judge Kim did not err. The transfer of assets alone does not cause
7   a transfer of attorney-client privilege. City of Rialto v. U.S. Dep't of Def., 492 F. Supp. 2d 1193,
8   1201 (C.D. Cal. 2007); VIA Techs., Inc. v. SONICBlue Claims LLC, No. C 09-2109 PJH, 2010
9   WL 2486022, at *2 (N.D. Cal. June 16, 2010). Instead, the transfer of control over the entity
10  "result[s] in a transfer of the attorney-client privilege." City of Rialto, 492 F. Supp. 3d at 1201.
11  On this point, Judge Kim discussed the lack of evidence supporting a transfer of control from
12  Original MO2 to Rearden Mova. She considered that Rearden took no steps to inform LaSalle
13  that he no longer had a managerial role with Original MO2 and that Rearden did not take steps to
14  document changes in LaSalle's managerial status with Original MO2. ECF No. 103 at 5.

15  Judge Kim did not err in finding that Defendants did not meet their burden to show that
16  attorney-client privilege transferred from MO2 to Rearden Mova such that Defendants hold the
17  privilege for Original MO2.

18  **2.      Perlman's Disclaimed Interest in MO2**

19  Defendants next argue that Judge Kim erred in finding that Perlman disclaimed any
20  interest in MO2. ECF No. 120 at 3. In her discovery order, Judge Kim concluded that Defendants
21  did not meet their burden to show that Rearden was Original MO2's manager, given Perlman's
22  disclaimed involvement in Original MO2. ECF No. 103 at 10.

23  Judge Kim's finding was based on emails where Perlman: (1) disclaimed viability of the
24  MOVA technology in 2012; (2) stated that he thought the patents were not monetizable and that
25  the industry had moved past the technology; and (3) rejected OL2's offer to sell the MOVA
26  technology to Perlman. ECF No. 103 at 3. Further, Judge Kim noted that the engagement
27  agreement to form MO2 noted that Rearden LLC would pay fees but that the engagement was
28  only with MO2. Id. Finally, Judge Kim found that no corporate documents reflected that Perlman

3

or Rearden had any managerial role in Original MO2. Id. at 4.

Because this Court does not reach the "definite and firm conviction that a mistake has been committed," the Court concludes that Judge Kim did not err in finding that Perlman disclaimed involvement in Original MO2.

### 3. LaSalle's Authority to Disclose

Finally, Defendants argue that Judge Kim erred in finding that LaSalle had a managerial role at Original MO2 and could disclose MO2 documents and waive MO2 privilege. ECF No. 120 at 3.

Substantial evidence supports Judge Kim's finding that LaSalle was a manager of Original MO2. Judge Kim noted that both parties conceded that Original MO2 had an attorney-client privilege and that some manager had the ability to waive the privilege when it was in existence. ECF No. 103 at 11. The parties also conceded that LaSalle had some managerial role with Original MO2 before his employment with Rearden ended. Further, LaSalle was the only person named in documents detailing Original MO2's corporate governance. Judge Kim did not err in concluding that as to Original MO2's privileged information before April 2013, LaSalle had a "valid argument that his disclosure of privileged information was within the ordinary course of performing his duties, a permitted exercise of his discretion under the PIAA." ECF No. 103 at 13.

The Court denies Defendant's request for relief from Judge Kim's discovery order.

## B. Plaintiff's Motion (ECF No. 119)

Plaintiff objects to the portion of Judge Kim's order that denied Plaintiff's motion to compel production of attorney-client privileged documents responsive to Document Requests No. 26, 27, 49, and 50. Plaintiff argues that Judge Kim erred in holding that Plaintiffs did not meet its burden demonstrating that the crime-fraud exception should apply to the privileged documents. ECF No. 119.

"While the attorney-client privilege is arguably [the] most fundamental of the common law privileges recognized under Federal Rule of Evidence 501, it is not absolute." In re Grand Jury Investigation, 810 F.3d 1110, 1113 (9th Cir. 2016) (internal quotations omitted). Under the crime-fraud exception, communication is not privileged "when the client consults an attorney for

advice that will serve him in the commission of a fraud or crime." Id.  A party invoking the crime-fraud exception must meet a two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality."

In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007) (quoting In re Grand Jury Proceedings, 87 F.3d 377, 381–83 (9th Cir. 1996)).  The moving party must establish the existence of the crime-fraud exception by a preponderance of the evidence.  Id. at 1095.  A district court may find a prima facie case of crime-fraud by examining privileged documents in camera or by looking at independent, non-privileged evidence.  In re Grand Jury Investigation, 810 F.3d at 1113.

"Mere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact."  BP Alaska Exploration, Inc. v. Superior Court, 199 Cal. App. 3d 1240, 1262 (1988).  A prima facie case is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence.  In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud."  Id.  The Court "should exercise considerable caution when they are pressed during the discovery stage of complex litigation to find that a showing of crime or fraud that is sufficient to justify penetrating the privilege has been made."  Laser Indus., Ltd. v. Reliant Techs., Inc., 167 F.R.D. 417, 436 (N.D. Cal. 1996).

Judge Kim denied Plaintiff's request for the correspondence between Defendants and their lawyers relating to assignments recorded with the USPTO in September 2014.  Judge Kim determined that the evidence provided in Plaintiff's motion to compel was "not sufficient proof to show that defendants were 'engaged in or planning a criminal or fraudulent scheme' to overcome the attorney-client privilege."  ECF No. 103 at 14 (quoting In re Grand Jury Investigation, 810 F.3d at 1113).

Plaintiff argues that Judge Kim erred in three respects:  first, Judge Kim did not consider

evidence that Defendants enlisted attorneys to make filings in the USPTO that contained false evidence; second, the evidence raised an inference sufficient to invoke the crime-fraud exception; and third, Judge Kim did not review *in camera* the communications related to filings to identify the material subject to the exception. ECF No. 119.

Judge Kim did not err in determining that Plaintiff failed to meet its burden in establishing the crime-fraud exception. Judge Kim reviewed evidence, including a declaration from Perlman, in concluding that Plaintiff had not established Perlman's knowledge of the representation's falsity. See ECF No. 103 at 14 ("Although Mr. Perlman might be proved to be ultimately mistaken in this litigation, his attempt to seek legal advice and legal assistance to protect the patents and trademark for the MOVA technology is not sufficient proof of a crime or fraud."). Defendants have further pointed to prior evidence reflecting their position that the assignments recorded in September 2014 describe the chain of title of the patent from OL2, Inc. to Original MO2. See ECF No. 138 at 5. Plaintiff's assertions that Defendants *knowingly* made false statements to the USPTO, by itself, does not support a showing that Defendants planned a criminal or fraudulent scheme when it recorded the patent assignments.

Judge Kim did not err in determining that Plaintiff's allegations were insufficient to make out a *prima facie* showing of fraud.[2] The Court accordingly denies Plaintiff's motion for relief from Judge Kim's order.

## CONCLUSION

As the parties have not shown that Judge Kim's discovery order is clearly erroneous or contrary to law, the Court denies Defendants' motion and Plaintiff's motion.

IT IS SO ORDERED.

Dated: May 24, 2016

JON S. TIGAR
United States District Judge

---

[2] Because Judge Kim did not find Plaintiff made a *prima facie* showing, Judge Kim did not need to review the communications *in camera*. See In re Grand Jury Investigation, 810 F.3d at 1114.