UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTUE GLOBAL HOLDINGS LIMITED,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>REARDEN LLC, et al.,<br><br>　　　　　　Defendants. | Case No.  15-cv-00797-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 139 |

Defendants seek a preliminary injunction enjoining Plaintiff Virtue Global Holdings Limited and Plaintiff's licensees from using the physical MOVA Assets; securing the MOVA Assets in a neutral location; ceasing all use of the MOVA Assets patented technology, trademarks and copyrighted material, and derivative works thereof; and prohibiting Shenzhenshi Haitiecheng Science and Technology Co., Ltd. and Virtue Global Holdings Limited from any further transfer of the MOVA Assets to any other party.  ECF No. 139.

The Court will grant Defendants' motion for a preliminary injunction.

## I.　BACKGROUND

This case is about the ownership of MOVA, a technology to "capture the facial performance of an actor" for use in movies, computer graphics, and other video applications, and its related intellectual property (collectively the "MOVA Assets").  See ECF No. 93 ¶ 9.  Greg LaSalle and Stephen Perlman, former business collaborators and friends, are the principal actors in this dispute.

Much of the background of this case has been recited in the Court's prior orders and need not be repeated here.  See ECF No. 52 (Order on Defendants' Motion for Summary Judgment); ECF No. 103 (Order on Discovery Letter Brief).  The Court, however, provides the following background for the purposes of resolving this motion.

### A. Procedural History

Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("SHST") filed its Complaint in February 2015, seeking declaratory relief that it was the owner of the MOVA Assets. See ECF No. 1.

On December 16, 2015, at the parties' Case Management Conference, the Court granted Defendants' request to amend their pleadings and to file counterclaims. See ECF No. 60. On February 25, 2016, Defendants answered the Complaint and filed Amended Counterclaims against SHST. ECF No. 76. Defendants brought the following counterclaims: declaratory relief, intentional interference with contract, intentional interference with prospective business advantage, negligent interference with prospective economic relations, conversion, trespass to chattels, misappropriation of trade secrets, infringement of four patents, trademark infringement, contributory trademark infringement, unfair competition and false designation of origin, violation of anti-cybersquatting, direct copyright infringement, secondary copyright infringement, unjust enrichment, and unfair competition. See generally id. On March 4, 2016, the Court stayed SHST's obligation to respond to Defendants' Amended Counterclaims until the resolution of the parties' declaratory relief claims. ECF No. 86.

On March 18, 2016, the parties' filed a stipulation and proposed order to substitute SHST. ECF No. 92. Counsel for SHST represented that SHST transferred all of its interest in the MOVA Assets to Virtue Global Holdings Limited ("VGH"). Id. The parties agreed to the substitution of VGH as the Plaintiff in the case but also agreed that SHST would remain in the case as a Counterclaim Defendant and that all counterclaims asserted by Defendants against SHST would continue as pleaded against both SHST and VGH. Id. The Court granted the stipulation. ECF No. 96.

On March 18, 2016, Defendants filed their Answer and Amended Counterclaims. ECF No. 95. Defendants added an additional counterclaim under the California Uniform Fraudulent Transfer Act.[1]  See id. ¶¶ 424–433. Defendants allege that SHST transferred the MOVA Assets to

---

[1] The California Uniform Fraudulent Transfer Act is now known as the California Uniform Voidable Transfers Act. It was amended by 2015 Cal SB 161, effective January 1, 2016.

VGH "with the actual intent to hinder, delay or defraud Defendants in this case." Id. ¶ 425.

### B. Transfer of the MOVA Assets from SHST to VGH

The document transferring the MOVA Assets from SHST to VGH was signed one day after the Court granted Defendants' request to amend their answer and to file counterclaims. See ECF No. 139, Seraphine Decl., Ex. 1. While SHST alleges to have paid $100,000 to acquire the MOVA Assets from MO2 LLC in February 2013, VGH paid $25,000 for the MOVA assets, with an additional $25,000 due upon a decision by the Court in SHST's favor. ECF No. 139 at 10; see Ex. 1 at 4 (Bates No. SHST0002177).[2] The agreement transfers the MOVA Assets to VGH but leaves all the liabilities with SHST. Id.

