UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTUE GLOBAL HOLDINGS LIMITED,<br><br>　　　　Plaintiff,<br><br>v.<br><br>REARDEN LLC, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00797-JST   (SK)<br><br>**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' AND COUNTERCLAIMANTS' MOTION FOR DEFAULT SANCTIONS AGAINST CROSS-DEFENDANT SHENZHENSHI HAITICHENG SCIENCE AND TECHNOLOGY CO., LTD.**<br><br>Regarding Docket No. 215 |

　　　　Before this Court is a motion by Defendants Rearden LLC, Rearden MOVA LLC, MOVA LLC, and MO2 LLC (collectively, "Rearden") for entry of default judgment against Cross-Defendant Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("SHST"). (Dkt. 215.) This Court RECOMMENDS that the District Court GRANT Rearden's motion to strike SHST's Answer (Dkt. 111) and to enter default judgment against SHST as a sanction for SHST's failure to comply with this Court's orders that SHST provide responses to various discovery requests propounded by Rearden.

　　　　This Court DENIES Rearden's motion for attorneys' fees as a sanction against SHST at this time, without prejudice. Given that SHST will face the most serious sanction of default, an award of attorneys' fees seems unnecessary and duplicative. However, Rearden may renew its motion for attorneys' fees if the District Court does not accept this Court's recommendation.

　　　　This Court further RECOMMENDS that no action be taken against Plaintiff Virtue Global Holdings Ltd. ("VGH"). Rearden's motion was directed solely to SHST and not to VGH. (Dkts. 139, 215.) In opposing this motion, VGH expressed concern that Rearden's motion for default is

directed at VGH (Dkt. 224), but the original motion and supplemental memorandum of points and authorities indicate that the motion is directed solely against SHST. (Dkts. 139, 215.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action involves a dispute over the ownership rights of physical and intellectual property referred to in this litigation as the "MOVA Assets," which were once held by an entity known as "MO2 LLC," a California limited liability company. The factual background of this case is discussed in detail in other pleadings. (Dkts. 52, 117, 141, 188.)

In February 2015, SHST, a corporation organized under the laws of the People's Republic of China, claims in this litigation that it purchased the MOVA Assets from MO2 LLC, and SHST filed a lawsuit for declaratory relief against Rearden, as both SHST and Rearden claim ownership of the MOVA Assets. In response, Rearden filed counterclaims in which Rearden claimed that Rearden owned the MOVA Assets. (Dkt. 21.) In March 2016, SHST alleged that in December of 2015, it transferred the MOVA Assets to another entity, VGH. (Dkt. 93.) Rearden attacks the chain of transfer of the MOVA Assets starting with MO2, LLC's alleged transfer to SHST and questions SHST's subsequent transfer to VGH.

Subsequently, by stipulation of the parties, VGH became the Plaintiff in this action, but SHST agreed to remain in the action as a defendant to Rearden's cross-complaint. (Dkt. 96.) The parties agreed that the substitution would not be a basis for objections by SHST to discovery relating to ownership issues. (Dkt. 96.)

### 1. Pleadings

SHST initially filed a Complaint, and VGH then filed an Amended Complaint for declaratory relief regarding the ownership of the MOVA Assets, and asserting claims for false advertising, unfair competition, and intentional interference with prospective economic advantage. (Dkts. 1, 93.) Rearden filed an Answer and counterclaims against SHST for declaratory relief regarding ownership of the MOVA Assets, intentional interference with contract, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, conversion, trespass to chattels, misappropriation of trade secrets, patent infringement, trademark infringement, unfair competition under the Lanham Act, cyber-squatting,

2

copyright infringement, unjust enrichment, unfair competition under California state law, and violation of California's Uniform Voidable Transfer Act. (Dkt. 95.) SHST filed an Answer to those counter-claims. (Dkt. 111.)

