1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    SHENZHENSHI HAITIECHENG
     SCIENCE AND TECHNOLOGY CO.,            Case No.  15-cv-00797-JST
8    LTD., et al.,
                                            **ORDER GRANTING MOTION TO**
9                    Plaintiffs,            **INTERVENE, MOTION TO AUGMENT**
                                            **THE RECORD, AND MOTION FOR DE**
10            v.                            **NOVO DETERMINATION**

11   REARDEN LLC, et al.,                   Re: ECF Nos. 265, 283, 298

12                   Defendants.

13          Non-party Virtue Global Holdings, Ltd. ("VGH") has filed a motion to intervene.  ECF

14   No. 283.  In addition, Plaintiff and Counterclaim Defendant Shenzhenshi Haitiecheng Science and

15   Technology ("SHST") and VGH have moved for de novo determination of Magistrate Judge

16   Kim's report and recommendation regarding Defendant Rearden's motion for default judgment

17   against SHST.  ECF No. 265.  In support their motion for de novo determination, SHST and VGH

18   recently filed a motion to augment the record.[1]  ECF No. 298.  The Court grants the motion to

19   intervene, grants the motion to augment the record, and modifies Judge Kim's recommended

20   disposition in light of VGH's continued participation in this case and the risk of inconsistent

21   judgments if default judgment is entered against SHST now.

22   **I.      BACKGROUND**

23          This action involves a dispute over the ownership of physical and intellectual property

24   known as the MOVA assets.[2]  In February 2015, SHST filed this lawsuit against Rearden seeking

25   declaratory relief regarding its ownership of the MOVA assets.  ECF No. 1.  SHST also asserted

26

27   _____
     [1] SHST and VGH previously filed two additional motions to augment the record which the Court
     has already denied.  ECF Nos. 266, 288, 296.
28   [2] The factual background of this case is discussed in detail in other pleadings.  ECF Nos. 52, 117,
     141, 188.

claims for false advertising, unfair competition, and interference with prospective business advantage.  Id.  In response, Rearden filed counterclaims for declaratory relief that it owns the MOVA assets, intentional interference with contract, intentional interference with prospective business advantage, negligent interference with prospective economic relations, conversion, trespass to chattels, theft of trade secrets, patent infringement, trademark infringement, copyright infringement, unfair competition, unjust enrichment, cybersquatting, and fraudulent conveyance.  ECF No. 100.

### A.    Bifurcation Order

On February 25, 2016, the parties jointly requested that the Court bifurcate the issues in this case so that the ownership claims would be adjudicated first.  ECF Nos. 73, 75.  Rearden explained that the "parallel claims for declaratory relief should proceed first, because the parties' other claims are nearly all predicated on ownership of the MOVA Assets."  ECF No. 75 at 1-2. The Court granted the request on March 2, 2016.  ECF No. 80 ¶ 1.  The Court has since clarified that Rearden's fraudulent conveyance counterclaim will be adjudicated alongside the ownership issues to be heard at trial in December 2016.  ECF No. 269 at 11.

### B.    Stipulated Substitution Order

At the case management conference on March 2, 2016, SHST's counsel informed the Court that SHST had transferred its ownership in the MOVA assets to another entity.  See Case Management Conference Tr. (March 2, 2016), ECF No. 89 at 7:24-8:3.  The Court accordingly allowed the parties to amend the pleadings.  Id. at 8:10-12.  The amended pleadings clarified that VGH had purchased the MOVA assets from SHST in December 2015.  ECF No. 93 ¶ 27.  Based on this transfer, Rearden added a counterclaim for fraudulent conveyance under the California Uniform Fraudulent Transfer Act.  ECF No. 95 ¶ 424-433.

On March 18, 2016, the parties stipulated that VGH would replace SHST as the Plaintiff in this action.  ECF No. 92.  The parties agreed that "[a]ll rights and defenses with respect to any and all claims asserted by former plaintiff SHST are reserved and shall apply equally as against Virtue Global."  Id.  The parties further agreed that "all counterclaims presently asserted by Defendants against SHST shall continue as though pleaded against both Counterclaim Defendant SHST and

United States District Court
Northern District of California

plaintiff Virtue Global." Id.  SHST agreed that it would remain in the case as a counterclaim Defendant and that it would not object to discovery relating to ownership issues based on the substitution of parties.  Id.  The Court granted the parties' stipulated request on March 21, 2016. ECF No. 96.

### C.    SHST's Disappearance

Although SHST initiated this lawsuit, it has failed to participate in discovery since VGH was substituted in as plaintiff.  On May 2, 2016, Rearden informed the Court that SHST had failed to verify its interrogatory responses.  See Joint Letter Brief, ECF No. 132 at 2-4.  In response, SHST's counsel advised the Court that "[f]ollowing the sale of the MOVA Assets, SHST appears to have gone dormant." Id. at 5.  SHST's counsel explained that "[d]espite diligent efforts, SHST's counsel has not received any response to any of its multiple attempts to communicate with SHST" and that "[f]rom SHST's silence, it appears that SHST no longer has any active business, no officers, no active board members, no employees, and no one else who can provide the verifications." Id.  On May 12, 2016, this Court ordered SHST to verify its interrogatory responses, but SHST failed to do so.  ECF No. 162.  SHST also failed to produce witnesses in response to Rearden's deposition notices of five of SHST's officers and directors, including Xiao Ping, the SHST legal representative who signed the documentation in which SHST allegedly purchased the MOVA Assets from MO2, LLC.  SHST also failed to respond to additional interrogatories and document requests, and failed to provide verified responses to requests for admission.  ECF Nos. 139-1, 193.

### D.    Rearden's Motions for a Default Sanction Against SHST

Based on these discovery failures, Rearden moved for an entry of default judgment against SHST on May 6, 2016.  ECF No. 139.  On May 12, 2016, the Court ordered VGH to verify its responses by May 27, 2016 and cautioned SHST that, if it failed to verify its responses, the Court would revisit the issue of sanctions.  ECF No. 141.  SHST did not comply with the Court's order. ECF No. 162.  On June 21, 2016, the Court ordered SHST to pay attorneys' fees for the sum incurred in bringing the motion to compel as an alternative to a default sanction.  ECF No. 199, 223.  The Court again ordered SHST to verify its interrogatory responses and requests for

United States District Court
Northern District of California

United States District Court
Northern District of California

admission, provide dates for the depositions for five witnesses, and respond to multiple document requests. ECF No. 199.  The Court warned SHST that "failure to comply with the Court's order by June 27, 2016 will most likely result in a recommendation to the District Court that the District Court issue a default judgment against SHST."  ECF No. 199.  Again, SHST did not comply with the Court's order, and Rearden renewed its motion for a default sanction against SHST on June 30, 2016.  ECF No. 215.

