KILPATRICK TOWNSEND & STOCKTON LLP
JON MICHAELSON (SBN 83815)
jmichaelson@kilpatricktownsend.com
SCOTT KOLASSA (SBN 294732)
skolassa@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA  94025
Telephone: 650 326 2400 / Facsimile: 650 326 2422

KILPATRICK TOWNSEND & STOCKTON LLP
HOLLY GAUDREAU (SBN 209114)
hgaudreau@kilpatricktownsend.com
BENJAMIN M. KLEINMAN-GREEN (SBN 261846)
bkleinman-green@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: 415 576 0200 / Facsimile: 415 576 0300

Attorneys for Plaintiff and Counterclaim Defendant
SHENZHENSHI HAITIECHENG SCIENCE AND
TECHNOLOGY CO., LTD. and Intervenor VIRTUE
GLOBAL HOLDINGS LIMITED

TURNER BOYD LLP
Karen I. Boyd
boyd@turnerboyd.com
Jennifer Seraphine
seraphine@turnerboyd.com
Zhuanjia Gu
gu@turnerboyd.com
702 Marshall Street, Suite 640
Redwood City, CA  94063
Telephone:  650-521-5930
Facsimile:  650-521-5931

KERR & WAGSTAFFE LLP
James M. Wagstaffe
wagstaffe@kerrwagstaffe.com
Frank Busch
busch@kerrwagstaffe.com
101 Mission Street, 18th Floor
San Francisco, CA  94105-1727
Telephone: 415-371-8500
Facsimile: 415-371-0500

Attorneys for Defendants
REARDEN, LLC, REARDEN MOVA,
LLC, MO2, LLC and MOVA, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD., a People's Republic of China corporation, <br><br> Plaintiff, <br><br> and <br><br> VIRTUE GLOBAL HOLDINGS LIMITED, a business company incorporated in the British Virgin Islands, <br><br> Intervenor, <br><br> v. <br><br> REARDEN, LLC, a California Limited Liability Company; REARDEN MOVA, LLC, a California Limited Liability Company; MO2, LLC, a California Limited Liability Company; and MOVA, LLC, a California Limited Liability Company, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 3:15-cv-00797 JST (SK) <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date:        September 21, 2017 <br> Time:        11:00 AM <br> Ctrm.:       9, 19th Floor <br>                  Hon. Jon S. Tigar |



## I.    INTRODUCTION

Pursuant to the Court's Statement of Decision issued on August 11, 2017, the parties hereby submit a Joint Case Management Statement identifying any tasks that remain before the Court can enter the judgment.  D.I. 427.

## II.    POSITION OF VGH

Nothing remains before the Court can enter judgment, which should be certified as final and appealable according to Federal Rule of Civil Procedure 54(b).  VGH disagrees with specific positions taken by Defendants, as explained below.

### A.    Entry of Judgment

Entering judgment and certifying for appeal under Rule 54(b) is an act of judicial discretion.  The Rule has three requirements that must be met for entry of judgment to be appropriate.  First, it requires that the case involve multiple claims for relief or multiple parties.  This case involves both.  Second, it requires that at least one claim of at least one party be fully decided.  The entered judgment would fully decide VGH's ownership claim.  Third, it requires that this Court find that there is no just reason for delaying an appeal. Here, the nature of the second phase of this bifurcated case and the viability of four other related cases all depend on the correctness of the entered judgment.  Delaying entry of this judgment and thereby deferring appellate consideration of the judgment until after these five trials take place might result in the waste of vast resources, both of the Court and the parties.  Moreover, in deciding this appeal, the Federal Circuit would not need to reach any of the issues set to be heard in the second phase of this trial.  On the other hand, there is no just reason to delay entering this judgment and allowing an appeal.

The Court should enter judgment under Fed. R. Civ. P. 54(b) as to VGH and Defendants, certifying the findings in the Statement of Decision for appeal.  VGH agrees with Defendants that the form of judgment included as Exhibit G is appropriate.  Although VGH cannot speak for SHST on this topic, VGH also agrees with Defendants that the form of judgment included as Exhibit H is appropriate.



