UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHENSHI HAITIECHENG SCIENCE AND TECHNOLOGY CO., LTD., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>REARDEN LLC, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00797-JST<br><br>**ORDER GRANTING MOTION TO ENFORCE JUDGMENT**<br><br>Re: ECF Nos. 499, 502, 506 |

Before the Court is Defendants Rearden LLC, Rearden Mova, LLC, MO2, LLC, and MOVA, LLC's (collectively, "Rearden") motion to enforce a judgment. ECF No. 499. The Court will grant the motion.

**I.　BACKGROUND**

This case involves a dispute about ownership of the physical equipment and intellectual property that the parties refer to collectively as the "MOVA Assets," the "MOVA technology," or simply "MOVA." The MOVA Assets are used for facial motion capture – the process of capturing the deformation of the surface of the human face for use in computer graphics, animation, and similar applications. On August 11, 2017, following a bench trial, the Court found that Rearden owned the MOVA Assets. ECF No. 427. The facts of this case are set forth in greater detail in that Statement of Decision. *See id.*

During the course of the litigation, on June 17, 2016, the Court issued a preliminary injunction requiring Plaintiff/Intervenor Virtue Global Holdings, Ltd. ("VGH") "to transfer any physical MOVA assets to a secure location of [Rearden's] choosing." ECF No. 188 at 16. The injunction specifically provided that "[w]hile [Digital Domain 3.0, Inc. ("DD3")] will not be

named as a party to the injunction, the injunction will apply to parties, their agents, employees and persons 'in active concert or participation with'" VGH and Plaintiff Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("SHST") and who received notice of the preliminary injunction. *Id.* at 15 (quoting Fed. R. Civ. P. 65(d)(2)(C)). Further, the Court ordered VGH to "transmit a copy of this preliminary injunction to its MOVA Asset licensees, including DD3." *Id.* at 16.

On October 2, 2017, following the Court's resolution of the ownership question, the Court ordered VGH and SHST to return the MOVA Assets to Rearden. ECF No. 449. Specifically, the Court ordered that SHST, VGH "and/or any party acting in concert with them (*e.g.*, [DD3]) shall return forthwith" certain categories of assets to Rearden, including "all business records taken from Rearden, Onlive, or OL2 by Greg LaSalle, SHST, VGH, and/or DD3, or others acting in concert with any of them." *Id.* at 2. The Court further ordered that "counsel for VGH shall serve a copy of this Order on any party who, in VGH's or VGH's counsel's knowledge, is in possession of any of the MOVA Assets, including without limitation DD3." *Id.* at 2.

After various post-trial proceedings not relevant here, the Court entered judgment in favor of Rearden on August 28, 2018. ECF No. 493. The judgment provided that "[t]he Court retains jurisdiction to enforce its Orders regarding the return of the MOVA Assets to Rearden." *Id.* at 2.[1]

On December 21, 2018, Rearden filed a motion for enforcement of judgment, contending that it had discovered that VGH had failed to return certain MOVA Assets. ECF No. 499.

## II. MOTIONS FOR SUPPLEMENTAL FILINGS

On January 22, 2019, after the parties had fully briefed the motion, Rearden filed an administrative motion for leave to file two supplemental declarations and supporting exhibits, citing VGH's subsequent production of additional MOVA Assets and relevant documents. ECF No. 502. On January 23, 2019, VGH responded by requesting leave to file a sur-reply to Rearden's motion for enforcement of judgment, in order to address new arguments and facts raised by Rearden's reply and supporting materials, as well as the proposed supplemental

---

[1] The parties have appealed and cross-appealed the case to the Ninth Circuit. ECF Nos. 495, 496.

1  declarations.  ECF No. 506.  Both parties oppose each other's requests for supplemental filings.
2  ECF Nos. 507, 510.

3    Rearden's proposed supplemental declarations reasonably address relevant factual developments that occurred after Rearden filed its reply on January 11, 2019.  *See* ECF No. 502 at 2; ECF No. 502-2 ¶¶ 2-3.[2]  The Court therefore GRANTS Rearden leave to file the supplemental declarations.  Similarly, VGH's proposed sur-reply reasonably responds to those new facts, as well as Rearden's reply evidence and newly raised request for a special master.  *See* ECF No. 506 at 2.  The Court GRANTS VGH leave to file a sur-reply as well.  The proposed filings and associated exhibits are deemed filed.

## III. DISCUSSION

At the hearing on the motion to enforce the judgment, the Court ordered the parties to submit further supplemental declarations to complete the record.  ECF No. 511.  The parties having done so, ECF Nos. 514, 515, 518, the Court now resolves the motion.

