1   Martin Quinn, Esq.
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, CA  94111
    Telephone: (415) 982-2567
4   Fax: (415) 982-5287

5   SPECIAL MASTER

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

                              OAKLAND DIVISION
10

11  SHENZHENSHI HAITIECHENG                    Case No. 4:15-cv-00797 JST (SK)
    SCIENCE AND TECHNOLOGY CO., LTD., a
12  People's Republic of China corporation,

13               Plaintiff,

14           and                               SPECIAL MASTER'S ORDER NO.
                                               10:  PROTOCOL FOR
15  VIRTUE GLOBAL HOLDINGS LIMITED, a          COMPLETING MOVA ASSET
    business company incorporated in the British   RECOVERY AND RETURN
16  Virgin Islands,

17               Intervenor,
             v.
18
    REARDEN, LLC, a California Limited Liability
19  Company; REARDEN MOVA, LLC, a
    California Limited Liability Company; MO2,
20  LLC, a California Limited Liability Company;
    and MOVA, LLC, a California Limited Liability
21  Company,

22               Defendants.

23  ─────────────────────────────────

24  AND RELATED COUNTERCLAIMS.

25

26

27

28
                                     1

The Special Master has consulted extensively with DisputeSoft, the Court-appointed Forensic Expert, and held further conversations and hearings with the parties, most recently on February 16 and 19[1], 2021, in order to formulate a workable, cost-effective and speedy protocol for completing the recovery and return of Mova Assets to Rearden pursuant to outstanding Court orders.  The Special Master provided the parties with a draft of this Order, received and considered their comments, and has incorporated them as appropriate in this final version of the Order.

The parties and the Forensic Expert shall comply with the following protocol to complete DisputeSoft's work.

<u>Status of Recovery Effort</u>

DisputeSoft has been tasked with recovering digital Mova Assets of three basic types: software such as source code for the Mova technology, business records pertaining to Mova and Mova output files generated by the Mova software.  These Mova Assets have been located in DD3's[2] active software files, online documentation systems, email records, and backup tapes, and on forensic images generated before DisputeSoft's appointment.  Special Master's Order No. 6, issued on October 13, 2020 (ECF No. 577), specified in detail the scope of those assets, by date range and type of asset, to be recovered and returned to Rearden.  Order No. 6, like prior Court orders, required generally the return to Rearden or destruction of "all" Mova Assets.

In the 19 months since its appointment on August 20, 2019 (ECF No. 534) DisputeSoft has made considerable progress in identifying and recovering from DD3 Mova software, output and business records, as well as performing a comprehensive review of its catalog for backup tapes.  Its Report to the Special Master dated February 3, 2021 described that effort and the problems it currently encounters in completing its task.  As of February 6, DisputeSoft reports that it has  billed DD3 about $364,000 for this work, and that a contractor (Gen3i) has billed another $6,000 — a total of about $370,000.  Remaining work will consist of further

---

[1] The 2/19 hearing was with DD3 only and dealt with potentially confidential technical issues only.

[2] DD3 is a successor to VGH, the party originally found to have been at fault in taking Mova Assets from Rearden, and is the active party in possession of the Mova Assets.  Following the parties' practice, this Order will refer to DD3.

1    identification of Mova Assets on both active and backup files, recovery of Mova Assets on

2    emails, recovery of Mova Assets on backup tapes, and destruction or return of Mova Assets to

3    Rearden.  DisputeSoft has determined that Mova Assets potentially reside on about 2,000 backup

4    tapes, in addition to the files on all DD3's multiple active platforms.  If the review is restricted to

5    unique copies, the number shrinks to 1,100 backup tapes, of which about 15-30 key tapes contain

6    a large portion of Mova Assets.  DisputeSoft estimates that it will cost another $280,000 and take

7    about six more months for it to identify the Mova business records and software files, and that it

8    will take "years" for DD3 to recover and delete the identified Mova files at an unknown but very

9    substantial cost.  Based on its review of files to date DisputeSoft is convinced that many of the

10   business records and files that meet the Court's definition of Mova Assets are in fact duplicates or

11   relatively meaningless files of no meaningful use to either party.