VGH explains the purpose of the transfer as follows: VGH's parent, Digital Domain Holdings Limited ("DDHL"), "recognized that a company which it did not wholly own held title to the MOVA Assets and determined that – for reasons unrelated to this litigation – a wholly-owned entity should hold title." ECF No. 151 at 7; ECF No. 152, Chopra Decl. ¶ 7. DDHL accordingly took the steps to transfer title from SHST to VGH, a "holding company in the DDHL family." Chopra Decl. ¶ 7. VGH obtained title subject to the licenses which SHST previously granted. Id. VGH does not have physical possession of the MOVA Assets and has not used them. Id. ¶ 8.

### C. SHST and VGH's Discovery Conduct

Defendants assert that SHST has not participated in good faith in discovery, which is the subject of a motion for default judgment Defendants filed against SHST now before Magistrate Judge Sallie Kim.[3] See ECF No. 132; ECF No. 143.

In a joint discovery letter brief submitted to Magistrate Judge Kim, counsel for SHST stated that SHST "appears to have gone dormant." ECF No. 132 at 5. Counsel disclosed:

---

[2] Citations are to the pages assigned by the Court's electronic case filing system and not to the internal pagination of the document.

[3] Defendants originally sought entry of default against SHST as a remedy in the present motion, but the Court declined to entertain that request in the first instance because Defendants sought this remedy as a discovery sanction, and the Court had previously referred all discovery disputes to Judge Kim for adjudication. ECF No. 143. Judge Kim heard the motion for default judgment on June 16, 2016.

> VGH purchased the MOVA Assets from SHST in December 2015, and substituted into this case as Plaintiff. (Dkt. 96). Following the sale of the MOVA Assets, SHST appears to have gone dormant. Only in March 2016 – after SHST apparently went dormant – did Defendants' new counsel begin demanding verifications for SHST's discovery responses from the previous summer. Despite diligent efforts, SHST's counsel has not received any response to any of its multiple attempts to communicate with SHST, including to obtain the requested verifications. From SHST's silence, it appears that SHST no longer has any active business, no officers, no active board members, no employees, and no one else who can provide the verifications which Defendants began demanding in March 2016. Accordingly, the undersigned counsel will be taking necessary steps to initiate the process of withdrawing as counsel of record for SHST in this litigation.

Id. Counsel for SHST state they intend to "take the necessary steps to initiate the process of withdrawing as counsel of record for SHST in this litigation." Id.

Additionally, Defendants propounded interrogatories on VGH requesting VGH to identify "all directors, shareholders, and/or employees of SHST and/or VGH" with knowledge about the acquisition of MOVA Assets by SHST from MO2 LLC and by VGH from SHST. See ECF No. 139, Seraphine Decl., Ex. 7. VGH responded that "there are no current directors, shareholders, and/or employees of VGH with knowledge of the acquisition of the MOVA Assets" from either MO2 LLC or SHST, id., notwithstanding that VGH purports to own those assets.

### D. Present Use of the MOVA Assets

At present, Digital Domain 3.0, Inc. ("DD3"), a licensee of the MOVA Assets, possesses the physical MOVA Assets, and DD3 and LaSalle are using the Assets. ECF No. 151 at 8; ECF No. 44-2; LaSalle Decl. ¶ 52. DD3 is wholly-owned by Digital Domain-Reliance LLC ("DDR"), and 70% of DDR is owned by DDHL.[4] DDHL owns 100% of VGH. ECF No. 144-3 Boyd Decl., Ex. B at 7 and 15.

When LaSalle purportedly began secret negotiations to sell the MOVA Assets, he began with DD3. ECF No. 121 ¶¶ 113–116. Ultimately, LaSalle sold the MOVA Assets to SHST, although DD3's General Counsel and Vice President of Business Affairs, Joseph Gabriel, negotiated the sale of the MOVA Assets – on behalf of SHST. ECF No. 44-19, Gabriel Decl. ¶ 8.