### 2. Bifurcation

The parties jointly requested that the Court bifurcate the issues in this case so that the issue of ownership of the disputed assets, the MOVA Assets, would be adjudicated first and before any adjudication of other issues in this case. (Dkt. 75.) The Court granted that request. (Dkt. 80.) Thus, the sole issue being litigated in this first phase of litigation is the issue of ownership of the MOVA Assets. The discovery deadline for phase one was June 10, 2016 (Dkts. 83, 124), and trial on that issue alone is scheduled for December 5, 2016. (Dkt. 83.)

### 3. Discovery

This is the second motion for default sanctions brought by Rearden based on SHST's refusal to provide discovery responses. On May 6, 2016, Rearden filed a motion for default sanctions pursuant to Federal Rules of Civil Procedure 37 and 55 for SHST's failure to comply with the Court's discovery orders and for SHST's failure to respond to additional discovery. (Dkt. 139.) The Court denied that May 2016 motion but gave SHST another opportunity to respond to discovery to avoid default. The Court warned SHST that "failure to comply with the Court's Order by June 27, 2016, would most likely result in a recommendation to the District Court that the District Court issue a default judgment against SHST." (Dkt. 199.) In light of SHST's failure to comply, Rearden again moves for default. At issue are the following discovery violations:

First, SHST did not verify its response to interrogatories numbers 1 –16. (Dkt. 133.) SHST provided only unverified responses to interrogatories numbers 1 – 16. Id. On May 2, 2016, the parties addressed the lack of verification to SHST's responses to interrogatories numbers 1 – 16, which had been served during the summer of 2015. (Dkt. 132.) SHST's counsel represented that SHST's counsel has been unable to locate anyone from SHST to verify the responses to interrogatories numbers 1 – 16, and SHST's counsel stated that SHST appears to have gone "dormant." (Dkt. 132.)[1] On May 12, 2016, the Court ordered SHST to verify its response by May

---

[1] SHST's counsel has remained counsel of record, despite an earlier statement that SHST's counsel would

3

27, 2016 and cautioned SHST that, if it failed to verify its responses, the Court would revisit the issue of sanctions. (Dkt. 141.) SHST did not comply with the Court's Order. (Dkt. 162.) On June 21, 2016, the Court granted Rearden's motion for sanctions for attorneys' fees in the sum incurred in bringing the motion to compel. (Dkts. 199, 223.) SHST has failed to verify its responses to interrogatories numbers 1 -16, despite two orders directing SHST to do so and despite warnings of default sanctions for failure to verify those responses. (Dkt. 215.)

Second, SHST failed to produce witnesses in response to Rearden's deposition notices of SHST representatives. (Dkt. 139-1.) SHST's counsel responded that SHST would not produce any witnesses for SHST, given that SHST was not responding to communications. (Dkt. 139-1.) Despite the Court's order that SHST provide specific dates for the depositions of those witnesses (Dkt. 199), SHST failed to respond. (Dkt. 215.)

Third, SHST failed to provide any responses to additional interrogatories, the Second and Third Sets of Interrogatories, Nos. 17 – 24. SHST's failure to provide responses was the subject of an oral motion during the June 16, 2016 hearing on Rearden's first motion for default. After the hearing, the parties submitted a joint statement confirming that Rearden moved to compel the verified responses. (Dkt. 193.) The Court ordered that SHST provide verified responses by June 27, 2016. (Dkt. 199.) SHST did not comply. (Dkt. 215.)

Fourth, SHST failed to provide verified responses to Requests for Admission Nos. 1- 65, and Rearden moved to compel responses via oral motion on June 16, 2016. (Dkt. 193.) The parties later filed a joint statement that confirmed that Rearden was moving to compel response. (Dkt. 193). SHST did not comply with the Court's Order to provide verified responses to the Requests for Admission by June 27, 2016. (Dkts. 199, 215.)

Fifth, SHST did not provide responses to Defendants' Document Requests Nos. 25 - 74 that were the subject of Rearden's motion to compel (Dkt. 193), and this Court's Order (Dkt. 199) requiring compliance by the June 27, 2016 deadline. (Dkt. 215.)

---

be forced to withdraw as counsel. At oral argument, SHST's counsel stated that withdrawing at this critical juncture would be prejudicial to SHST, but there was no evidence of communication between SHST and its counsel about this motion or any discovery issues.