### E.      Magistrate Judge Kim's Report and Recommendation

On July 21, 2016, Magistrate Judge Kim issued a report and recommendation in which she recommended that the Court grant Rearden's motion for default judgment against SHST as a sanction for SHST's failure to comply with the Court's orders.  ECF No. 252 at 1.  At the outset, Judge Kim recommended that "no action be taken against Plaintiff Virtue Global Holdings Ltd ("VGH")" because "the motion is directed solely against SHST."  Id. at 1-2.

Judge Kim found that all five factors weighed in favor of a default sanction.  First, Judge Kim reasoned that a default sanction was in the public interest because SHST's "wholesale failure to participate in discovery makes a mockery of the system of litigation in this country."  Id. at 6.

Second, Judge Kim found that the Court's need to manage its docket also weighed in favor of a default sanction because the Court had already given SHST multiple opportunities to comply with discovery orders to no avail.  Id. at 7.

Third, Judge Kim found that "Rearden has sufficiently demonstrated that SHST's disappearance has a significant risk of prejudice."  Id. at 11.  Judge Kim explained that Rearden was prejudiced by SHST's failure to respond to discovery requests because "the discovery is targeted to the key issues in this case—ownership of the MOVA Assets and the purported transfer from MO2, LLC to SHST and to VGH."  Id. at 10.  In particular, Judge Kim explained that only SHST could provide discovery from Ms. Xiao Ping, the SHST legal representative who signed the documentation in which SHST allegedly purchased the MOVA Assets from MO2, LLC.  Id. at 10.  SHST argued that Rearden could obtain information about the transfer of the assets from MO2 to SHST from other sources, such as individuals from VGH and Digital Domain 3.0 ("DD3") who allegedly negotiated the transfer to SHST, but Judge Kim noted that "the individuals whom SHST

4

identified are not legal representatives of SHST and cannot speak on SHST's behalf." <u>Id</u>. at 9.  As a result, Judge Kim found that "there is a significant risk that any information conveyed by these individuals would be speculative or hearsay and thus not admissible as evidence." <u>Id</u>.  Moreover, Judge Kim pointed out that SHST's counsel's assertion that SHST had not produced many documents because its role in the transfer was limited "cannot substitute for binding admissions of the missing client" because "Rearden cannot test such representations by counsel without deposing representatives of SHST or by obtaining some type of representation under penalty of perjury." <u>Id</u>. at 11.  In addition, Judge Kim noted that VGH had previously represented to the Court that "there are no current directors, shareholders [or] employees of VGH with knowledge of SHST's acquisition of the MOVA Assets from MO2, LLC." <u>Id</u>. at 10.  Finally, even if Rearden could obtain information from other sources, Judge Kim explained that "parties are not required to seek every avenue of information from non-parties when an opposing party fails to respond." <u>Id</u>.

Judge Kim gave the fourth factor—public policy favoring decisions on the merits—little weight because "a fair trial appears impossible where one key link in the transfer of MOVA Assets is missing." <u>Id</u>. at 11.

Lastly, Judge Kim found that less drastic sanctions would not "mitigate this unusual situation where a party has simply failed to participate in discovery." <u>Id</u>. at 12.  Judge Kim pointed out that the Court had already implemented less drastic sanctions—namely, imposing a monetary sanction and warning SHST that further failure to comply would result in default— neither of which resulted in compliance with this Court's orders.  <u>Id</u>.  Judge Kim concluded her report by finding that SHST's conduct was willful.  <u>Id</u>. at 13.

### F.    Rescission Order

On August 11, 2016, the Court set aside the stipulated substitution order, finding that SHST's representation that it would remain in the case as a counter-defendant and continue to participate in discovery was fraudulent.  ECF No. 269 at 7-9.  On August 24, 2016, the Court clarified that VGH was no longer a party to this case, explaining that "VGH needs to move for intervention or joinder to continue as a party in this action."  ECF No. 282.

United States District Court
Northern District of California

5

### G.     Pending Motions

On August 8, 2016, SHST and VGH moved for a de novo determination of Judge Kim's report and recommendation to enter a default sanction against SHST.  ECF No. 265.  In support of that motion, SHST and VGH filed two motions to augment the record that the Court has since denied.  ECF Nos. 266, 288, 296.  On August 24, 2016, VGH moved to intervene in this action.  ECF No. 283.

On September 28, 2016, the day before the hearings on the motion to intervene and the motion for de novo determination, SHST filed another administrative motion to augment the record.  ECF No. 298.  This time, SHST requested that the Court supplement the record with "new and material facts"—namely, evidence that counsel for SHST and VGH had "reestablished contact" with Ms. Xiao Ping, SHST's legal representative, after six months of being unable to reach her "due to severe illness."  Id.  In a supporting declaration, SHST's counsel stated that he first heard from Ms. Xiao Ping via email on September 6, 2016 and then again on September 13, 2016.  ECF No. 298-5 ¶ 3.  After a telephone call with Ms. Xiao Ping on September 23, 2016 and an in-person meeting with her on September 27, 2016, SHST's counsel finally notified Rearden's counsel and this Court about Ms. Xiao Ping's reappearance on September 28, 2016.  Id. ¶¶ 4-6.  Ms. Xiao Ping also submitted a declaration in which she explains that she did not participate in this case because of her medical condition.  ECF No. 298-4.  Ms. Xiao Ping further declares that she has verified the interrogatory responses and that she is willing to give testimony but that she is unable to travel to the United States to do so.  Id.