**B.      Additional Motions by VGH and SHST**

If the Court does enter judgment and certify for appeal, VGH will seek a stay of this case pending resolution of the appeal.  VGH will also seek a stay of the Statement of Decision's mandate that MOVA be surrendered to Rearden pending resolution of the appeal.

If the Court declines to stay this case pending appeal, VGH expects that SHST will move to set aside the default entered on October 12, 2016 (D.I. 306) so that it can defend the counterclaims to be adjudicated in the second phase of this bifurcated case.

VGH also anticipates that it and possibly Digital Domain 3.0 ("DD3") will move to intervene in the second phase of the case so that their rights are protected in that proceeding: VGH has assumed all of SHST's liabilities related to this case and relative to the MOVA Assets, and DD3 is expressly identified and charged with alleged wrongdoing with respect to most of the remaining counterclaims advanced by the Rearden Entities.

**C.      Response to Rearden's Position Re Taking Possession of the MOVA Assets**

As stated above, VGH will move to stay enforcement of the order in the Statement of Decision (including as reflected in any judgment entered by the Court), pending appeal.

VGH also objects to Defendants' definitions of "business records" and its requests for "[a]ll software, source, and object code **related to** the MOVA Assets" (emphasis added) and for "related output files."  These terms are overbroad.  By using them, Defendants seek more than the Statement of Decision conveys.  VGH otherwise does not object to the turning over of the materials currently in escrow, including the hardware, software, and source code making up the MOVA Assets.  VGH hopes that the parties can resolve any disputes regarding scope amongst themselves.

**D.      Response re Status of Original MO2 and Allegedly Privileged Documents**

**1.      Status of Original MO2**

Defendants' requests regarding privileged documents and the restoration of Original MO2 rest on portions of the Statement of Decision that VGH will seek to have reversed on appeal.  VGH's arguments with respect to those portions are independent of the arguments that will support VGH's appeal of the conclusion that Original MO2 purchased the MOVA Assets from



OL2 for the benefit of Rearden LLC.

In the Statement of Decision, the Court wrote that "LaSalle/Kalin set up a new limited liability corporation called MO2, LLC for the purpose of receiving the Mova Assets." The Statement of Decision goes on to say that "MO2, LLC was incorporated on November 9, 2012. MO2 was owned by Rearden LLC as of the date of its formation. The Articles of Incorporation identify LaSalle as the agent for service of process, and state that the LLC will be managed by 'one manager,' but does not identify who that manager will be. The fact that LaSalle signed as organizer does not mean that he was a manager or a member (i.e. owner) of the LLC."

The conclusion in the Statement of Decision that Original MO2 was owned by Rearden LLC as of the date of its formation is not supported by the record. Indeed, it is contradicted, at least implicitly, by the record. For example, if Defendants or anyone associated with them had lawful control over Original MO2 (and not just over the MOVA Assets), then those entities could have immediately acted to address the filing LaSalle made with the California Secretary of State. They could have preempted such filings, by taking appropriate actions when they first suspected LaSalle of acting inappropriately. They did not, because they did not in fact have the authority to do so.

LaSalle did not lie or otherwise misrepresent himself in his November 26, 2013 filing with the California Secretary of State. Even if, as stated in the Statement of Decision, he was bound to manage Original MO2 for the benefit of Rearden LLC, he was still an "authorized person" with respect to Original MO2 and was, in fact, the only voting member of Original MO2.

### 2. Status of Allegedly Privileged Documents

Defendants request that "the prior orders regarding attorney-client privilege over communications between Rearden/MO2 LLC ("MO2") on the one hand, and attorneys representing Rearden/MO2 on the other hand, be set aside and that the attorney-client privilege be restored in full." VGH disagrees.

In addition to Original MO2 no longer existing and thus not having a privilege to assert, it remains true that (a) Defendants had not shown that Rearden and/or Perlman controlled MO2 (D.I.



103, at 9-11); and (b) LaSalle had a managerial role at MO2 and could thus waive the attorney-client privilege, and did so when LaSalle disclosed documents to SHST and DD3 (D.I. 103, at 11-13).