Rearden requests three forms of relief: (1) enforcement of the Court's judgment; (2) attorneys' fees and costs incurred in bringing this motion; and (3) appointment of a special master to oversee further compliance with the Court's orders.

### A. Enforcement of Judgment

#### 1. Legal Standard

"If a judgment requires a party to . . . perform any . . . specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court."  Fed. R. Civ. P. 70(a).  Further, "[t]he court may also hold the disobedient party in contempt."  Fed. R. Civ. P. 70(e).

Additionally, "a district court has the inherent power to enforce its orders."  *Nikko Materials USA, Inc. v. R.E. Serv. Co., Inc.*, No. C 03-2549 SBA, 2006 WL 1749550 at \*2 (N.D. Cal. June 22, 2006); *see also Spallone v. United States*, 493 U.S. 265, 276 (1990).  This power is

---

[2] The Perlman Declaration discusses the contents of a disk drive VGH turned over to Rearden on January 14, 2019.  ECF No. 502-2.  The Zweig Declaration attaches three documents obtained by Rearden from VGH on January 14, 2019.  ECF No. 502-3.

3

derived "not only from statute, 18 U.S.C. § 401, but more broadly from the implied powers 'necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases.'" *Nikko Materials USA*, 2006 WL 1749550 at *2 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

### 2. Discussion

As an initial matter, VGH contends that the Court should deny Rearden's motion because Rearden did not comply with Civil Local Rule 37's meet-and-confer requirement. ECF No. 500 at 5; ECF No. 506-1 at 6. As the Court explained at the hearing, that rule does not apply. The rule provides that "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civil L.R. 37(a). Civil Local Rule 37 thus imposes a corresponding obligation to Federal Rule of Civil Procedure 37(a)(1), which requires that a motion "for an order compelling disclosure or discovery . . . . must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Rule 70, by contrast, contains no such meet-and-confer requirement, and this is not a Rule 37 discovery dispute. *See* Fed. R. Civ. P. 70. VGH points to no authority applying Civil Local Rule 37 to a motion to enforce a judgment. Moreover, while noting that "[t]he better practice is always to meet and confer," other courts in this district have concluded that Civil Local Rule 37's meet-and-confer requirement does not apply where "there is no directly applicable section of [Federal Rule of Civil Procedure] 37." *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2016 WL 3232793, at *3 (N.D. Cal. June 13, 2016); *see also Baxalta Inc. v. Genentech, Inc.*, No. 16-MC-80087-EDL, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016) ("While the better practice would be to meet and confer before filing a motion in court, neither Federal Rule of Civil Procedure 37(a)(1)'s requirement for the party seeking to compel discovery nor the Northern District of California's Civil Local Rule 37-1, which cross-references it, technically apply to a third party moving to quash an overbroad subpoena under Section 1782."). The Court agrees that,

4

notwithstanding Rearden's failure to observe best practices, it is inefficient to "delay resolution of this dispute further by requiring another meet and confer session," *Jimenez*, 2016 WL 3232793, and unfair to reject Rearden's motion out of hand based on a local rule that does not technically apply.

The Court therefore turns to the merits of Rearden's request, which involves two categories of MOVA Assets.

### a. MOVA Assets in Personal Possession of Non-Parties

Rearden's motion first requests that the Court compel the return of MOVA business records and other files found on the personal computers of Greg LaSalle and Ken Pearce – two former Rearden employees who were intimately involved with the attempted transfer of the MOVA Assets to DD3, SHST, and VGH. *See* ECF No. 427 at 2, 4-8. After the purported sale in 2013, both LaSalle and Pearce began working for DD3. *Id.* at 13. According to VGH, these files were uncovered while responding to third-party subpoenas served in another litigation before this Court, which also involves the MOVA Assets and some of the Rearden entities. ECF No. 500 at 3.[3]

It is unclear whether VGH still opposes the return of these MOVA Assets. In its opposition, VGH argued that materials in the personal possession of LaSalle and Pearce at the time of the Court's order of return were not covered by the terms of that order. ECF No. 500 at 6. However, in its sur-reply, VGH stated that it was working with LaSalle and Pearce to "voluntarily" return the disputed assets, and that LaSalle and Pearce have now returned some of those assets. ECF No. 506-1 at 7-8. VGH's most recent supplemental declaration indicates that it "continue[s] to disagree with Rearden about the applicability of the Asset Return Order," but has "agreed to provide Rearden with such material anyway." ECF No. 515 ¶ 39. The Court therefore addresses this question in order to dispel any lingering concerns as to the scope of the Court's orders.