12        Two basic problems prevent DisputeSoft from completing its task at a reasonable cost and

13   within a reasonable period of time.  First, the proliferation of Mova Assets in DD3's active and

14   backup systems, the presence of numerous duplicates, and the sheer number of files that are

15   potentially within the scope of Mova Assets as described in Order No. 6 and prior Court orders

16   turn out to be voluminous.  The Special Master notes that this proliferation is due at least in part

17   to DD3's failure to limit the use and spread of Mova Assets, and its apparent failure to direct its

18   staff to refrain from using Mova Assets or the Mova name.  Second, technical limitations of

19   DD3's backup systems impede the restoration and deletion of Mova Assets on backup tapes.

20        The Special Master concludes that it is necessary to shrink the scope of recoverable Mova

21   Assets, and adopt new procedures for their identification, recovery and deletion.  Based on the

22   advice of the Forensic Expert, the Special Master believes these changes will not permit any

23   material amount of usable Mova Assets to remain in DD3's hands.

24        Rearden objects to any alteration in the prior direction to recover "all" Mova Assets,

25   noting that DD3 has caused the undue proliferation and duplication of Mova files often in

26   violation of Court orders.  To accommodate Rearden's concerns, both parties will be allowed to

27   review lists of metadata from files that DisputeSoft intends to recover and from those duplicates

28   and innocuous documents it intends to omit.  Rearden will be allowed to demand the recovery of

1 additional files, and DD3 may demand that some identified files not be turned over to Rearden.

2 The Special Master will resolve any disagreements.

3     Rearden has also urged that DisputeSoft simply identify and return to Rearden <u>all</u> files that

4 in any way reference Mova without any individual review to determine whether they in fact meet

5 the Court's definition of Mova Assets. If DD3 wanted an individual review, it could request one

6 at its sole cost. The Special Master considers that approach to be unworkable. It is virtually

7 certain to result in endless and costly disputes before the Special Master and Forensic Expert

8 about individual files. It is preferable to allow DisputeSoft to make the initial determination

9 whether a file is a Mova Asset.

10 <u>Business Records</u>: Business records prior to April 21, 2013 that include the word "Mova" or

11 relate in some way to Mova Assets turn out to be voluminous, proliferated and copied throughout

12 DD3's environment. DisputeSoft reported that, "[business records] to be reviewed are spread out

13 over six forensic images, 12 sets of Google Vault files and emails, files on at least three network

14 shares used by DD3 for its day-to-day operations, DD3 intranet locations, and numerous backup

15 tapes." The problem is compounded by various technical limitations. Also, business records

16 mentioning Mova include many (e.g., invoices, bid sheets, shooting schedules, legal documents,

17 emails) that would be of no value to DD3 were it to attempt to re-use Mova. However, some

18 business records that appear innocuous to DisputeSoft may have value to Rearden, so Rearden

19 may request the Special Master to order the return of such records.

20     Therefore, the Special Master directs that DisputeSoft shall revise its review of business

21 records as follows:

22     1. Confine its review to technical documentation or technical demonstrations whether

23 found in stand-alone documents, or referenced in emails and other documents.

24     2. Review files that are difficult to process (e.g., emails, archives, images, movies) only if

25 the file path or folder metadata indicates that they may contain Mova technical documentation.

26     3. Conduct a high-level review of file path and files name metadata to identify files

27 containing potential Mova assets, with manual review only to validate whether *bona fide* Mova

28 records are present.

<u>Output Files</u>:  Order No. 6 limited recoverable output files to those created prior to April 21, 2013 and after June 21, 2016, and to certain file types (such as *.raw, *.obj, *.rpt, *ma, and others).  However, analysis shows that DD3's backup tapes contain many duplicative copies, and technical and resource limitations at DD3 will inhibit the recovery of those output files that are on backup tapes.

Therefore, the Special Master directs that DisputeSoft shall:

1.  Restrict its scope of review to only those files that contain data that could reasonably be used to reconstruct the Mova software (e.g., *.ma files) or be most relevant to a post-injunction use of Mova (e.g., *.raw files).