---

[4] Defendants report that DDHL proposed a transaction to acquire the other 30% of DDR (and thus, wholly own DD3) to be voted on by shareholders at an annual meeting on June 7, 2016 in Hong Kong. See ECF No. 144 at 4; ECF No. 144-4, Boyd Decl., Ex. C.

4

DD3 then entered into an exclusive license regarding the MOVA Assets and took possession of the physical MOVA Assets. Id. Gabriel's declaration is silent regarding the details of this transaction and how he could represent a party that is nominally adverse to his own client. Id. These circumstances give rise to substantial doubt whether DD3 is a wholly separate entity from either VGH or SHST.

DD3 has used the MOVA Assets to provide visual effects for a number of movies, including for the character "Colossus" in the film "Deadpool." ECF No. 139 at 11. Defendants have not provided a license to any party for the MOVA Assets with which DD3 has used the MOVA Assets. Id.

### E. Motion for Preliminary Injunction

On May 6, 2016, Defendants filed the instant motion for preliminary injunction regarding the MOVA Assets. ECF No. 139. Defendants filed the motion for preliminary injunction four days after SHST's counsel informed the Court that SHST "appears to have gone dormant." Defendants propose the injunction take the following form:

1. This preliminary injunction applies to the MOVA Assets, which are defined as the MOVA physical property and MOVA patents, trademarks and copyrighted material and derivative works identified in the Amended Counterclaims (D.I. 100) in this case;

2. This preliminary injunction includes the MOVA Assets in the possession of VGH and SHST, or in the possession of any of SHST's or VGH's licensees and their respective sub-licensees (including but not limited to DD3);

3. SHST, VGH and anyone in concert therewith on whom notice of this Order is served (including Mova Asset licensee DD3 and all of its Mova Asset licensees, and including the producers and distributors of motion pictures, video games or any other material in which any portion of the Mova Assets is used, even if such use is pursuant to a purported license issued by Plaintiff, its licensees and/or their respective sublicensees) shall cease all use of the physical MOVA Assets (and secure those assets in a neutral location), cease all use of all MOVA Assets trademarks, cease practicing all MOVA Assets patented inventions, and cease use or distribution of all MOVA Assets copyrighted material and all derivative works thereof;

4. SHST and VGH are hereby enjoined from making any purported transfer of the MOVA Assets to any other party;

5. This preliminary injunction shall remain in place until further Order by the Court.

ECF No. 139-15 (Proposed Order).

On May 20, 2016, VGH filed an opposition to the motion. ECF No. 151. On May 27, 2016, Defendants filed a reply. ECF No. 159. The Court heard oral argument on June 16, 2016.

## II. LEGAL STANDARD

Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. Id. at 20. "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

Preliminary relief may take two forms: it may be prohibitory or mandatory in nature. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir. 2009) (internal alterations and quotation marks omitted). A mandatory injunction orders a party to take action. Id. at 879. Because mandatory injunctions do more than preserve the status quo, they are "particularly disfavored," the Ninth Circuit has observed that "courts should be extremely cautious about issuing a preliminary injunction" in those circumstances. Martin v. Int'l Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984).

Due to the exigent nature of a preliminary injunction, a court may consider hearsay and other evidence that would otherwise be inadmissible at trial. See Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009); see also Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

## III. DISCUSSION

Defendants argue they are entitled to a preliminary injunction protecting the MOVA Assets pending a determination of ownership regarding the Assets. ECF No. 139. VGH makes several arguments in opposition to Defendants' motion.

### A. Defendant's Motion is not Procedurally Defective

First, VGH argues that Defendants' motion is untimely and improper because the Court bifurcated the case so that any declaratory relief claims would be tried first, and stayed Defendants' remaining counterclaims. ECF Nos. 80, 86. VGH contends that Defendants now seek to have the merits of their fraudulent transfer counterclaim addressed before the Court can determine who owns the MOVA Assets and before Plaintiff has even answered the counterclaim, and argue – without citation to authority – that the Court lacks the power to issue a preliminary injunction regarding claims that have been stayed. ECF No. 151 at 8–9.