4

Sixth, SHST failed to provide documents responsive to Document Requests Nos. 1, 3, 6, 7, 11 and 16, and Rearden moved to compel those documents by oral motion on June 16, 2016 and later in a written joint statement. (Dkt. 193). This Court ordered SHST to provide those documents by June 27, 2016, and SHST did not do so. (Dkt. 199, 215.) SHST produced 2,174 pages of documents before SHST became "dormant," and SHST's counsel has represented that there are no other responsive documents. (Dkt. 224.)

The Court provided a specific warning to SHST of the threat of a terminating sanction if SHST failed to comply. (Dkt. 199.)

## ANALYSIS

Rearden moves for entry of default judgment against SHST as a sanction for SHST's failure to respond to discovery and for SHST's failure to comply with this Court's Orders regarding discovery. (Dtk. 215.) Where a party fails to obey an order to provide or permit discovery, the Court may make an order to strike pleadings or parts thereof, stay further proceedings until the order is obeyed, dismiss the action or proceeding or any part thereof, or render judgment by default against disobedient party. Fed. R. Civ. P. 37(b)(2)(C). Subsection (f) gives the judge the authority to make such orders as are just for a party's failure to obey a scheduling order or pretrial order. Fed. R. Civ. P. 16(f). Federal Rule of Civil Procedure 37 allows for dismissal for failure to comply with discovery plans or orders. Fed. R. Civ. P. 37(b)(2).

The Supreme Court has recognized that terminating sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *In re: Phenylpropanolamine (PPA) Products Liability Litigation,* 460 F.3d 1217, 1227 (9th Cir. 2006) (citing *National Hockey League v. Metro Hockey Club, Inc.,* 427 U.S. 639, 643 (1976) and *Allen v. Exxon Corp (In re the Exxon Valdez),* 102 F.3d 429, 433 (9th Cir. 1996).)

Should the Court decide to dismiss the action, or any part thereof, it must first address five factors before imposing the sanction of dismissal:

//

5

(1) the public's interest in expeditious resolution of the litigation;

(2) the court's need to manage its docket;

(3) the risk of prejudice to the defendants;

(4) the public policy favoring disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

*Malone v. U.S. Postal Service,* 833 F.2d 128, 130 (9th Cir. 1987). After weighing the five factors noted above, "the district court must also determine that the violations of discovery orders were due to willfulness, bad faith, or fault of the party." *Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir. 1994) (citing *Wyle v. R.J. Reynolds Inds.,* 709 F.2d 585, 589 (9th Cir. 1983)).

### 1. Public Interest

With regard to the first factor, as acknowledged in Federal Rule of Civil Procedure 1, the public has an overriding interest in securing "the just, speedy, and inexpensive determination of every action. By the same token, delay in reaching the merits, whether by settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re PPA Products Liability Litigation ,* 460 F.3d at 1227.

Here, SHST's failure to comply with discovery rules dates back to August of 2015, when SHST submitted unverified interrogatory responses. (Dkt. 139-1.) Since almost one year ago, SHST has not complied with discovery rules or discovery orders, and SHST's failure to do so has forced Rearden to move to compel and seek this Court's assistance. SHST's actions have wasted judicial resources and caused unnecessary delay and expense for Rearden. In light of the unnecessary delay, expense, and disregard for the judicial process, this factor weighs in favor of default.

SHST brought this litigation. Although SHST bowed out as the plaintiff, SHST did so with an explicit agreement that SHST would remain as a cross-defendant to Rearden's cross-complaint and that SHST would participate in discovery on the issue of ownership. SHST's limited production of 2,174 pages of documents and production of unverified responses to interrogatories numbers 1 – 16, followed by a wholesale failure to participate in discovery, makes a mockery of the system of litigation in this country. The public's interest is to require parties to

6

participate in litigation, including discovery. A party cannot initiate litigation and then become "dormant" when the litigation is no longer convenient or desired. Thus, consideration of this factor weighs in favor of a terminating sanction.