## II.     LEGAL STANDARDS

### A.  Motions to Intervene

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The Ninth Circuit has summarized the requirements for intervention as of right under Rule 24(a)(2) as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Freedom from Religion Found. v. Geithner, 644 F.3d 836, 841 (9th Cir. 2011) (quoting California ex rel. Lockyer v. United States, 450 F.3d 436, 440 (9th Cir. 2006)).  Proposed intervenors must satisfy all four criteria; "[f]ailure to satisfy any one of the requirements is fatal to the application." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009).

Federal Rule of Civil Procedure 24(b)(1) provides for permissive intervention at the court's discretion where the potential intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Permissive intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action."  Freedom from Religion Found., 644 F.3d at 843 (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.3d 470, 473 (9th Cir.1992)).  "Even if an applicant satisfies those threshold requirements," however, "the district court has discretion to deny permissive intervention."  Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  "[T]he court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties."  Perry, 587 F.3d at 955 (quoting Spangler v. Pasadena City Bd. of Educ., 552 F.2d 1326, 1329 (9th Cir.1977)).

In evaluating motions to intervene, "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention."  United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th

United States District Court
Northern District of California

Cir. 2001).

### B. Motions for De Novo Determination of Dispositive Matter Referred to Magistrate Judge

If a magistrate judge enters a recommended disposition on pretrial matters that are dispositive of a claim or defense, any party may file written objections to the proposed findings and recommendations.  Fed. R. Civ. P. 72(b).  Under the Local Rules, the objecting party must file its objections as a "Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge."  Civil L.R. 72-3.  The objecting party may also file an "Administrative Motion to Augment the Record" in support of its motion.  Id.  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b).  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Id.  Unless the court grants an administrative motion to augment the record, the court's review is limited to the record of the proceedings before the magistrate judge.  Civil L.R. 72-3.

## III.   DISCUSSION

VGH now moves to intervene as of right pursuant to Rule 24(a)(2) or, in the alternative, moves for permissive intervention pursuant to Rule 24(b).  ECF No. 283.  SHST and VGH also move for *de novo* determination of Magistrate Judge Kim's report and recommendation to enter a default sanction against SHST.  ECF No. 265.

### A. Motion to Intervene

VGH argues that it satisfies all four requirements to intervene as of right.  First, VGH argues that its motion is timely because it was filed the same day the Court clarified that VGH was no longer a party to this case and because "all of the claims that VGH currently plans to assert on intervention have been in this case since the filing of the original complaint in February 2015."  ECF No. 283 at 6.  Second, VGH argues that it has a protectable interest because it "claims ownership of the MOVA Assets" and "the ownership of those assets is precisely what this case is about."  Id. at 7.  Third, VGH argues that disposing of the action without VGH will impair VGH's

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1  ability to protect its ownership interest in the MOVA assets.  Id.  Finally, VGH argues that "there

2  is no party to protect VGH's interests in the MOVA Assets" because SHST has stopped

3  participating in this litigation.  Id.

4         Rearden does not dispute that VGH satisfies three of the four requirements for intervention

5  as of right.  See ECF No. 294 at 5.  Rearden's sole challenge to VGH's motion to intervene is that

6  it is not timely.  Id. at 6-7, 9.

7         "Three factors should be evaluated to determine whether a motion to intervene is timely:

8  (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other

9  parties; and (3) the reason for and length of the delay."  California Dep't of Toxic Substances

10  Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir. 2002) (internal

11  quotation marks and citations omitted).  Prejudice to the existing parties is "the most important

12  consideration in deciding whether a motion for intervention is untimely."  United States v. State of

13  Or., 745 F.2d 550, 552–53 (9th Cir. 1984) (quoting 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.)).

14  "Although delay can strongly weigh against intervention, the mere lapse of time, without more, is

15  not necessarily a bar to intervention."  United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th

16  Cir. 2004); see also California Dep't of Toxic Substances Control v. Commercial Realty Projects,

17  Inc., 309 F.3d 1113, 1120 (9th Cir. 2002) ("[T]he length of time that has passed since a suit was

18  filed is not, in and of itself, determinative of timeliness.").  Courts have adopted a "nuanced,

19  pragmatic approach" to timeliness.  League of United Latin Am. Citizens v. Wilson, 131 F.3d

20  1297, 1303 (9th Cir. 1997); see also United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th

21  Cir. 2004) ("Timeliness is a flexible concept; its determination is left to the district court's

22  discretion.").

23        **a.  Stage of Proceeding**

24         Rearden correctly points out that the advanced stage of this litigation weighs against

25  intervention.  ECF No. 294 at 7-9.  This litigation began over a year ago, discovery is closed,

26  dispositive motions have already been adjudicated, and trial is scheduled to begin in just a few

27  months.  In an ordinary case, the advanced stage of this litigation would have significant weight

28  and would "strongly support[] a finding of untimeliness."  See, e.g., Lee v. Pep Boys-Manny Moe

United States District Court
Northern District of California

1   & Jack of California, No. 12-CV-05064-JSC, 2016 WL 324015, at *6 (N.D. Cal. Jan. 27, 2016).

2   But the passage of time is not dispositive, and this is not an ordinary case.  The Court must take a

3   pragmatic approach to timeliness that considers the realities of the litigation.

4   **b.  Reason for Delay**

5   VGH had a good reason for not moving to intervene earlier:  it was already a party to the

6   case.  VGH did not even have a protectable property interest that would have entitled it to

7   intervene as of right until December 17, 2015 when it finally acquired the MOVA assets from

8   SHST.  Shortly thereafter, on March 18, 2016, the parties stipulated that VGH would replace

9   SHST as the plaintiff in this action.  ECF No. 92.  For the next five months, VGH did not need to

10   move – and could not have moved – to intervene because it was standing in SHST's shoes as the

11   plaintiff by virtue of the stipulated substitution order.  VGH was able to protect its alleged

12   property interest in the MOVA assets because it was a plaintiff.  The Court ultimately set aside

13   that substitution order on August 11, 2016 based on SHST's misrepresentations and fraud on the

14   Court.  ECF No. 269.  Just two weeks later, and on the same day that the Court clarified that VGH

15   was no longer a party to this case, VGH filed a motion to intervene.  See ECF Nos. 269, 282, 283.