Also, Defendants have waived this privilege.  As evidenced by the great lengths VGH and the Court would have to go to in order to comply with their request, this material has long been in the public record.  It has been available to the general public for almost nine months.  Moreover, and contrary to Defendants' assertions, they did not maintain their objections at trial.  Although Defendants did not identify the documents specifically, nearly two dozen trial exhibits may qualify, including exhibits 29-33, 35-36, 38, 42, 59, 82-93, 277, 365, 371-373, 376, and 382-384.  At trial, Defendants objected to only a small number of these and were denied a standing objection.

What's more, and independent of any determination as to whether Original MO2 was a subsidiary of Rearden, the documents are subject to the crime-fraud exception to the attorney-client privilege.  The Statement of Decision rests heavily on the finding that Perlman intended to deceive Lauder and successfully did so.  Attorney-client privilege cannot be used to protect communications that were themselves made in furtherance of fraud.  These communications, which relate to the formation of Original MO2 by LaSalle and Kalin, were made in furtherance of Perlman's intent to defraud Lauder.

### E.    Response to Defendants' Statement Re Fees and Costs

VGH will oppose any motion for attorneys' fees and costs beyond those to which Defendants are statutorily entitled.

## III.    POSITION OF THE REARDEN ENTITIES

This Court ordered in the Statement of Decision that "[t]he Court's prior injunction is dissolved" and that "Rearden may take possession of the Mova Assets *forthwith.*"  D.I. 427, at 18. The MOVA Assets were previously defined by the Court to include "the MOVA® Contour® Reality Capture ('MOVA' or 'MOVA Contour') technology, and related hardware and software, source code, patents and patent applications, trademarks, copyrights, trade secrets, domain names, business records, and various physical goods."  (*See* Order Granting Preliminary Injunction, D.I.



188, at 15.)  VGH has not complied with this Court's order.  Accordingly, there are several matters to be addressed, as detailed below.

### A.   Rearden's Right to Immediate Possession of the MOVA Assets

#### 1.   Timing of Taking Possession

VGH has not cooperated in the return of the MOVA Assets, including those in storage, instead stating herein that it will request that the court extend the preliminary injunction order previously entered in this case, pending an appeal of the case.  But that injunction has been dissolved, and therefore there is no injunction to be "extended."  VGH sets forth no justification or ground for its refusal to comply with the Court's Order, and defendants Rearden, LLC, Rearden MOVA, LLC, MO2, LLC, and MOVA, LLC (collectively, "Rearden") request that the Court order VGH to give Rearden immediate possession of the MOVA Assets.

#### 2.   Order to Escrow Agent

Following the issuance of this Court's preliminary injunction order (D.I. 188), some of the defined MOVA Assets were moved by Digital Domain 3.0, Inc. ("DD3") into a locked storage unit.  A list of these assets, provided by DD3, is attached as Exhibit A.   The key to that storage unit has been entrusted with Citibank, N.A. as the escrow agent, and the escrow agreement requires either joint instructions from DD3 and Rearden, which DD3 is thus far unwilling to provide,[1] or a Court order to release the key.  Rearden thus requests that the Court issue an order to Citibank, N.A., in the form attached as Exhibit B, to disburse the storage unit key to Cindy Ievers of Rearden forthwith.

#### 3.   MOVA Patent Assignments

The MOVA Assets include MOVA Patents.  A list of U.S. MOVA Patents is attached as Exhibit C.  VGH and SHST have, alone or in cooperation with DD3, filed assignments with the United States Patent and Trademark Office ("USPTO") purporting to show that they are assignees of the U.S. MOVA Patents.  The VGH and SHST assignments cast a cloud on Rearden's title to the MOVA Patents.  The Manual of Patent Examining Procedure § 323.01(c), Assignment or

---

[1] Counsel for DD3 has advised (*see* Exhibit J) that DD3 will "act only at the direction of VGH, as the licensor of MOVA to DD3, or directly from the Court.



Change of Name Improperly Filed and Recorded by Another Person Against Owner's Application or Patent, provides: "The owner should contact the party who recorded the papers with the erroneous information and request that such party record corrective papers."  Rearden thus requests that the Court order VGH and SHST to file with the USPTO corrective documents in the form attached as Exhibit D.