---

[3] *See Rearden LLC v. The Walt Disney Co.*, No. 17-cv-04006 JST; *Rearden LLC v. Crystal Dynamics, Inc.*, No. 17-cv-04187 JST; *Rearden LLC v. Twentieth Century Fox Film Corp.*, No. 17-cv-4191 JST; *Rearden LLC v. Paramount Pictures Corp.*, No. 17-cv-4192.

5

The plain terms of the Court's preliminary injunction and return order apply to "any party acting in concert with [SHST and VGH]." ECF No. 449 at 2; *see also* ECF No. 188 at 15 (covering "parties, their agents, employees and persons in active concert or participation with them" and who receive noticed notice of the preliminary injunction (internal quotation marks and citations omitted)). As noted above, Rule 65(d)(2)(C) provides that an injunction may bind "other persons who are in active concert or participation with" the parties, provided those persons "receive actual notice of [the injunction] by personal service or otherwise." Fed. R. Civ. P. 65. Similarly, Rule 71 permits the Court to enforce a judgment against non-parties with notice under the same terms as Rule 70. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) ("Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action." (citation omitted)).

As discussed in the Court's Statement of Decision, LaSalle (and to a lesser degree, Pearce) was the primary agent attempting to sell the MOVA Assets, first to DD3, and then to SHST. ECF No. 427 at 9-12. Moreover, the Court found that both LaSalle and DD3/SHST were fully aware at the time that LaSalle had no ownership rights to the assets. *Id.* at 13. Further, the terms of the fraudulent sale documents included an indemnification provision protecting LaSalle from claims by Rearden and immediately after the transaction closed both LaSalle and Pearce began to work for DD3 at six-figure salaries. *Id.* Given these findings, VGH cannot reasonably argue that LaSalle and Pearce did not act in active concert or participation with SHST. *See also Netlist Inc v. Diablo Techs. Inc*, No. 13-CV-05962-YGR, 2015 WL 163434, at *1 (N.D. Cal. Jan. 12, 2015) ("'Active concert or participation' has been interpreted to include both aiders and abettors of, and privies of, an enjoined party." (quoting *Aevoe Corp. v. AE Tech Co., Ltd.*, 727 F.3d 1375, 1384 (Fed. Cir. 2013)); *cf. Peterson*, 140 F.3d at 1324 (holding that non-parties that "flagrantly and deliberately aided and abetted [parties] in violating the express terms of the judgment" could be held liable in contempt under Rules 70 and 71). For similar reasons, there is no dispute that LaSalle and Pearce had actual notice of the Court's orders. *See also* ECF No. 500-3 ¶ 3 (LaSalle declaration stating: "I am familiar with DD3's use of the MOVA Assets up to and until the

injunction issued, the cessation of use upon the issuance of the injunction, and efforts to return the MOVA Assets pursuant to the Court's Order.").[4]

Accordingly, the Court clarifies that its injunction and judgment reach MOVA Assets in LaSalle or Pearce's personal possession and orders that any such remaining assets be returned immediately to Rearden. Further breaches of this aspect of the Court's orders may constitute cause for finding LaSalle, Pearce, and/or VGH in contempt. *See Peterson*, 140 F.3d at 1324.

### b. MOVA Assets in DD3's Possession

In their initial briefing, the parties also disputed the timeline and conditions for conveying additional materials in DD3's possession that were discovered in the other MOVA litigation. ECF No. 499 at 5; ECF No. 500 at 7. At the February 28, 2019 hearing, VGH represented that it had completed the return of all MOVA Assets the day before, with the exception of some of Pearce's personal emails. ECF No. 516 at 6:4-22. In its post-hearing declaration, VGH represents that it returned the outstanding emails on March 4, 2019. ECF No. 515 ¶ 61.

Rearden's post-hearing declaration does not identify specific MOVA Assets that have yet to be returned, but argues that, given the history of the parties' interactions, "[i]t is unknown what additional information, or copies of this information, remains in VGH or . . . other parties' possession." ECF No. 514 ¶ 31.

Accordingly, there is no longer a specific dispute for the Court to resolve regarding MOVA Assets in DD3's possession. The history of DD3's compliance (or lack thereof) is, however, relevant to Rearden's remaining requests for the Court to award fees and to appoint a special master.