2.  Restore only unique copies of output files, although it will identify duplicate copies for later deletion.

<u>Mova software</u>:  DisputeSoft shall apply generally the same parameters to Mova software as to output files.  It shall restrict its review to software that contain data that could reasonably be used to reconstruct Mova software, and shall restore only unique copies, identifying duplicates for later deletion.

<u>Iterative review of metadata lists</u>:  Commencing immediately DisputeSoft shall send the parties on a regular basis lists of metadata (as Excel spreadsheets or other format as appropriate) of the potential Mova assets (software, output files, business records and backup data) it has identified on different locations (e.g., forensic images, DD3 network drives, DD3 NetBackup catalog, DD3 SVN repository, etc.).  This will speed the parties' review of this data rather than waiting to provide one enormous list.  DisputeSoft will first provide the lists to DD3 for a review (not to exceed one week) for confidential material.  The lists (redacted if necessary) will then be provided to Rearden.  The parties will have 15 business days to review the lists and to send back versions of the spreadsheets indicating which items they wish to have restored (Rearden), or what they believe is not a recoverable Mova asset (VGH/DD3), etc.  These lists will also contain examples of the types of assets that DisputeSoft does <u>not</u> intend to recover.

<u>Backup Tapes</u>:  DisputeSoft has identified approximately 2,000 backup tapes that may contain relevant Mova files.  Eliminating duplicate copies reduces that to 1,100 tapes, of which 15-30

5

DocuSign Envelope ID: 1B6519CE-78DD-4ED2-A00E-7532875BEB24

contain a large part of the relevant Mova files.  Restoring relevant data from these files is estimated to take close to six months and cost between $53,000 and $220,000 depending on the number of tapes to be restored.  The deletion of Mova Assets on an individual basis could take "years" for DD3 to accomplish and about 10 months for an outside vendor, with a cost between $138,000 and $825,000.  The challenges with backup tapes are twofold:  to restore data in order to determine whether a file is a Mova Asset, and then to delete the identified Mova files.  Both are hampered by DD3's limited and outmoded technology, and the time and resources — whether DD3 or an outside vendor does the work — to complete it.  The parties have generally approved a few solutions to speed up and reduce the cost of the project.

First, the parties have agreed that backup tapes identified to contain Mova Asset files shall be destroyed in total — after transfer to DD3 of any files it identifies as essential and not Mova Assets, and to Rearden of any Mova Assets that it wants to preserve.  This alone will massively reduce the time and cost in comparison to individually deleting Mova Asset files.  Second, DD3 has upgraded its technical capabilities by the purchase of a new tape robot, which it says will greatly speed its ability to restore files for review.  DD3 urges that it be permitted to accomplish this task, rather than using an outside vendor which DisputeSoft originally proposed.  DisputeSoft is currently testing DD3's restore capabilities on a limited set of files so that a final judgment may be made as to whether to employ an outside vendor.

The Special Master directs that DisputeSoft, or DD3 or an outside vendor, shall:

1.  Proceed with having DD3 restore a sample number of files to determine its ability to restore Mova files efficiently.

2.  Recommend to the Special Master whether to permit DD3 to continue the restoration work, or arrange for an outside vendor to accomplish it.

3.  Once all likely Mova Assets have been identified on backup tapes, to provide the parties with a list of those files for their review within a reasonable time not to exceed one month.  Rearden shall identify any Mova Assets it wants to preserve, and DD3 shall identify any files it believes are not Mova Assets that it wants to preserve.

    4.  Once those identifications have been agreed to and accomplished, all backup tapes

containing any Mova Assets shall be destroyed in their entirety.


Discretion of the Forensic Expert:  DisputeSoft shall have complete discretion in making

selections of files that it deems to the Mova Assets.  The parties retain the right to question

DisputeSoft's selections, but they will bear the burden of demonstrating that DisputeSoft's

judgment was incorrect.  DisputeSoft is tasked with overseeing this entire process, whether

conducted by DD3, an outside vendor or DisputeSoft itself, and with ultimately certifying that in

its professional opinion all reasonably-recoverable Mova Assets have been returned to Rearden or

destroyed.

Copyright Issues:  DD3 asserts that some post-injunction output files may contain material in

which DD3 or its clients have copyright protection.  To avoid misunderstanding the Special

Master assures the parties that nothing in this or his prior Orders is intended to transfer to Rearden

or impact in any way potential copyright rights.