The Court concludes that it does have this power. PMS Distributing Co. v. Huber & Suhner, A.G., 863 F.2d 639 (9th Cir. 1988). In PMS Distributing, where the Ninth Circuit upheld the district court's grant of a writ of possession pending the outcome of the arbitration after the court entered an order to compel arbitration. 863 F.2d at 642. As the court noted, "the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process." Id. at 642–43. Similarly here, the Court's ability to manage the litigation would be frustrated if it could not issue preliminary injunctive relief to preserve the status quo pending the final resolution of the parties' claims – including the claims that have been stayed.

### B. Defendant's Motion is Not Legally Defective

VGH next argues that Defendants' motion is legally defective because Defendants' claims for ownership over the MOVA Assets require Defendants to establish they hold title to the MOVA Assets before the Court can grant relief. See ECF No. 151 at 9. VGH similarly contends that Defendants do not have a current right to damages because Defendants have not established ownership and their counterclaims seeking damages are not viable. Accordingly, VGH argues that

7

Defendants cannot be a "creditor" within the meaning of California's Uniform Voidable Transactions Act. Id. at 11.

These arguments have no force. Ordinarily, a court may not issue preliminary injunction regarding assets to which a party does not yet have a legal claim. However, the court may issue a preliminary injunction in cases involving bankruptcy and fraudulent conveyances and cases in which equitable relief is sought. See In re Focus Media Inc., 387 F.3d 1077, 1085 (9th Cir. 2004) (citing Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 312 (1999)). The Court may enter a preliminary injunction over the MOVA Assets on Defendants' fraudulent conveyance claim even though Defendants have not yet established an interest in the assets. See, e.g., Wimbledon Fund, SPC Class TT v. Graybox, LLC, No. 15-56540, --- Fed. Appx. ----, 2016 WL 1554271, at *1 (9th Cir. Apr. 18, 2016) (upholding the district court's grant of a preliminary injunction on a claim under the California Uniform Fraudulent Conveyance Act even though the party seeking the injunction had not yet established an interest in the assets).

VGH also argues that Defendants' counterclaims "will never be viable because the statutes and laws on which they are based cannot be given extraterritorial effect." ECF No. 151 at 10. VGH points out that both VGH and SHST are foreign entities and contends that they have not engaged in activity in the United States. Id. However, VGH's arguments focus on the extraterritoriality effect of Defendants' intellectual property claims and not Defendants' fraudulent conveyance claim. See id. at 9–10. And to the extent VGH makes a personal jurisdiction argument, SHST and VGH committed to the Court's jurisdiction by filing suit here. By instituting this action, SHST and VGH have submitted to the Court's jurisdiction not only as to its own claims but also as to Defendants' fraudulent conveyance counterclaim. See Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974).

**C.     Defendants Have Met Their Burden to Show that a Preliminary Injunction Should Issue**

Turning to the merits of Defendants' motion, the Court now addresses the elements Defendants must establish to prevail on their request for a preliminary injunction.

### 1. Likelihood of Success of the Merits

First, Defendants must establish a likelihood of success on the merits of their fraudulent conveyance claim. See Winter, 555 U.S. at 20.

California's Uniform Voidable Transactions Act ("CUVTA") provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
>> . . .
>
> (b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
>
>> (1) Whether the transfer or obligation was to an insider.
>>
>> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>>
>> (3) Whether the transfer or obligation was disclosed or concealed.
>>
>> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>>
>> (5) Whether the transfer was of substantially all the debtor's assets.
>>
>> (6) Whether the debtor absconded.
>>
>> (7) Whether the debtor removed or concealed assets.
>>
>> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>>
>> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>>
>> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>>
>> (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04. The enumerated factors are nonexclusive and are "regarded as

9

circumstantial 'badges of fraud' that are probative of intent." In re Beverly, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007). "No minimum number of factors tips the scales toward actual intent." Id. at 236. However, "specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud.'" Id.

A creditor is a person who has a claim, meaning "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." See id. § 3439.01(b)–(c). A debtor is "a person who is liable on a claim." Id. § 3439.01(e). Under the CUVTA, a creditor may obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds." Id. § 3439.07(a)(3)(A).