### 2. Court's Docket Management

Federal Rule of Civil Procedure 16 authorizes a court to manage cases so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and the settlement is facilitated. Rule 16 recognizes the "need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). The Court has provided multiple opportunities for SHST to comply with the requirements and orders of this Court. SHST has repeatedly failed to comply and has provided no explanation for its failure to do so. SHST has also not made any representation that it is willing to comply in the future. This is the second motion for default after many months of discussion of the threat of default. SHST was well aware that it is at risk of default but still has not responded. Therefore, the Court in weighing this factor finds that terminating sanction is appropriate.

### 3. Risk of Prejudice to Defendants

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana International Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir. 1990); *In re PPA Products Liability Litig.,* 460 F.3d at 1227; *Malone,* 833 F.2d at 131. Failing to produce documents as ordered is considered sufficient prejudice. *Adriana,* 913 F.2d at 1412; *In re PPA Products Liability Litig.,* 460 F.3d at 1227. There is also a rebuttable presumption that unreasonable delay causes prejudice. *In re PPA Products Liability Litig.,* 460 F.3d at 1228. Failure to provide witnesses at deposition can also constitute prejudice. *Commodity Futures Trading Comm'n v. Noble Metals International, Inc.,* 67 F.3d 766, 771 (9th Cir. 1995) (repeated failure of a corporation to designate a representative to testify at depositions "severely prejudiced" the government's ability to makes its case); *Hyde & Drath v. Baker,* 24 F.3d 1162, 1166-67 (9th Cir 1994) (failure to appear at depositions prejudiced

the opposing party); *Ariana,* 913 F.2d at 1412 (repeated failure of the party to appear at scheduled depositions "interfered with the rightful decision of the case.")

Prejudice to the moving party is the fundamental issue in determining whether case-dispositive sanctions are appropriate. "Sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Wanderer v. Johnson,* 910 F.2d 652, 656 (9th Cir. 1990) (citing *Wyle v. R.J. Reynolds Ind., Inc.,* 709 F.2d 585 (9th Cir. 1983).) Whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts" is critical to the determination of case-dispositive sanctions. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1097 (9th Cir. 2007) (citing *Valley Eng'rs v. Electric Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir. 1998)).

Here, SHST brought suit against Rearden, and SHST asserted ownership of the MOVA Assets, which SHST allegedly assigned to VGH after this litigation began. (Dkt. 92.) At the center of this conflict is a chain of companies that resulted in the creation of the entity known as "MO2 LLC," which obtained ownership of the MOVA Assets. (Dkt. 117.) SHST, and now VGH, claim that MO2 LLC, which was run by Greg LaSalle, sold the MOVA Assets to SHST and that SHST then transferred the assets to VGH. (Dkt. 93.) Rearden contends that SHST never owned or had any right to the MOVA Assets. (Dkt. 95, ¶ 172.) Rearden claims that SHST, in unlawfully claiming ownership of the MOVA Assets and in acting as the owner, infringed the MOVA patents, trademarks and copyrights by using, selling or licensing the MOVA Assets to others. (*Id.*) Rearden claims that Rearden continued to own the MOVA Assets, and Rearden challenges the ability of Mr. LaSalle to transfer the assets to SHST, challenges the validity of the transfer from MO2, LLC to SHST, and possibly challenges the transfer from SHST to VGH. (Dkt. 215). At the very least, Rearden has substantial questions about the chain of ownership from MO2 LLC to SHST and to VGH.

//

Rearden argues that it is prejudiced by SHST's inability or unwillingness to respond to discovery regarding the ownership of the MOVA Assets because Rearden seeks to learn which specific assets were included in the alleged transfer of MOVA Assets to SHST, who was involved in the purchase and sale of the MOVA Assets on behalf of SHST, who received payment and what payments were received by or on behalf of SHST, who entered into license agreements with SHST or how SHST used the MOVA Assets. (Dkt. 215.) These issues are relevant to Rearden's accusation that MO2 LLC did not transfer the assets to SHST. The ability to delve into discovery regarding the ownership of the MOVA Assets is essential to both the first and second phases of the trial of this matter.