16   It is hard to imagine how its request could have been more timely.

17   VGH's previous participation as a substitute plaintiff in this action distinguishes this case

18   from the cases relied upon by Rearden.  For example, the putative intervenor in In re Bernal had

19   not participated in the litigation at all before moving to intervene because it was not even assigned

20   the rights at issue until the court had already entered default judgment against its predecessor in

21   interest.  In re Bernal, 207 F.3d 595, 596–97 (9th Cir. 2000).  The Ninth Circuit explained that

22   allowing intervention in those circumstances would "[open] the floodgates to a possible abuse . . .

23   by allowing parties to sleep on their rights, neglect their duties with respect to litigation, and

24   thereafter avoid the consequences of such conduct by merely assigning the subject matter to a

25   third party after defaulting."  Id. at 597-98 (internal quotation marks and citations omitted).  In

26   other words, the putative intervenor "was not even in the picture as far as [the plaintiff] and the

27   bankruptcy court were concerned" until the litigation was completed.  Id.

28   The same is not true here.  VGH did not sleep on its rights; it substituted in as plaintiff

10

only a few months after it acquired the rights at issue from SHST and it has fully participated in this litigation ever since.  The other cases that Rearden relies on are distinguishable for the same reason.  See League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1304, 1308 (9th Cir. 1997) (holding that, by "wait[ing] twenty-seven months before seeking to interject itself into the case, only to move the court for full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down," the putative intervenor "slept on its intervention rights for more than two years" and, "[w]hen it awoke, it was unable convincingly to explain its delay"); United States v. Alisal Water Corp., 370 F.3d 915, 922-23 (9th Cir. 2004) (affirming the district court's denial of motion to intervene where the putative intervenor "[sought] to intervene in the remedies phase of a case that ha[d] been litigated for four years," despite being "keenly aware of the litigation throughout its lifespan," and where the district court found that it "ha[d] not explained why it delayed so long").

In response, Rearden argues that "VGH should not benefit in the timeliness inquiry from its substitution as Plaintiff in March" because the Court has since set aside the substitution order based on SHST's fraud on the Court.  ECF No. 294 at 7.  Rearden contends that "VGH participated in that fraud, at least as much as SHST" because they are "represented by the same party representatives and the same outside counsel as SHST was before it."  Id. at 7-8.  This argument fails because the Court set aside the substitution order based on *SHST*'s misrepresentations, not VGH's.  See ECF No. 269 at 7-9 ("[T]he Court grants Rearden's request to set aside the order substituting VGH as Plaintiff because of SHST's fraud on the Court.").

### c.  Prejudice

Rearden argues that allowing VGH to intervene now will prejudice Rearden because: (1) Rearden has already expended significant time and resources litigating this case against SHST; (2) The ownership questions relating to the MOVA assets have rendered them impossible to market or sell; and (3) "VGH shares the same deficiencies as a party as SHST did before it" and "allowing VGH to intervene now would not eliminate or mitigate the prejudice of SHST's default to Defendants."  ECF No. 294 at 10-14.

This argument simply points to prejudice that would have occurred regardless of when

VGH moved to intervene in this action.  "In the context of a timeliness analysis, prejudice is evaluated based on the difference between timely and untimely intervention—not based on the work the defendants would need to do regardless of when intervention was sought." Pep Boys-Manny Moe & Jack, 2016 WL 324015 at *6 (internal quotation marks and citations omitted). Therefore, Rearden must show that "the intervention would prejudice the existing parties *because of the passage of time*." United States v. State of Or., 745 F.2d 550, 552–53 (9th Cir. 1984) (emphasis added); see also, e.g., Day v. Apoliona, 505 F.3d 963, 965 (9th Cir. 2007) ("[T]he fact that the State of Hawaii is filing its Motion now, rather than earlier in the proceedings, does not cause prejudice to Day and the other plaintiffs, since the practical result of its intervention . . . would have occurred whenever the state joined the proceedings."). Even if VGH had moved to intervene in December 2015 as soon as it acquired the rights to the MOVA assets, Rearden still would have spent significant time and resources litigating against SHST, faced the same marketability issues caused by the ownership questions surrounding the MOVA technology, and encountered the same discovery issues caused by SHST's eventual disappearance.  Therefore, Rearden's prejudice concerns "have little to do with timeliness" because "[t]hey do not suggest that their problems are materially different now than they would have been had [the putative intervenor] sought to intervene [sooner]." State of Or., 745 F.2d at 552-53.

To the contrary, the fact that VGH's re-entry into this case will not expand the current scope of litigation suggests that VGH's delay does not prejudice Rearden. See Munoz v. PHH Corp., No. 1:08-CV-0759-AWI-BAM, 2013 WL 3935054, at *9 (E.D. Cal. July 29, 2013) (finding "little-to-no prejudice to Defendants in permitting Ms. Villalon to intervene" because she "adopt[ed] the allegations of the FAC in its entirety" and, therefore, "[her] presence in this action does not expand the scope of this litigation").  When VGH substituted in as plaintiff, it asserted the exact same claims against Rearden that SHST did before it. See Compl., ECF No. 1; First Amended Compl., ECF No. 93.  And VGH admits that "for the first trial, there are no additional claims or counterclaims to be plead." ECF No. 295 at 7.  Rearden has therefore been litigating against the same claims throughout the ownership phase of this litigation, and will continue to litigate against the same claims if VGH intervenes.  In fact, Rearden has actually been litigating

1    those claims *against* VGH since March 2016.  Since that time, VGH has actively litigated this

2    case by answering Rearden's counterclaims, producing discovery, and filing and responding to

3    motions.  See, e.g., ECF No. 111; ECF No. 119; ECF No. 151.  Rearden has therefore been aware

4    of VGH's legal claims and positions for the past six months.

5         The fact that VGH's intervention will not expand the current scope of litigation also

6    distinguishes this case from many of the cases that Rearden relies upon.  Cf. Pep-Boys-Manny

7    Moe & Jack, 2016 WL 324015 at *7 (denying intervention based on prejudice where the putative

8    intervenor's "pleading raise[d] new issues beyond the scope of the claims and defenses raised by

9    Plaintiff" and there were "issues particular to [the putative intervenor's] claim that likely would

10   have to be litigated if the Court permit[ted] her intervention"); Henrikson v. Turbomeca, S.A., No.