**4.      Other MOVA Assets**

To the extent that there are any MOVA Assets that were not previously moved to the storage unit escrow, Rearden requests an order requiring their return to Rearden immediately.  To facilitate the Court's order that "Rearden may take possession of the Mova Assets forthwith," Rearden requests that VGH and SHST, and all parties acting in concert with them (*e.g.*, DD3), be ordered to participate and cooperate in the return of the following MOVA Assets, and to provide a Certification to the Court when all such assets have been returned.  Rearden requests that the Court set a date certain for the return of assets and filing of the certification, and proposes September 30.  A proposed order granting this relief is attached as Exhibit I.

**(a)      MOVA Assets – Hardware**

All hardware related to the MOVA Assets, including but not limited to all lighting, rigging, cameras, computers, servers, physical storage media (such as hard drives, solid-state disks, portable disk drives, CDs, CDRs, DVDs, Blu-rays, portable USB drives, and any other storage media, *etc.*).

**(b)      MOVA Assets - Software, Source Code, and Related Output Files**

All software, source, and object code related to the MOVA Assets, including the Contour program and all related MOVA Contour output files created by MOVA that were taken by Mr. LaSalle and/or others (e.g., SHST, VGH, DD3, or others acting in concert with these entities) from Rearden, OnLive, Inc. ("OnLive"), or OL2 LLC ("OL2").

**(c)      MOVA Assets - Business Records**

All business records taken from Rearden, OnLive, or OL2 by Greg LaSalle, SHST, VGH and/or DD3, or others acting in concert with any of them.  This includes all business records that



were provided to DD3 in connection with its purported license of the MOVA Assets from SHST/VGH, including, without limitation:  (a) business records relating to the MOVA patents, copyrights, and trademarks; (b) business records provided to DD3; (c) MOVA-related trade show, conference, and award materials; (d) MOVA-related website materials; (e) MOVA-related marketing and sales materials; (f) MOVA-related press materials, releases, briefings and publications; (g) emails sent from, or received to, any MOVA Asset domain name, including without limitation, mova.com, and all MOVA Asset domain name website files; and (h) records between Rearden, MO2, and/or Greg LaSalle on the one hand and attorneys representing Rearden and/or MO2 on the other hand, including without limitation Alan Kalin (the attorney-client privilege issue relating to these documents is addressed in Section C, below).

### (d)   MOVA Assets - Domain Names

Transfer of control over all MOVA Asset-related domain names, including, but not limited to, mova.co, mova.com, movacontour.com, movacontour.net, movacontour.tv, realitycapture.com, realitycapture.net, realitycapture.org, and realitycapture.tv.

### B.   Return of Rearden's Bond

In its Preliminary Injunction Order, this Court ordered Rearden to "post a bond in the amount of $25,000 to secure payment of any damages sustained by VGH or SHST if they are later found to have been wrongfully enjoined."  (D.I. 188, p. 16.)  The Court's findings in its Statement of Decision confirm that VGH and SHST have not been wrongfully enjoined because Rearden is the rightful owner of the MOVA Assets.  Rearden therefore requests that the Court order that the bond be released and returned to Rearden.

### C.   Restoration of Rearden's Attorney-Client Privilege

Rearden requests that the prior orders regarding attorney-client privilege over communications between Rearden/MO2 LLC ("MO2") on the one hand, and attorneys representing Rearden/MO2 on the other hand, be set aside and that the attorney-client privilege be restored in full.  The setting aside of prior orders and return of privileged documents is proper because Magistrate Judge Kim held that the attorney-client privilege was waived based on



preliminary findings that the Court has found to be incorrect following trial.  (*See* Order on Joint Discovery Letter Brief: Granting in Part and Denying In Part Plaintiff's Motion to Compel Production of Documents Withheld on the Basis of Attorney-Client Privilege (D.I. 103)).

In sum, Judge Kim compelled production of documents including communications relating to the formation and operation of MO2 between Mr. Perlman, Mr. LaSalle, and Rearden attorney Alan Kalin ("the MO2 Privileged Documents") based on findings that: (a) Defendants had not shown that Rearden and/or Mr. Perlman controlled MO2 (D.I. 103, at 9-11); and (b) Mr. LaSalle had a managerial role at MO2 and could thus waive the attorney-client privilege, and did so when Mr. LaSalle disclosed documents to SHST and DD3 (D.I. 103, at 11-13).  The Court has since concluded, however, that "MO2 was owned by Rearden LLC as of the date of its formation" and that MO2's "Articles of Incorporation identify LaSalle as the agent for service of process, and state that the LLC will be managed by 'one manager,' but does not identify who that manager will be. The fact that LaSalle signed as organizer does not mean that he was a manager or a member (i.e. owner) of the LLC."  (D.I. 427, at 10.)