---

[4] VGH's post-hearing declaration now suggests that it takes the position that LaSalle and Pearce do not need to provide MOVA Assets "obtained independently of Original MO2." ECF No. 515 ¶ 39. This argument was not raised in either VGH's opposition or sur-reply, ECF Nos. 500, 506-1, and the Court therefore need not address it. *See* ECF No. 511 at 1 (instructing the parties to "submit only declarations, without argument"). Regardless, the Court's order applies to, among other things, "[a]ll business records taken from *Rearden, Onlive, or OL2* by Greg LaSalle, SHST, VGH and/or DD3, or others acting in concert with any of them." ECF No. 449 at 2 (emphasis added). There is no basis for VGH's contention that this does not apply to "material archived or obtained by Mr. Pearce or Mr. LaSalle during the years prior to the time they left the employ of Rearden." ECF No. 515 ¶ 33.

7

## B. Attorneys' Fees

### 1. Legal Standard

"All Federal Courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. . . . As a function of this power, courts can . . . award attorney's fees and assess fines." *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (first alteration in orginal) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)). Such sanctions are warranted in cases of "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (alteration in original) (quoting *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001)). However, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012).

Despite this inherent authority, "attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). And "[b]efore imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct." *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003).

### 2. Discussion

The Court first reviews the history of compliance with its October 4, 2017 order to return all MOVA Assets to Rearden.

After receiving the order, DD3 "collected what it believed to be all of the documents and things that it had obtained on or about the time it licensed MOVA" and returned them in October 2017. ECF No. 515 ¶ 6; *see also* ECF No. 515-1. After Rearden objected that DD3 had not provided any undeleted MOVA source code, DD3 "undertook renewed efforts to locate any other copies it might have in its possession." ECF No. 515 ¶ 11. DD3 located two types of source code, but these discoveries "came as a surprise," *id.*, in part because they were stored contrary to

8

"DD3's normal business practice" and in a "non-standard location," ECF No. 515-1 ¶¶ 9-10. This material was returned by December 28, 2017, at which point "DD3 believed it had reviewed all places where MOVA Assets had been maintained and that it had identified and returned all MOVA Assets in its possession." ECF No. 515 ¶ 13.

Between July and August 2018, DD3, LaSalle, and Pearce conducted a further review of materials in response to third-party subpoenas in the Studio Litigation. *Id.* ¶¶ 18-29. In an October 8, 2018 email to Rearden's counsel in the Studio Litigation, VGH's counsel noted that they had discovered additional information from LaSalle's personal computer. ECF No. 499-2.

On December 10, 2018, Rearden's counsel in this matter emailed VGH's counsel to request the return of those documents and any other outstanding MOVA Assets. ECF No. 499-3 at 5-6. In the ensuing email exchange, VGH contended that LaSalle and Pearce were not subject to the Court's orders in their individual capacities, and offered to delete or return other categories of materials if they were determined to be MOVA Assets. *Id.* at 2-3. Rearden then filed this motion on December 21, 2018. ECF No. 499.

While the motion was being briefed, the parties continued to exchange emails regarding these materials, with VGH transferring some assets to Rearden. By January 27, 2019, VGH "believed all MOVA Assets in the possession of DD3, Mr. LaSalle, and Mr. Pearce had been provided to Rearden." ECF No. 515 ¶ 41. VGH provided additional emails from Pearce on January 28, 2019. *Id.* ¶ 47.

On February 12, 2019, Rearden's counsel sent an email identifying additional MOVA Assets that it believed existed, based on the previous return. ECF No. 514-2 at 9-10. VGH's counsel "was surprised that there were deficiencies, especially as extensive as outlined." ECF No. 515 ¶ 51. VGH conducted another round of review, and by February 27, 2019, had returned a thumb drive and upload files containing more than 34,000 files, totaling approximately 20 gigabytes. ECF No. 514 ¶ 22. VGH provided a final round of emails on March 4, 2019. *Id.* ¶ 23.

In light of these events, the Court finds that VGH willfully disobeyed the Court's October 4, 2017 order. The Court does not credit VGH's assertions that it repeatedly made good-faith mistakes in its attempts to identify and return all MOVA Assets. Moreover, when Rearden called

9

these defects to VGH's attention, VGH (1) advanced a meritless legal position regarding the scope of the Court's order and (2) unreasonably dragged its feet in returning other assets. *See, e.g.*, ECF No. 499-3. The Court finds that VGH's attempt to negotiate the terms of its compliance with the terms of the Court's order was a deliberate decision to disobey it. *See Evon*, 688 F.3d at 1035 (affirming finding of willfulness where attorney "realized that compliance with the [court's] order would cause him additional time and work, and he *chose* not to comply"); *Aloe Vera*, 376 F.3d at 965 ("Aloe Vera was bound to follow the district court's directions, not some other course it considered to be just as good.").