Enforcement:  Rearden has requested that the Court impose coercive sanctions on DD3 in order to

ensure its cooperation and compliance with this process.  The Special Master observes from

perusing many dozens of emails that DD3's technical leader in this process and its counsel have

not greatly impeded the process.  DD3's technical staff have sometimes delayed in responding to

DisputeSoft's requests, but on the whole delays have been less from human inattention than

technical impediments.  To be sure, those impediments have been largely due to DD3's years-

long failure to cease the proliferation and duplication of Mova files throughout its many systems.

DisputeSoft has located no directive to DD3 employees (for example on DD3 intranet sites that

continue to document Mova software or feature the Mova logo) at any time following the

preliminary injunction to cease use of Mova Assets and to curtail the use of the Mova name in

files.

    The Special Master believes the best course is not to impose sanctions of any kind at this

time, but to allow the revised, streamlined process to move forward.  But DisputeSoft is directed

to report promptly to the Special Master all instances of inattention or foot-dragging or

DocuSign Envelope ID: 1B6519CF-7BDD-4ED2-A00F-7532875BEB24

1    incompetence by DD3.  If and when the record supports either coercive or punitive sanctions, the

2    Special Master will not hesitate to impose them in significant amounts.

3                                                    <u>Order</u>

4            Good cause appearing the Special Master orders that the process for identifying,

5    recovering and deleting Mova Assets from the DD3 environment and returning them as

6    appropriate to Rearden proceed as described above.

7

8    Dated:  March 16, 2021

9

10                                                   Martin Quinn, Special Master

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-Mail

Re: Shenzhenshi Haitiecheng Science and Technology Co., Ltd. vs. Rearden LLC, et al.
Reference No. 1100105909

     I, Sandra Chan, not a party to the within action, hereby declare that on March 16, 2021, I served

the attached SPECIAL MASTER'S ORDER NO. 10:  PROTOCOL FOR COMPLETING MOVA ASSET

RECOVERY AND RETURN on the parties in the within action by electronic mail at San Francisco,

CALIFORNIA, addressed as follows:


Karen I. Boyd Esq.
Jennifer Seraphine Esq.
Zhuanjia Gu Esq.
Turner Boyd LLP
702 Marshall St
Suite 640
Redwood City, CA   94063
Tel: 650-521-5935
Email: boyd@turnerboyd.com
seraphine@turnerboyd.com
gu@turnerboyd.com
   Parties Represented:
   MO2, LLC
   Mova, LLC
   Rearden LLC
   Rearden Mova, LLC

Ms. Keeley Irene Vega
Jacob S. Zweig Esq.
Turner Boyd LLP
702 Marshall St
Suite 640
Redwood City, CA   94063
Tel: 650-521-5935
Email: vega@turnerboyd.com
zweig@turnerboyd.com
   Parties Represented:
   MO2, LLC
   Mova, LLC
   Rearden LLC
   Rearden Mova, LLC

Jon Michaelson Esq.
Kilpatrick Townsend & Stockton LLP
1080 Marsh Rd.
Menlo Park, CA   94025
Tel: 650-614-6462
Email: jmichaelson@kilpatricktownsend.com
   Parties Represented:
   Virtue Global Holdings Limited

Benjamin M. Kleinman Esq.
Kilpatrick Townsend & Stockton LLP
Two Embarcadero Center
19th Floor
San Francisco, CA   94111-3834
Tel: 415-576-0200
Email: bkleinman@kilpatricktownsend.com
   Parties Represented:
   Virtue Global Holdings Limited

Frank H. Busch Esq.
Wagstaffe, von Loewenfeldt, Busch & Radwick LLP
100 Pine St.
Suite 725
San Francisco, CA   94111
Tel: 415-357-8902

Email: busch@wvbrlaw.com
    Parties Represented:
    MO2, LLC
    Mova, LLC
    Rearden LLC
    Rearden Mova, LLC

   I declare under penalty of perjury the foregoing to be true and correct. Executed at San

Francisco, CALIFORNIA on March 16, 2021.

Sandra Chan
JAMS
SChan@jamsadr.com