Defendants argue that SHST's transfer of the MOVA assets, but not the liabilities associated with those assets, shows that the transfer was fraudulent and designed to avoid a judgment against SHST. ECF No. 139 at 15. Defendants contend several "badges of fraud" demonstrate SHST's fraudulent intent in transferring the MOVA Assets to VGH.

First, Defendants assert that the "the transfer or obligation was to an insider." Cal. Civ. Code § 3439.04(b)(1). Defendants contend SHST shares common ownership and management with DDHL, of which VGH is a wholly-owned subsidiary. "Common ownership indicates that the SHST and DDHL/VGH are close; common management indicates that DDHL/VGH can exert control or influence over SHST." ECF No. 139 at 16. Amit Chopra, DDHL's Executive Director and COO explained DDHL wholly owns VGH but DDHL did not wholly own SHST. ECF No. 152, Chopra Decl. ¶ 7. Additionally, as part of the initial acquisition of MOVA technology, counsel for DD3 "was instructed to move forward with acquiring the MOVA Assets and investing in a MOVA-related business through [SHST]." ECF No. 44-19, Gabriel Decl. ¶ 8. DD3's general counsel represented SHST in connection with the acquisition of the MOVA Assets and negotiation of the license with DD3. Id. The Court finds that the transfer of the MOVA assets was to an insider. The Ninth Circuit has recognized that "a special relationship between the debtor and the transferee" is one of the "more common circumstantial indicia of fraudulent intent." In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994) (italics omitted) (quoting Max Sugarman Funeral

10

1    Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991)).

2        Defendants next contend that "the debtor retained possession or control of the property
3    transferred after the transfer." ECF No. 139 at 16 (citing Cal. Civ. Code § 3439.04(b)(2)). The
4    evidence does not support this contention. VGH has control of the MOVA assets, and non-party
5    DD3 had – and apparently maintains – physical possession of them.[5] Defendants argue that, on
6    this basis, SHST effectively retained possession of the MOVA Assets after the transfer. However,
7    as Defendants have not established DDHL shares common ownership and management with
8    SHST, Defendants have not shown SHST retained possession or control of the property.

9        Nonetheless, other badges of fraud exist in this case. That a debtor has been sued or
10   threatened with suit before the transfer was made indicates fraudulent intent. Cal. Civ. Code §
11   3439.04(b)(4). SHST made the transfer a mere one day after the Court granted Defendants'
12   request to amend counterclaims. VGH states that the process was contemplated months before but
13   was not executed until the day after the case management conference. This contention,
14   particularly in light of the other suspicious circumstances of this transfer and SHST's conduct, is
15   not credible. The Court is persuaded that the timing of the transfer of the MOVA Assets indicates
16   that it was made to avoid liability.

17       The Court further finds that that SHST concealed the transfer, another indicator of
18   fraudulent intent. See Cal. Civ. Code § 3439.04(b)(3). SHST did not reveal the transfer for over
19   two months after its occurrence and continued to act as the Plaintiff in the case. SHST did not
20   alert the Court or Defendants about the transfer until after Defendants filed their amended
21   counterclaims. See ECF No. 92.

22       Whether the "the value of the consideration received by the debtor was reasonably
23   equivalent to the value of the asset transferred or the amount of the obligation incurred" is another
24   badge of fraud. Cal. Civ. Code § 3439.04(b)(8). Here, VGH paid $25,000 for the MOVA Assets

---

[5] At the hearing on this motion, counsel for VGH confirmed that VGH exercises sufficient dominion over the MOVA assets that it could "take whatever steps are necessary to make sure those assets are available in the event" of a favorable ruling for Defendants on their declaratory relief claims. The Court concludes from this representation that VGH also has sufficient control over those assets to comply with this injunction.

11

1 with an additional $25,000 due upon a Court decision in SHST's favor. SHST allegedly paid
2 $100,000 to purchase the same Assets. Defendants argue, and the Court agrees, the consideration
3 received by SHST was less than the value of the MOVA Assets.