In response, SHST argues that Rearden can obtain the information to prove Rearden's claims from other sources, including from witnesses attached to entities associated with SHST – MO2 LLC and VGH and another company known as Digital Domain 3.0, Inc. ("DD3"). SHST's counsel and DD3's General Counsel have explained that DD3, which is the wholly-owned subsidiary of Digital Domain Holdings Ltd. ("DDHL"), negotiated with MO2, LLC to acquire the MOVA Assets, but instead of transferring the MOVA Assets from MO2, LLC to DD3, DD3 acquired the MOVA Assets "through" SHST, a company that has some links with DD3 and DDHL. (Dkts. 44-19, 139, 208). SHST claims that SHST was essentially a holding company. (Dkt. 224.) Thus, SHST argues that DD3's employees can testify about the acquisition by SHST of the MOVA Assets from MO2 LLC and that DD3 can provide relevant documents or other information.

SHST claims that these non-SHST individuals can provide information regarding the negotiations and agreement between MO2, LLC and DD3, the decision to substitute SHST for DD3, the agreement and drafts between SHST and MO2 LLC and its execution, the decision to transfer the assets from SHST to VGH, and the execution of the transfer agreement. (Dkt. 224.) However, the individuals whom SHST identified are not legal representatives of SHST and cannot speak on SHST's behalf. As a result, there is a significant risk that any information conveyed by these individuals would be speculative or hearsay and thus not admissible as evidence. Many of

the proposed sources of information are non-parties, and it is not clear if they are beyond the subpoena power of the this Court. Further, VGH previously admitted that "there are no current directors, shareholders of employees of VGH with knowledge of SHST's acquisition of the MOVA Assets from MO2 LLC." (Dkt. 139.)

One example of information that only SHST can provide is Rearden's attempts to question the person who allegedly signed the documentation for purchase of the MOVA Assets. Rearden challenges the validity of the documentation in which SHST allegedly purchased the MOVA Assets from MO2, LLC, and Rearden specifically wishes to depose Xiao Ping, the Board Chair and the "legal representative" of SHST about those documents and the transaction. (Dkt. 139-4, 215.) Rearden has questions about the use of the "chop" – or a stamp used in China and other Asian countries in lieu of signature. (Dkt. 215.) SHST has not made Ms. Ping available for deposition. SHST argues that the presence of the chop is legally binding, but Rearden disputes that fact and argues that the use of the chop is rife with fraud. (Dkts. 215, 224.) Both SHST and Rearden have submitted declarations from experts in Chinese law on this issue (Dkts. 224-20, 232, 241.) These declarations underscore the need for discovery from Ms. Ping on the issue of the use of her chop, which is relevant to the validity of any documentation for the alleged transfer of the MOVA Assets from MO2, LLC to SHST.

This Court has reviewed the specific discovery requests to which SHST has failed to respond and finds that the discovery is targeted to the key issues in this case – ownership of the MOVA Assets and the purported transfer from MO2, LLC to SHST and to VGH. Although there are some alternative sources of information outside SHST, as suggested by SHST, parties are not required to seek every avenue of information from non-parties when an opposing party fails to respond. And given the Court's need to manage its docket as noted above in the second factor, this Court should not force Rearden to pursue other avenues of discovery, only to discover later that there are substantial gaps from those other sources. The discovery deadline has passed, and Rearden thus cannot seek the discovery it needs from other sources. The District Court has the power to move the discovery deadline, but, given that the District Court gave ample notice of the

discovery deadline and given the District Court's need to manage its docket, the District Court should not be forced to accommodate a missing client.

SHST further argues that SHST produced all of the documents in its possession, of which there have been few (2,174 pages). SHST contends that there were only a few documents because SHST's role in acquiring the MOVA Assets was limited. (Dkt. 224.) However, SHST's representations by counsel in legal briefing for this motion cannot substitute for binding admissions of the missing client. Rearden cannot test such representations by counsel without deposing representatives of SHST or by obtaining some type of representation under penalty of perjury.