11   CIVS 06-1563 WBS DAD, 2007 WL 2215398, at *2–3 (E.D. Cal. July 30, 2007) (denying

12   intervention based on prejudice because "the pleadings would have to be reopened and

13   defendants' pre-answer motions re-litigated with respect to the [putative intervenor's] complaint in

14   intervention"); Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty., 315 F.R.D. 318,

15   323 (N.D. Cal. 2016) (denying intervention because "allowing intervention under these

16   circumstances would both complicate and prolong the litigation").

17        Finally, Rearden argues the relationship between SHST and VGH counsels against

18   intervention.  ECF No. 294 at 11.  To support this argument, Rearden relies on Snyder v.

19   Floworks, Inc., No. C-04-02926 RMW, 2007 WL 2429451 (N.D. Cal. Aug. 23, 2007).  In that

20   case, the putative intervenor claimed that it had only recently discovered that an agreement it

21   entered into nine years earlier—and which had been actively litigated for three years—was not

22   valid, therefore giving it a property interest and a stake in the litigation.  Id.  The court found that

23   this claim "strain[ed] credulity."  Id. at *3.  In addition, the court considered it to be "critical" that

24   the putative intervenor did not make this convenient discovery or move to intervene until after the

25   court had already considered the magistrate judge's report and recommendation and entered

26   judgment.  Id. at * 4-5.  And the putative intervenor admitted that its motion to intervene was

27   designed to prevent the prevailing party from collecting that judgment.  Id.  Because "[b]oth [the

28   losing party] and the [putative intervenor] would benefit from the invalidity of the Operating

United States District Court
Northern District of California

13

Agreement," the court expressed concern that the motion to intervene was "collusive." Id.  Here, in contrast, VGH seeks to intervene *before* an adjudication on the merits to contest the magistrate judge's recommendation to enter default against its predecessor in interest.  And, unlike the putative intervenor in Snyder, VGH's motion to intervene is not based on a suspiciously-timed discovery of new information relating to its rights.  Rather, VGH has been asserting its ownership claim over the MOVA assets since shortly after it allegedly acquired those assets from SHST in December 2015.  The Snyder case is therefore distinguishable.

***

In short, VGH has satisfied all of the requirements to intervene as of right in this action. VGH claims a protectable property interest in the MOVA assets, and disposing of this action without VGH's involvement will undoubtedly impair its ability to protect that interest.  Although VGH has moved to intervene at an advanced stage of the litigation, it was previously a party to this case by virtue of the stipulated substitution order, and it has adopted the same legal claims that its predecessor asserted at the outset.  For that reason, Rearden is well-aware of VGH's legal claims and positions.  VGH also moved to intervene as soon as it was removed as the plaintiff in this case, and its re-entry into the case now will not expand the current scope of litigation.  For all of these reasons, and because the requirements for intervention are broadly interpreted in favor of intervention, the Court grants VGH's motion to intervene as of right.

**B.  Motion for De Novo Determination**

SHST and VGH object to Magistrate Judge Kim's recommendation to enter default judgment against SHST on the following two grounds: (1) entry of default against SHST is improper because Rearden has not been prejudiced by SHST's failure to provide discovery; and (2) VGH is actively litigating overlapping claims and defenses and, therefore, entry of default against SHST creates a risk of inconsistent judgments.  ECF No. 265 at 2.  The Court therefore reviews those parts of Magistrate Kim's recommendation de novo.[3]

_____

[3] Although SHST and VGH raised both of these arguments in their opposition to Rearden's motion for default judgment, Judge Kim did not address the risk of inconsistent judgments in her report and recommendation.  ECF No. 224 at 21.

United States District Court
Northern District of California

### 1.  Motion to Augment the Record

As a preliminary matter, the Court grants SHST's motion to augment the record.  This Court "has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."  United States v. Howell, 231 F.3d 615, 621-22 (9th Cir. 2000).  The discretion to consider new evidence should be exercised rarely because the purpose of referral to a magistrate judge is to reduce the evidence and issues that must be considered by the district court.  See Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).  The Court exercises its discretion to consider the evidence regarding Ms. Xiao Ping's reappearance in this case because it was purportedly not available to the parties at the time they argued the motion for default judgment before Judge Kim and it is potentially relevant to the Court's prejudice determination.

After considering the new evidence, however, the Court refuses to give it any weight for several reasons.  First, this allegedly new evidence was presented to the Court under suspicious circumstances that raise serious concerns regarding its credibility: SHST did not notify Rearden or this Court that it had been in contact with Ms. Xiao Ping until the eve of the hearing on the motion for de novo determination, even though SHST's counsel admits that he was in contact with Ms. Xiao Ping more than three weeks earlier.  ECF No. 298-5 ¶ 3.  Second, the materials submitted paint an incomplete picture of both SHST's absence thus far and its potential participation in this case going forward.  For example, even if Ms. Xiao Ping was incapacitated, it is unclear why no one else at SHST—which has four other officers and directors according to its corporate disclosures—was able to notify SHST's counsel about her medical condition.  It is also unclear whether SHST's counsel attempted to contact any person at SHST other than Ms. Xiao Ping.  And Ms. Xiao Ping's alleged willingness to testify in this case from China appears meaningless given that the Hague Convention prohibits American attorneys from taking depositions in China for use in foreign courts.  See Judicial Assistance in China, Consulate General of the United States, available at http://guangzhou.usembassy-china.org.cn/judicial-assistance-in-china.html.  Absent cross-examination and further discovery, Ms. Xiao Ping's assertions have little value.  Finally, the credibility of this new evidence must be evaluated against the backdrop of SHST's and VGH's

1   conduct throughout this litigation, which has created an environment in which the Court cannot

2   accept their representations at face value.[4]

3                    **2.  Rearden is Prejudiced by SHST's Disappearance**

4          If a party fails to obey a discovery order, the court may enter default judgment against the

5   disobedient party as a sanction.  Fed. R. Civ. P. 37(b)(2)(A)(vi).  See In re Exxon Valdez, 102

6   F.3d 429, 432 (9th Cir. 1996).  However, a default judgment sanction "is authorized only in

7   extreme circumstances and only where the violation is due to willfulness, bad faith, or fault of the

8   party."  Exxon Valdez, 102 F.3d at 432-33 (internal citations and quotation marks omitted)

9   (holding that the district court did not abuse its discretion by entering default judgment against the

10   plaintiffs where they had refused to comply with discovery obligations and orders for more than

11   two years, the court repeatedly warned the plaintiffs that failure to comply would result in

12   dismissal, and the court had already imposed costs on the plaintiffs as a lesser sanction).  "The

13   most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery

14   violations make it impossible for a court to be confident that the parties will ever have access to

15   the true facts.'"  Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091,

16   1097 (9th Cir. 2007) (quoting Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1058 (9th Cir.