Rearden has consistently maintained, and established at trial, that it is the owner of MO2, and as such, owns the attorney-client privilege over the MO2 Privileged Documents, including the authority to assert or waive the attorney-client privilege.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management.").

Rearden has also consistently maintained, and established at trial, that Mr. LaSalle at no time had any right to waive the attorney-client privilege over communications between MO2 and its counsel, including the MO2 Privileged Documents.  *See Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 U.S. Dist. LEXIS 42740, at *19-20 (N.D. Cal. Mar. 26, 2013) ("[U]nauthorized disclosures to a third party do not automatically waive privilege").

Rearden also maintained its objection throughout this case to the use and disclosure of its privileged documents by and to SHST and VGH.  *See Haines v. Liggett Grp., Inc.*, Civil Action No. 84-678 (JAG), 2000 U.S. Dist. LEXIS 22491 (D.N.J. Sep. 11, 2000) (production of



documents pursuant to court order, over parties' objection, does not constitute waiver of the attorney-client privilege).

Accordingly, Rearden requests that the Court enter an order restoring Rearden's attorney-client privilege, and requiring Plaintiffs and their counsel, and all others acting in concert with them, to return all MO2 Privileged Documents to Rearden and to destroy all copies, physical or otherwise, and for each to certify compliance to the Court by September 30. Rearden also requests that SHST, VGH, and their counsel be required to serve copies of the Order on parties to whom they provided copies of the MO2 Privileged Documents. A proposed Order granting this relief is attached as Exhibit E. Rearden further requests that the Court order all documents filed on the public record that include or reference privileged communications be sealed, pursuant to Civil Local Rule 79-5.[2]

### D.    Reinstatement of Rearden's MO2 LLC

In the Statement of Decision, this Court found that "MO2 was owned by Rearden LLC as of the date of its formation." On November 26, 2013, Greg LaSalle, without Rearden's authorization, cancelled MO2 in a filing with the California Secretary of State, stating that "The dissolution was made by a vote of all members," and that he was an "Authorized Person" to dissolve the company. These statements in Mr. LaSalle's filing were materially false. LaSalle further notified the Secretary of State to send a copy of the filed document to his personal residence, such that Rearden did not receive notice of the cancellation.

Rearden requests an Order in the form attached as Exhibit F, reinstating MO2, LLC pursuant to California Government Code § 12261, which provides:

> "(a) The Secretary of State shall reinstate to active status on its records, a business entity for which a court finds any of the following: (1) The factual representations by a shareholder, member, partner, or other person that are contained in the termination document are materially false. (2) The submission of the termination document to the Secretary of State for filing is fraudulent. (b) If a court of competent jurisdiction orders reinstatement of a business entity to active status on any of the grounds stated in paragraph (1) or (2) of subdivision (a), the order for reinstatement shall state all of the following: (1) The specific grounds for reinstatement."

---

[2] D.I. 44-11, 44-13, and 119-7; and Trial Exhibits 29-33, 35-36, 38, and 59.



### E.   Entry of Judgment

#### 1.   Between VGH and Rearden

Subject to the Court retaining jurisdiction to enforce its Order(s) regarding the return of the MOVA Assets to Rearden, and to adjudicate attorneys' fees and costs issues, Rearden agrees that judgment should be entered, in the form attached as Exhibit G hereto.[3]

The operative pleadings as to Plaintiff-Intervenor VGH are:

(a) VGH's Intervenor Complaint, alleging: (1) declaratory relief regarding ownership of the MOVA Assets, (2) false advertising, (3) unfair competition, and (4) intentional interference with prospective economic advantage (D.I. 307); and

(b) Rearden's Answer and Affirmative Defenses (D.I. 326).