Moreover, VGH's willful disobedience gave rise to the need for this motion. While VGH argued at the hearing that it would have complied in due course without this motion, that contention is not supported by the record. VGH did not return any of the disputed assets, or even commit to a specific timeline for doing so, prior to Rearden filing this motion. *See* ECF No. 499-3. Further, as the Court noted at the hearing, that VGH (nearly) completed its return of assets the day before the hearing raises a reasonable inference that this motion played a significant role in spurring compliance. ECF No. 516 at 16:18-20. Accordingly, the Court exercises its discretion to award attorneys' fees and costs that Rearden incurred in bringing this motion. *See Aloe Vera*, 376 F.3d at 966.

### C. Special Master

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Court's decision to appoint a master "must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). "Before appointing a master, the court must give the parties notice and an opportunity to be heard. Any party may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1).

A court "should appoint a special master only in exceptional circumstances." *Burlington N. v. Dep't of Revenue*, 934 F.2d 1064, 1071 (9th Cir. 1991). Courts have found such

circumstances based on "the complexity of [the] litigation" or "problems associated with compliance with the district court order." *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990). In addition to a "history of noncompliance," exceptional circumstances may exist where a court "lack[s] the resources to constantly monitor compliance with the decree." *Hook v. Ariz. Dep't of Corr.*, 120 F.3d 921, 926 (9th Cir. 1997); *see also Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986) (noting "the difficulties inherent in monitoring compliance with the court's orders" and the parties' "established record of resistance to prior state and federal court orders"). Though a history of noncompliance weighs in favor of reference to a special master, the Ninth Circuit has rejected a requirement that a court must find "intentional disregard of court orders before a special master may be appointed." *Nat'l Org. For the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987).

If a court decides to appoint a special master, it "must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).

### 2. Discussion

Rearden requests that the Court appoint a special master to oversee the identification, preservation, and return of the additional MOVA Assets, given Rearden's view that VGH and DD3 have continually failed to comply with the Court's orders. ECF No. 501 at 5-6. Rearden further contends that VGH and DD3 should be ordered to bear the cost of a special master because their actions have made a special master necessary. *Id.* at 6; *see also* Fed. R. Civ. P. 53(g)(3). VGH counters that a special master is unnecessary because VGH and DD3 continue to attempt to comply with the Court's orders and return MOVA Assets. ECF No. 506-1 at 8. VGH therefore objects to the appointment of a special master unless Rearden pays the full cost. *Id.*

As an initial matter, the Court notes that Rearden raised this request for the first time in its reply. The Court ordinarily "does not consider new arguments made for the first time in a reply brief." *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 930 n.6 (N.D. Cal. 2015) (citing *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006)).

11

But because VGH has sought and received leave to file a sur-reply responding to this argument, the Court will exercise its discretion to consider the issue on the merits.

As detailed above, VGH, DD3, LaSalle, and Pearce have, at various points, assured Rearden that they have located and returned all MOVA Assets. Those assurances have repeatedly been proven incorrect. Even were the Court to find that this was the result of misfeasance rather than malfeasance, the history of this case demonstrates chronic "problems associated with compliance with the district court order." *Suquamish Indian Tribe*, 901 F.2d at 775. Further, as the Court found above, VGH has deliberately delayed when confronted with evidence of noncompliance. Finally, VGH's asserted explanations, even if taken at face value, underscore the highly technical nature of compliance with the Court's order. *See Mullen*, 828 F.2d at 543 (noting that a court may also rely on "[t]he complexity of compliance, and not a finding of earlier noncompliance").

The Court therefore finds exceptional circumstances warranting the appointment of a special master. As discussed at the hearing, the Court will provide the parties an opportunity to nominate candidates for special master. *See* Fed. R. Civ. P. (53)(b)(1). The Court will then select a special master and issue a proposed order of appointment, *see* Fed. R. Civ. P. (53)(b)(2), to which the parties may file objections.

**CONCLUSION**

For the foregoing reasons, the Court grants Rearden's motion to enforce the judgment and request for attorneys' fees.

The parties shall meet and confer regarding the amount of fees to which Rearden is entitled, following which Rearden shall submit either a stipulation or a request for an award of fees and costs in a specific amount by April 24, 2019. If Rearden's request is not the subject of a stipulation, VGH may file an opposition by May 1, 2019, and Rearden may file a reply by May 8, 2019.

\\\

\\\

\\\

12

The parties shall file any nominations for special master candidates by April 24, 2019. The Court will address the question of the Special Master's fees in its order of appointment.

**IT IS SO ORDERED.**

Dated: April 10, 2019



_____
JON S. TIGAR
United States District Judge