4 Defendants contend, and the Court agrees, that SHST transferred substantially all of its
5 assets. ECF No. 139 at 17 (citing to Cal. Civ. Code § 3439.04(b)(5)). SHST transferred all of its
6 MOVA Assets to VGH and went dormant. VGH does not dispute this factor.

7 Finally, Defendants argue SHST explicitly transferred the MOVA Assets while retaining
8 the liabilities has "absconded." See ECF No. 139 at 17 (citing to Cal. Civ. Code § 3439.04(b)(6)).
9 Defendants argue that SHST used the transfer as a means to "shoulder the debt but strip [it]self of
10 assets with which to pay the debt." Id. (quoting In re Beverly, 374 B.R. at 227). SHST has gone
11 dormant, and SHST's counsel admits that it has not received any responses to counsel's attempts
12 to communicate with SHST. The Court finds SHST has absconded from this action.

13 The confluence of these several badges of fraud constitutes substantial evidence of VGH
14 and SHST's actual intent to defraud. See In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994).
15 VGH does not offer "significantly clear evidence of a legitimate supervening purpose." Id. The
16 Court concludes Defendants have shown a likelihood of success on the merits on their fraudulent
17 conveyance claim.

### 2. Likelihood of Irreparable Harm

19 To obtain preliminary relief, Plaintiff must "demonstrate that irreparable injury is likely in
20 the absence of an injunction." Winter, 555 U.S. at 22. If the plaintiff's harm is merely monetary,
21 it will not usually support injunctive relief. California Pharmacists Association v. Maxwell–Jolly,
22 563 F.3d 847, 851–52 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable
23 harm . . . . Economic damages are not traditionally considered irreparable because the injury *can*
24 *later be remedied by a damage award*." (emphasis original)). A party seeking an asset freeze must
25 show a likelihood of dissipation of the claimed assets, or other inability to recover monetary
26 damages, if relief is not granted. Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009).

27 VGH argues that the time that has elapsed from the commencement of this action to the
28 instant motion for a preliminary injunction undermines Defendants' arguments regarding

irreparable harm. ECF No. 151 at 13. Defendants, however, have not been dilatory in bringing the instant motion. Within four days of learning SHST ceased participating in this case, Defendants filed the motion for a preliminary injunction. See ECF Nos. 132, 139.

Defendants assert several facts that weigh in favor of finding that Defendants would suffer irreparably harm. SHST made the transfer of the MOVA Assets to VGH immediately after the Court granted Defendants' request to amend counterclaims. Cf. Datatech Enterprises LLC v. FF Magnat Ltd., No. C 12-04500 CRB, 2012 WL 4068624, at *5 (N.D. Cal. Sept. 14, 2012) (finding that the defendant's efforts to move its domain name registration and money overseas after being served with the complaint establishes a likelihood of asset dissipation and irreparable harm). SHST's conduct to date, including its non-responsiveness, also indicates a threat of irreparable harm. SHST transferred its assets but retained its liabilities, rendering it incapable of satisfying any judgment. Finally, Defendants posit that VGH's interrogatory response indicates that some of the physical MOVA Assets have been disposed of. See ECF No. 139 at 26; ECF No. 139-14, Seraphine Decl., Ex. 13. VGH responded that "certain hardware included in the MOVA Assets ha[ve] been discarded over the years," including:

> 1 Maxtor USB hard drive, 1 LG internal dvd rw drive, 3 Kino Flow ballasts, a Basler A102f camera, four Dell PCs, an Apple MacBook Pro 15", and a HP Elitebook 8440 P. VGH responds that, based on the investigation conducted to date, the remaining MOVA Assets are either located at Digital Domain, Inc., 12641 Beatrice St., Los Angeles CA 90066 or in storage controlled by Digital Domain, Inc.

ECF No. 139-14, Seraphine Decl., Ex. 13.

Defendants have shown a likelihood of dissipation of the claimed assets and that it will suffer from irreparable harm as a result.

### 3. Balance of the Equities

In considering the equities of a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24.