The parties have discussed only phase one of the litigation and the risk of prejudice to Rearden as linked to the issue of ownership of the MOVA Assets, but there is also potential prejudice to Rearden because Rearden has substantial claims against SHST, as noted above. There is no sign that SHST will reappear and participate in discovery, given SHST's counsel's representations about the "dormant" nature of SHST and the inability to locate any person from SHST to verify responses to discovery, to provide deposition testimony, or to provide information for responses to discovery requests.

Rearden has sufficiently demonstrated that SHST's disappearance has a significant risk of prejudice. Thus, this factor weighs in favor of recommending a terminating sanction against SHST.

### 4. Public Interest in Disposition on the Merits

The fourth factor, the public policy favoring decisions on the merits, usually weighs against a terminating sanction. *Hyde & Drath,* 24 F.3d at 1167; *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990). Yet, where a fair trial appears impossible because of refusal to cooperate, this factor is not provided much weight. *Hyde & Drath,* 24 F.3d at 1167. Here, for the reasons explained above, Rearden is prejudiced by SHST's failure to respond to discovery, and a fair trial appears impossible where one key link in the transfer of MOVA Assets is missing.

//

### 5. Availability of Less Drastic Sanctions

Factors that address whether the district court considered alternatives include: (1) whether the Court explicitly discussed the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate; (2) whether the Court implemented alternative methods of sanctioning or curing the malfeasance before ordering the dismissal; and (3) whether the Court warn the plaintiff of the possibility of terminating sanctions or dismissal before actually ordering that action.  *In re PPA Products Liability Litigation* , 460 F.3d at 1228-1229.

*Malone* notes that alternative sanctions include: "a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the courts, … dismissal of the suit unless new counsel is secured … preclusion of claims or defenses, or the imposition of fees and costs upon plaintiff's counsel…." *Malone,* 833 F.2d at 132 n.1 (quoting *Titus v. Mercedes Benz of North America,* 695 F.2d 746, 749, n.6 (3rd Cir. 1982).)

The Court has already provided SHST with multiple opportunities to produce discovery. The Court has already imposed a monetary sanction for the amount of attorneys' fees that Rearden incurred in bringing the last motion to compel, but that monetary sanction did not result in compliance with the Court's subsequent deadlines. (Dkt. 199, 223.)  The Court has cautioned SHST that SHST must comply with the discovery orders in order to avoid default, (Dkt. 199) but SHST has chosen not to heed the Court's warnings.  Given that SHST's counsel has candidly informed the Court of the inability to locate any witness from SHST, the Court is satisfied that the current situation is the result of the client's refusal to cooperate and that sanctioning SHST's counsel would be of no avail.  Finally, the Court has considered alternative sanctions that are less drastic than striking SHST' Answer and entering default but cannot determine any such sanctions that would mitigate this unusual situation where a party has simply failed to participate in discovery.  Therefore, the fifth factor also weighs in favor of a terminating sanction.

//

//

### 6. Finding of Willfulness, Bad Faith or Fault of the Party

To show that a party was willful or acted in bad faith or to show that the wrongful conduct was the fault of the party, "[d]isobedient conduct not shown to be outside the control of the litigant" is sufficient. *Hyde & Drath v. Baker,* 24 F.3d at 1167. (citation omitted). It is clear in the present case that SHST has willfully ceased to communicate with its counsel and effectively dropped out of the action. SHST has not presented any declaration or motion for protective order to relieve itself of the obligations set forth in the discovery order. Therefore, the Court finds that SHST's conduct was willful or that the failure to participate in discovery and failure to comply with this Court's orders was the fault of the party.

### CONCLUSION

The situation presented here is an unusual one in which one party has completely failed to respond to discovery for almost one year. In this extraordinary situation, a sanction of striking SHST's Answer and entering default against SHST is warranted. The Court thus RECOMMENDS that Rearden's motion be granted.

The Court DENIES WITHOUT PREJUDICE Rearden's motion for monetary sanctions for attorneys' fees.

**IT IS SO ORDERED**.

Dated: July 21, 2016

_____
SALLIE KIM
United States Magistrate Judge