17   1998)).

18          The Court finds that SHST's failure to participate in discovery and obey this Court's

19   orders have severely prejudiced Rearden and cast significant doubt on whether the true facts will

20   ever come to light.  Because of SHST's disappearance, Rearden cannot question *any* SHST

21   representative about SHST's alleged purchase of the MOVA assets from MO2 in May 2013.  Nor

22   can it test any factual assertion that SHST's counsel—who has not communicated with its client in

23   over six months—has made on SHST's behalf.  This case presents an unusual situation in which

24   the plaintiff, who was a party to an agreement that is central to key ownership issues in the case,

25   has completely disappeared.  As a result of this disappearance, the Court cannot be confident that

26

27   _____

28   [4] In addition to the conduct recited in Judge Kim's sanctions order, the Court detailed additional
     misrepresentations to the Court at the hearing held on August 4, 2016.  See Tr. of Proceedings
     (August 4, 2016), ECF No. 264 at 15:21-17:21.

United States District Court
Northern District of California

1   the parties will ever have access to the true facts surrounding ownership of the MOVA assets.

2          Perhaps most importantly, Rearden is unable to question Ms. Xiao Ping—the only SHST

3   representative listed in the May 2013 asset purchase agreement through which SHST claims to

4   have acquired the MOVA assets from MO2, LLC.  ECF No. 122-18 at 17, 19, 38, 40.  Rearden

5   contends that Ms. Xiao Ping's use of the company seal ("chop") in that agreement is fraudulent,

6   and has submitted expert testimony to support that contention.  Decl. of Anna M. Han, ECF No.

7   234.  In response, SHST argues that the authenticity of the chop is irrelevant because the asset

8   purchase agreement is governed by California law, under which a contract may be binding without

9   a signature if the parties have partially performed.  ECF No. 265 at 19 (citing 14 Cal. Jur. 3d

10   Contracts § 158).

11          This argument does not help SHST, because Rearden cannot question any SHST

12   representative about whether SHST partially performed its obligations under the agreement.

13   There is no evidence produced in discovery that SHST made any payment to MO2 to satisfy its

14   obligations under the asset purchase agreement.  Although payments were made to MO2 and

15   MO2's counsel's escrow account, those payments originated from an unknown entity called

16   Victor Alliance Limited.[5]  Again, without any SHST representative, Rearden cannot inquire into

17   the relationship between SHST and Victor Alliance Limited and whether the payments from

18   Victor Alliance Limited constituted performance by SHST.  As a result, important factual issues

19   related to the validity of the May 2013 asset purchase agreement will likely go unanswered.

20          SHST's counsel and VGH argue that this does not prejudice Rearden because there are

21   other potential witnesses who have personal knowledge of the May 2013 transfer from MO2 to

22   SHST.  ECF No. 265 at 16-20.  Specifically, they argue that the following witnesses can

23   authenticate the May 2013 asset purchase agreement and confirm full performance by the parties:

24   (1) Joseph Gabriel, vice president and general counsel for licensee DD3, who claims to have

25   represented SHST in connection with its acquisition of the MOVA assets from MO2; (2) Greg

26   LaSalle, who signed the agreement on behalf of MO2; (3) the transactional attorneys who

27   _____

28   [5] VGH's parent company, Digital Domain Holdings Limited ("DDHL"), later transferred money
to this entity after purchasing the MOVA assets from SHST.

United States District Court
Northern District of California

negotiated the agreement on behalf of LaSalle and MO2; (4) Amit Chopra, the executive director and chief operating officer of licensee DD3's parent company, DDHL, and an agent of VGH, who claims to have been involved in funding SHST's purchase of the MOVA assets from MO2; and (5) Daniel Seah, a DD3 director who received emails pertaining to DD3's negotiations with MO2 and LaSalle before SHST stepped in as the purchaser.  Id.

With the possible exception of Joseph Gabriel, none of these individuals represented SHST in the May 2013 transaction.  Although Gabriel declares that he "represented SHST in connection with its acquisition of the MOVA property," ECF No. 44-19 ¶ 8, his name is conspicuously absent from the May 2013 asset purchase agreement.  As explained above, the only SHST representative mentioned in that agreement is Ms. Xiao Ping.  Because SHST is nowhere to be found, Rearden has no way to test Gabriel's assertion that he acted on SHST's behalf.  Moreover, SHST's counsel and VGH propose Daniel Seah (a VGH director) as an alternative source of information, but VGH previously admitted in an interrogatory that "there are no current directors, shareholders and/or employees of VGH with knowledge of SHST's acquisition of the MOVA Assets from MO2, LLC."  ECF No. 224-6 at 8, 9.  At the very least, this discrepancy between VGH's earlier interrogatory responses and its current position raises questions as to whether Seah actually has personal knowledge of the May 2013 transaction.  In short, none of these individuals can speak on SHST's behalf as to its involvement in the May 2013 transaction.  And the Court doubts that the true facts surrounding the asset transfer from MO2 to SHST will come to light when one party to that critical agreement—who also happens to be the plaintiff in this action—is completely absent.

SHST's counsel and VGH argue that this does not matter because SHST played a "limited" role in the asset transfer as a holding company that stepped in at the "last minute" after Gabriel and others negotiated and did due diligence related to the deal.  ECF No. 265 at 15-16.  But Rearden has no way to test the truth of that assertion by SHST's counsel—or any other assertion by SHST's counsel—because it cannot depose SHST officers and directors about their involvement in the May 2013 agreement.  In essence, SHST's counsel and VGH ask the Court to take its word that SHST's role was limited and leave it at that.  The Court declines the invitation.  As Judge Kim explained, "SHST's representations by counsel in legal briefing for this motion

18

United States District Court
Northern District of California

1  cannot substitute for binding admissions of the missing client."  ECF No. 252 at 11.