Judgment is properly entered in Rearden's favor and against VGH on all claims set forth above, based on this Court's finding in the Statement of Decision entered on August 11, 2017, that Rearden, and not VGH, is the owner of the MOVA Assets.  All of VGH's claims are predicated on its ownership of the MOVA Assets, and judgment is therefore properly entered on all claims based upon this Court's Statement of Decision.

#### 2.   Between SHST and Rearden

Subject to the same conditions as listed above, Rearden agrees that default judgment should be entered against SHST, in the form attached as Exhibit H.

The operative pleadings between Plaintiff SHST and Rearden are:

(a) SHST's Amended Complaint, alleging: (1) declaratory relief regarding ownership of the MOVA Assets; (2) false advertising; (3) unfair competition; and (4) intentional interference with prospective economic advantage (D.I. 93); and

(b) Rearden's Answer and Amended Counterclaims, alleging: (1) declaratory relief regarding ownership of the MOVA Assets; (2) intentional interference with contract; (3) intentional interference with prospective business advantage; (4) negligent interference with prospective economic relations; (5) conversion; (6) trespass to chattels; (7) misappropriation of trade secrets; (8) infringement of U.S. Patent No. 7,548,272; (9) infringement of U.S. Patent No.

---

[3] The parties have agreed to the form of judgments attached as Exhibits G and H.

7,567,293; (10) infringement of U.S. Patent No. 7,605,861; (11) infringement of U.S. Patent No. 8,659,668; (12) trademark infringement; (13) contributory trademark infringement; (14) unfair competition and false designation of origin; (15) violation of anti-cybersquatting; (16) direct copyright infringement; (17) secondary copyright infringement; (18) unjust enrichment; (19) unfair competition; and (20) California uniform fraudulent transfer act (D.I. 102); and

   (c) SHST's Answer to Rearden's ownership claim only (D.I. 111).

   On October 11, 2016, this Court directed the Clerk of Court to enter a default against SHST, which default was entered (D.I. 306).  In its order directing the default to be entered, the Court explained that its basis for not entering default judgment at the time was to ensure no inconsistent judgment at trial against VGH, under Federal Rule 54(b).  (D.I. 305, pp. 19-23.) Based on the Court's findings in the Statement of Decision that SHST and VGH are not the owners of the MOVA Assets, and that the transfer of assets was intended to hinder Rearden's recovery thereof (D.I. 427), which findings are consistent with entry of default judgment against SHST, default judgment is properly entered in Rearden's favor and against SHST on its claim for declaratory judgment that Rearden is the owner of the MOVA Assets (Count I), and that the transfer of the MOVA Assets from SHST to VGH was fraudulent under California Civil Code § 3439, *et seq.* (Count 20).

   **F.    Other Issues**

   Rearden may seek an award of its attorneys' fees and costs as permitted by law.

///

///

///

///

///

///

///

///



1   DATED:  September 11, 2017          Respectfully submitted,

2                                       KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                       By: */s/ Jon Michaelson*
                                        _____
5                                           JON MICHAELSON
                                            SCOTT KOLASSA
                                            HOLLY GAUDREAU
6                                           BENJAMIN M. KLEINMAN-GREEN

7                                       Attorneys for Plaintiff and Counterclaim Defendant
                                        SHENZHENSHI HAITIECHENG SCIENCE AND
8                                       TECHNOLOGY CO., LTD. and Intervenor
                                        VIRTUE GLOBAL HOLDINGS LIMITED
9
    DATED:  September 11, 2017          Respectfully submitted,
10
                                        TURNER BOYD LLP
11

12
                                        By: */s/ Jennifer Seraphine*
13                                      _____
                                            JENNIFER SERAPHINE
14
                                        Attorneys for Defendants
                                        REARDEN, LLC, REARDEN MOVA, LLC,
15                                      MO2, LLC and MOVA, LLC

16

17                          **FILER'S ATTESTATION**

18       Pursuant to Civil Local Rule 5-1(i)(3), Jon Michaelson, hereby attests that the concurrence
    in the filing of this document has been obtained from the other signatories, which shall serve in
19  lieu of their signatures.

20                                      */s/ Jon Michaelson*
                                        _____
21                                          Jon Michaelson

22

23

24

25

26

27

28
    70055290V.4