VGH states that Defendants have provided no reason why DD3 should be deprived of using the MOVA Assets, as it has done since 2013. ECF No. 151 at 19. The Court acknowledges

13

that an asset freeze would adversely affect DD3, a licensee of the MOVA intellectual property and the present user of the physical assets. As Defendants point out, however, VGH has not identified harm that *VGH* will suffer if the MOVA Assets are frozen and maintained at a neutral location. ECF No. 159 at 9. Defendants contend that the proposed injunction does not prohibit VGH from conducting its other business operations. ECF No. 139 at 23.

Defendants, on the other hand, argue that equity tips sharply in their favor because Defendants run the risk of being left with no remedy as a result of SHST's fraudulent transfer. ECF No. 139 at 23. VGH retains ownership of the MOVA Assets but not with respect to the liabilities.

In the absence of evidence to the contrary, the Court concludes that the harm – that Defendants may not be able to recover against VGH – is greater than the harm to VGH in freezing the MOVA Assets before trial.

### 4. Public Interest

When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." Bernhardt v. L.A. County, 339 F.3d 920, 931 (9th Cir. 2003). If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction. See Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 965 (9th Cir. 2002) ("In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff.").

In this case, the requested injunction reaches beyond the parties to affect the rights of third party DD3, a licensee of the MOVA assets. VGH contends that freezing the MOVA Assets would block the productive use of the MOVA Assets by DD3 and the public would be deprived of entertainment from movies using MOVA. Weighing against this interest are the public's interest in discouraging fraudulent conveyances and the possibility that Defendants will not be able to obtain adequate relief on their claims. Balancing the equities, the Court concludes that the public interest will be served by the issuance of a preliminary injunction.

### D. Defendants' Injunction Can Bind DD3

VGH argues that because DD3 is a nonparty, the preliminary injunction cannot enjoin DD3. ECF No. 151 at 11–12. While DD3 will not be named as a party to the injunction, the injunction will apply to parties, their agents, employees and persons "in active concert or participation with them and who receive notice of the preliminary injunction." Fed. R. Civ. P. 65(d)(2)(C).

### E. Bond Requirement

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Defendants ask the Court to dispense with the bond requirement, contending that the Court may do so if "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." ECF No. 139 at 26–27 (quoting Kremen v. Cohen, No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *8 (N.D. Cal. Dec. 7, 2011)). Defendants argue that VGH, as a holding company, will not be prejudiced by freezing the asset.

The Court finds there is a likelihood of harm to VGH should the preliminary injunction later be found to have issued in error. The Court will set a bond in the amount of $25,000.

## CONCLUSION

The Court grants Defendants' motion for a preliminary injunction as follows:

1.  This preliminary injunction applies to the MOVA Assets identified in the Amended Counterclaims, ECF No. 100, which consist of the MOVA® Contour® Reality Capture ("MOVA" or "MOVA Contour") technology, and related hardware and software, source code, patents and patent applications, trademarks, copyrights, trade secrets, domain names, business records, and various physical goods ("MOVA Assets").

2.  Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("SHST") and Virtue Global Holdings Limited ("VGH") are hereby restrained and enjoined, pending trial, from selling, using, moving, concealing, transferring or otherwise disposing of any MOVA Asset in its

possession, custody or control.

3. Within 10 days of this order, VGH is ordered to transfer any physical MOVA assets to a secure location of Defendants' choosing. The costs of placing and maintaining the MOVA assets at such location shall be borne by Defendants, subject to reallocation.

4. This Order does not give Defendants the right to use, license, or transfer any MOVA asset beyond what is expressly permitted by this order. The purpose of this order is to maintain the status quo.

5. Within 10 days of entry of this Order, VGH is ordered to transmit a copy of this preliminary injunction to its MOVA Asset licensees, including DD3, and any producers, distributors of motion pictures, video games, or any other material in which the MOVA Assets are used.

6. As a condition of this Preliminary Injunction, Defendants are ordered to post a bond in the amount of $25,000 to secure payment of any damages sustained by VGH or SHST if they are later found to have been wrongfully enjoined. This Order shall become effective upon posting of the bond and shall remain in effect until further order by the Court.

IT IS SO ORDERED.

Dated: June 17, 2016

_____
JON S. TIGAR
United States District Judge