2       SHST's counsel and VGH also try to evade a finding of prejudice by arguing that the May

3  2013 transfer from MO2 to SHST is "peripheral," and that the real "case-dispositive issue" is the

4  February 2013 transfer from OL2 to either Greg LaSalle or Stephen Perlman.  ECF No. 265 at 9.

5  Although both VGH's ownership claim and SHST's ownership claim depend on the purported

6  transfer from OL2 to LaSalle in February 2013, they also necessarily depend on the May 2013

7  asset purchase agreement between MO2 and SHST.  If that agreement was invalid, SHST never

8  owned the MOVA assets, and VGH could not have acquired the MOVA assets from SHST.

9  Abele v. Mod. Fin. Plans Servs., 300 F.3d 1097, 1104 (9th Cir. 2002) (explaining that a party can

10 only transfer rights that it possesses).  The complete disappearance of a party to an agreement that

11 is central to the key ownership issues in this case cannot be described as merely "peripheral."

12                     **3.   Entry of Default Judgment Should be Delayed to Avoid Inconsistent**

13                                               **Judgments**

14      Although SHST's conduct warrants a default judgment sanction, SHST is not the only

15 other party to this lawsuit.  And, under Federal Rule of Civil Procedure 54(b), "the court may

16 direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the

17 court expressly determines that there is no just reason for the delay."  Fed. R. Civ. P. 54(b).

18 Because VGH continues to litigate the same claims and defenses previously asserted by SHST, the

19 Court finds that entry of default judgment against SHST should be delayed to give VGH an

20 opportunity to litigate its ownership claims on the merits.

21      There is just reason to delay the entry of default judgment when there are multiple

22 defendants—only some of whom have defaulted—and the court has not yet adjudicated the claims

23 as to the non-defaulting defendants.  See 10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.) (citing

24 Frow v. De La Vega, 82 U.S. 552, 554 (1872)).  This rule is rooted in the Supreme Court's

25 decision in Frow v. De La Vega, 82 U.S. 552 (1872).  In Frow, the plaintiff sought to hold

26 multiple defendants jointly and severally liable for defrauding him of title to a single tract of land.

27 Id. at 552-53.  The Supreme Court held that the lower court should have delayed entry of default

28 judgment against the single defaulting defendant until it had adjudicated the claims against the

non-defaulting defendants.  Id. at 554.  Based on Frow, "[i]t has long been established that, where there are several defendants, the transgressions of one defaulting party should not ordinarily lead to the entry of a final judgment, let alone a judgment fatal to the interests of other parties." Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183, 1189-90 (9th Cir. 2009) (citing Frow, 82 U.S. at 554) (holding that the non-defaulting defendant "should not be precluded by the default of [the codefendant] in the litigation from presenting those arguments and having them adjudicated on the merits").

The purpose of the Frow rule is to prevent logically inconsistent judgments.  See Frow, 82 U.S. at 554 (explaining that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous" because it could result in "one decree of the court sustaining the charge of joint fraud committed by the defendants" and "another decree disaffirming the said charge"); see also In re Uranium Antitrust Litig., 617 F.2d 1248, 1257–58 (7th Cir. 1980) (explaining that "[t]he result in Frow was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability").  Therefore, if the entry of default judgment might create a future risk of inconsistent rulings, the "proper procedure" is to "wait[] until completion of trial against the non-defaulting defendants before fixing damages and entering default judgments against [the defaulting defendant]."  Garamendi, 683 F.3d at 1083 (explaining that Frow has applied where "the entry of default judgment was inconsistent with or preceded the findings as to the non-defaulting defendants").  At that point, the court will be able to ensure that the judgment against the defaulting defendants is "fully consistent" with the judgment against the non-defaulting defendant.  Id.

Although the Frow rule was announced in a case where the plaintiff sought to hold the codefendants jointly and severally liable, the rule applies whenever "it is necessary that the relief against the defendants be consistent."  10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.); see also United States Small Bus. Admin. v. Rocket Ventures II, L.P., No. C 10-04425 JSW, 2013 WL 4835371, at *15 (N.D. Cal. Sept. 10, 2013) ("*Frow*'s applicability turns 'on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.'") (quoting Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1008

United States District Court
Northern District of California

1    (N.D.Cal.2001)).[6]  "In _Frow_, the inconsistency flowed not only [from] the fact of allegation of

2    joint liability, but the fact that there was a single _res_ in controversy."  Shanghai, 194 F. Supp. 2d at

3    1009 (citing In re Uranium Antitrust Litigation, 617 F.2d at 1257, n. 40).  But the Ninth Circuit

4    has recognized that the relief against defendants must also be consistent when defendants are

5    "similarly situated."  In re First T.D., at 532-33 (applying the Frow principle in the absence of

6    joint liability, and holding that the bankruptcy court "violated the _Frow_ principle and abused its

7    discretion" by entering default judgment against some of the defendants where doing so "directly

8    contradicted" the court's prior summary judgment ruling).  In In re First T.D., the Ninth Circuit

9    explained that would be "incongruous and unfair to allow the Trustee to prevail against Defaulting

10   Defendants on a legal theory rejected by the bankruptcy court with regard to the Answering

11   Defendants in the same action."  Id.  In that case, the defendants were similarly situated because

12   "each transaction . . . followed an identical pattern with almost identical legal documents" and "the

13   central legal issue concerning each transaction was the same."  Id.  In subsequent cases, courts

14   have explained that the Frow rule applies if "the case against each rests on the same legal theory"

15   or if "the defendants have closely related defenses."  Garamendi v. Henin, 683 F.3d 1069, 1082–

16   83 (9th Cir. 2012); Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1006–07

17   (N.D. Cal. 2001).

18          Here, the Court must delay entry of default judgment against SHST to avoid a risk of

19   inconsistent judgments regarding which entity owns the MOVA assets.  If the Court entered

20   default judgment against SHST at this juncture, Rearden would prevail on its declaratory relief

21   counterclaim against SHST as to ownership.  However, VGH would continue to claim that SHST

22   rightfully acquired rights to the MOVA Assets in February 2013 and that VGH rightfully acquired

23   those rights from SHST in December 2015.  Because VGH's ownership claim is dependent on

---

24   

25   [6] Rearden relies on Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995 (N.D. Cal.
     2001) to argue that "the mere fact that there is some risk of inconsistent judgments will not
26   preclude the Court's discretion under Rule 54(b) to enter default judgment where there is "no just
     reason for delay."  ECF No. 280 at 22.  However, Shanghai is distinguishable: In that case, the
27   court explained that Frow "[did] not apply" because "differing judgments would not necessarily be
     illogical."  Id. at 1009-10.  As a result, the court held that Shanghai was "an appropriate case to
28   exercise such discretion" under Rule 54(b).  Id.  As explained below, this is not such a case.

SHST's prior ownership, VGH would be trying to prove what this Court already rejected by entering default judgment against SHST.  And it is possible that the Court might determine that VGH is in fact the rightful owner of the MOVA assets.  Such a ruling would necessarily be inconsistent with the default judgment against SHST.  The <u>Frow</u> rule therefore requires the Court to delay entry of default judgment to avoid such a result.

Rearden argues that the <u>Frow</u> line of cases is distinguishable from this case because the defaulting party is a plaintiff, not a defendant; the defaulting and non-defaulting parties are related; the defaulting party was not absent for the entirety of the case, but rather litigated the case for over a year; the non-defaulting party appeared only after the defaulting party disappeared; and the same individuals represent both the defaulting and non-defaulting parties.  ECF No. 280 at 12, 17-18.  However, none of these facts eliminate the risk of inconsistent judgments if this Court enters default judgment against SHST before adjudicating VGH's ownership claims on the merits.  And Rearden cites no authority to support its contention that, even though the primary purpose of the <u>Frow</u> rule still applies, the Court should nonetheless deviate from it.

Rearden further argues that there is little to no risk of inconsistent judgments because VGH would likely be collaterally estopped from litigating the ownership issue if the Court enters default judgment against SHST now.  ECF No. 280 at 13, 19-11.  However, Rearden did not raise this legal argument before Judge Kim.  In fact, Rearden's only response to SHST's and VGH's argument about the risk of inconsistent judgments appeared in the following brief footnote in their reply brief:

> VGH also argues that the court should delay entry of default judgment, citing Federal Rule 54. Cases discussing that Rule explain that under certain circumstances final default judgment can be delayed so as to not prejudice other, independent parties. VGH and SHST are related companies, have the same representatives, and are represented by the same counsel. VGH is *only* a party by virtue of the transfer of SHST's rights in the Mova Assets, which transfer expressly acknowledged this case. This situation is one of their own making, and does not justify a delay in entry of a default judgment.

ECF No. 158 at 5, n. 3.  This footnote does not mention the likelihood of collateral estoppel as a reason to enter default judgment immediately.  Now, in its opposition to SHST's and VGH's

22

United States District Court
Northern District of California

1    motion for de novo determination, Rearden attempts to supplement this argument by analogizing

2    to several cases that address new legal issues such as collateral estoppel, privity, and alter ego

3    liability.  ECF No. 280 at 19-22.  Although this Court has discretion to consider new legal

4    arguments that were not presented to the magistrate judge, "the ordinary attitude should be to

5    refuse to entertain objections based on legal arguments that were not presented to the magistrate

6    judge."  12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.).  This approach makes sense because "[t]he

7    purpose of the Federal Magistrate's Act is to relieve courts of unnecessary work."  Borden v.

8    Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (internal quotation marks and

9    citations omitted) (holding that "the district court judge properly refused to consider an argument

10   which could have been, but inexplicably was not, presented to the magistrate in the first

11   instance").  Accordingly, "[p]arties must take before the magistrate, not only their best shot but all

12   of their shots."  Id. (internal quotation marks and citations omitted).  Here, Rearden failed to

13   present its collateral estoppel argument to Magistrate Judge Kim, despite filing three different

14   briefs in support of its motion for default judgment.  See ECF Nos. 139, 158, 215.  The Court

15   therefore refuses to consider it.[7]

16          Finally, Rearden argues that there is no just reason for delay because "SHST's

17   disappearance . . . renders it impossible for VGH to offer sufficient proof of SHST's ownership

18   such that VGH's ownership claims can stand."  ECF No. 280 at 19.  The Court declines to enter

19   default judgment based on this speculation as to whether VGH will be able to provide sufficient

20   proof of ownership; that is an issue for the upcoming trial.

21

22   _____

23   [7] The Court also notes that Rearden's motions for default judgment were directed solely at SHST.
     See ECF No. 158 at 2 ("The motion for entry of default is against SHST."); Report and

24   Recommendation, ECF No. 252 at 1 ("Rearden's motion was directed solely to SHST and not to
     VGH.").  Now, however, Rearden attempts to extend this default to VGH.  ECF No. 280 at 21

25   ("VGH will be reasonably bound by a default judgment against SHST.").  This extension to VGH
     directly contradicts Judge Kim's explicit recommendation that "no action be taken against Plaintiff

26   Virtue Global Holdings, Ltd. ("VGH")."  ECF No. 252 at 1.  Because Rearden did not object to
     this recommendation, it is unclear whether it is even entitled to de novo review by this Court.  See

27   Fed. R. Civ. P. 72(b)(3) (requiring the district judge to "determine de novo any part of the
     magistrate judge's disposition that has been properly objected to").

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***

In sum, SHST's disappearance from this litigation warrants entry of a default sanction against it.  However, the Court will delay entry of default judgment due to VGH's continued participation in this case and the attendant risk of an inconsistent judgment.

## CONCLUSION

The Court grants VGH's motion to intervene in this case as of right.  VGH may file an intervenor's complaint against Rearden within fourteen days of this Order.  Because SHST's discovery failures warrant a default sanction against it, the Court directs the Clerk to enter default against SHST.  The Court will consider a motion for default judgment against SHST at the conclusion of this case on the merits.

IT IS SO ORDERED.

Dated:  October 11, 2016

_____
JON S. TIGAR
United States District Judge